# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| In re: | * | |
|      VINCENT L. ABELL | | |
| | * | |
|      Debtor. | | Case No. 13-13847-LSS |
| | * | Chapter 11 |
| | | |
| *   *   *   *   *   *    | * | |
| | | |
| | * | |
| ROGER SCHLOSSBERG, | | |
| LIQUIDATING TRUSTEE | * | |
| 134 W Washington St, | | |
| Hagerstown, MD 21740, | * | |
| | | |
|      Plaintiff, | * | Adversary Proceeding No. 22-00223 |
| | | |
|      v. | * | |
| | | |
| VINCENT L. ABELL | * | |
| 10308 Bristolwood Court | | |
| Laurel, MD 20708, | * | |
| | | |
| MARTA BERTOLA | * | |
| 11 Stehle Street | | |
| Annapolis, MD 21401, | * | |
| | | |
| VINMAR LLC | * | |
| 2400 Virginia Avenue, NW, C-815 | | |
| Washington, DC 20037, | * | |
| | | |
|      SERVE ON:   Resident Agent | * | |
|      Marta Bertola | | |
|      11 Stehle Street | * | |
|      Annapolis, MD  21401 | | |
| | * | |

1

MERGANSER BUILDERS, LLC                      *
11 Stehle Street
Annapolis, MD 21401,                          *

       SERVE ON:   Resident Agent    *
       Marta Bertola
       3337 Thomas Point Road       *
       Annapolis, MD 21403

                                            *

GRIFFIN ARMS LLC
11 Stehle Street                              *
Annapolis, MD 21401,

                                            *

       SERVE ON:   Resident Agent
       Marta Bertola                 *
       3337 Thomas Point Road
       Annapolis, MD  21403          *

ROCK HALL BUILDERS LLC                       *
13901 Belle Chasse Blvd., Unit 216
Laurel, MD 20707,                             *

       SERVE ON:   Resident Agent    *
       Maria Maya
       13901 Belle Chasse Blvd.      *
       Unit 216
       Laurel, MD 20707              *

GREENSPRING HOME BUILDERS, LLC *
13901 Belle Chasse Blvd., Unit 216
Laurel, MD 20707,                             *

       SERVE ON:   Resident Agent    *
       Ronald B. Edlavitch
       305 Casey Lane                *
       Rockville, MD  20850

                                            *

FEDERALSBURG BUILDERS, LLC
13901 Belle Chasse Blvd., Unit 216            *
Laurel, MD 20707,

                                            *

       SERVE ON:   Resident Agent
       Ronald B. Edlavitch           *
       305 Casey Lane
       Rockville, MD  20850          *

2

CONOWINGO HOMES, LLC                    *
c/o Registered Agents Inc.
5000 Thayer Center, Suite C,            *
Oakland, MD, 21550, and
                                        *

        SERVE ON:   Resident Agent
        Registered Agents Inc.          *
        5000 Thayer Center, Suite C
        Oakland, MD  21550              *

SEA HOME BUILDERS, LLC                  *
        SERVE ON:   Resident Agent
        Registered Agent Solutions, Inc. *
        838 Walker Road Suite 21-2
        Dover, DE 19904,                *

        Defendants                      *

*     *     *     *     *     *     *     *     *     *     *     *     *

## SECOND AMENDED COMPLAINT

Plaintiff Roger Schlossberg, as Liquidating Trustee, brings this complaint for declaratory and equitable relief against Defendants.

## I.  THE PARTIES

1.     Plaintiff Roger Schlossberg is the Liquidating Trustee ("Liquidating Trustee") under the terms of the Confirmed Chapter 11 Trustee's Plan of Liquidation of the Estate of Vincent L. Abell ("Plan").  The Chapter 11 Trustee proposed the Plan in the above-captioned chapter 11 bankruptcy case ("Bankruptcy Case") to create and implement the Liquidation Trust for the benefit of the Beneficiaries.The Bankruptcy Court confirmed the Plan and approved the formal creation of the Liquidation Trust on January 14, 2021.  During the course of the Bankruptcy Case, the Liquidating Trustee served as Abell's Chapter 11 Trustee ("BK Trustee").  The Effective Date of the Plan is January 28, 2021 and the Liquidation Trust was established on that date. *Exhibit 1* is a

3

copy of the Plan. *Exhibit 2* is a true and authentic copy of the Liquidation Trust Agreement With Respect to the Estate of Vincent L. Abell ("Trust Agreement"). All terms used in this complaint and not defined herein shall have the same meaning set forth in the Plan and Liquidation Trust Agreement.

2.     Defendant Vincent L. Abell ("Abell" or "Debtor") is the Debtor in the Bankruptcy Case. He is also the Debtor under the Plan and the Liquidation Trust.

3.     Defendant Marta Bertola ("Bertola") is Abell's ex-wife from whom he ultimately obtained a divorce during the course of the Bankruptcy Case. Although Abell and Bertola have led separate personal lives for many years (aside from their joint support and rearing of their now adult children), they never ceased their joint "business operations" and their unrelenting concealment of Abell's assets from his creditors, the Court, the BK Trustee and now the Liquidating Trustee. After the BK Trustee obtained judgments against Abell and Bertola for sanctions, Bertola, too, concealed her assets from the BK Trustee and now the Liquidating Trustee. As explained more fully below, Bertola has actively conspired with and is aiding and abetting Abell in his continuing concealment of assets that are Property (as defined below) of the Liquidation Trust and his endless fraud on creditors, and she is the recipient of fraudulently conveyed assets.

4.     The following entity defendants are collectively referred to as "Entity Defendants":

    a.   Vinmar, LLC ("Vinmar") is a Maryland limited liability company formed by Abell or by Abell and Bertola jointly during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust. Abell, and Abell and Bertola jointly, use Vinmar, and likely multiple other similar entities (in addition to those listed below), to defraud

4

creditors, hide assets, and to obscure Abell's true beneficial ownership of land acquired by Vinmar.

b.  Merganser Builders, LLC ("Merganser") is a Maryland limited liability company formed by Abell or by Abell and Bertola jointly during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust.  Abell, and Abell and Bertola jointly, use Merganser to defraud creditors, hide assets, and to obscure Abell's true beneficial ownership of land acquired by Merganser.

c.  Griffin Arms LLC ("Griffin Arms") is a Maryland limited liability company formed by Abell or by Abell and Bertola jointly during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust.  Abell, and Abell and Bertola jointly, use Griffin Arms to defraud creditors, hide assets, and to obscure Abell's true beneficial ownership of land acquired by Griffin Arms.

d.  Rock Hall Builders LLC ("Rock Hall") is a Maryland limited liability company formed by Abell  jointly during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust.  Abell uses Rock Hall to defraud creditors, hide assets, and to obscure Abell's true beneficial ownership of land acquired by Rock Hall.

e.  Greenspring Home Builders, LLC ("Greenspring") is a Maryland limited liability company formed by Abell during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust.  Abell uses Greenspring to defraud creditors, hide assets,

5

and to obscure Abell's true beneficial ownership of land acquired by Greenspring.

f.   Federalsburg Builders, LLC ("Federalsburg") is a Maryland limited liability company formed by Abell during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust. Abell uses Federalsburg to defraud creditors, hide assets, and to obscure Abell's true beneficial ownership of land acquired by Federalsburg.

g.   Conowingo Homes, LLC ("Conowingo") is a Maryland limited liability company formed by Abell or by Abell and Bertola jointly. Abell, or Abell and Bertola jointly, use Conowingo to defraud creditors, hide assets, and to obscure Abell's true beneficial ownership of land acquired by Conowingo.

h.   SEA Home Builders, LLC ("SEA") is, upon information and belief a Delaware limited liability company formed by Abell or by Abell and Bertola jointly during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust. Upon information and belief, Abell, or Abell and Bertola jointly, use SEA to defraud creditors, hide assets, and to obscure Abell's true beneficial ownership of land acquired by SEA.

5.    The Entity Defendants are Property of the Bankruptcy Estate (as defined below) and, therefore, are Liquidation Trust Assets (as defined below) owned by the Liquidation Trust. Abell, with the assistance of Bertola, is attempting to conceal each of the Entity Defendants from the Liquidating Trustee and, in turn, from Abell's creditors and the Court. In many cases, when he formed the Entity Defendants, he made sure not to list himself as a member of the LLC and,

6

instead, got someone else to be named as the nominal owner to create the illusion that Abell is not the real owner.  In so doing, Abell has attempted to obscure from the Liquidating Trustee and creditors his true, beneficial ownership interest in the Entity Defendants.  Thus, notwithstanding who Abell may have gotten to be named or listed on paper as the nominal owner of any of the Entity Defendants, the true beneficial owner of the Entity Defendants is Abell, or Abell and Bertola jointly or in common, and each Entity Defendant is an alter-ego entity of Abell, or of Abell and Bertola jointly, being deployed by him and/or them to frustrate the Liquidating Trustee and Abell's creditors as part of their fraud and concealment scheme, which they began years ago. Abell, or Abell and/or Bertola jointly, have used and continue to use the Entity Defendants to purchase, hold, and sell real property as part of Abell's and/or their respective scheme to conceal assets from the Liquidating Trustee.

6.      Through the façade of the Entity Defendants, Abell has acquired properties that purport to have been titled to the Entity Defendants ("Subject Properties").  The Subject Properties that the Liquidating Trustee has identified as of the date of this Complaint, can be organized into four categories:

a.      Properties currently in the name of the Entity Defendants that were acquired during the pendency of the Bankruptcy Case and before the Effective Date of the Plan and establishment of the Liquidation Trust ("Currently Held Properties").  The now known Currently Held Properties are fully identified on the chart attached as *Exhibit 3A*.

b.      Properties that have been sold, but which were acquired in the name of the Entity Defendants during the pendency of the Bankruptcy Case and before the Effective Date of the Plan and establishment of the Liquidation Trust ("Sold Properties").  The now known Sold Properties are fully identified on chart attached as *Exhibit 3B*.

7

c.     Properties currently in the name of the Entity Defendants that were acquired after the Effective Date of the Plan and establishment of the Liquidation Trust ("After Acquired—Held Properties").  Upon information and belief, the After Acquired—Held Properties were acquired with funds belonging to but concealed from the Liquidation Trust.  The now known After Acquired—Held Properties are fully identified on the chart attached as *Exhibit 3C*.

d.     Properties acquired in the name of the Entity Defendants after the Effective Date of the Plan and establishment of the Liquidation Trust, but which have since been sold ("After Acquired—Sold Properties").  Upon information and belief, the After Acquired—Sold Properties were acquired with funds belonging to but concealed from the Liquidation Trust.  The now known After Acquired—Sold Properties are fully identified on the chart attached as *Exhibit 3D*.[1]

## II.  LIQUIDATING TRUSTEE'S CLAIMS AND AUTHORITY TO BRING THIS ACTION

### A.  Summary of Claims

7.     In this action, the Liquidating Trustee seeks the following relief:

a.     Entity Defendants.  A declaratory judgment that the Entity Defendants are Property and Liquidation Trust Assets of and owned by the Liquidation Trust;

b.     Currently Held Properties.  A declaratory judgment that the Currently Held Properties are Property and Liquidation Trust Assets of and owned by the Liquidation Trust;

---

[1] Because discovery has not yet commenced in this action and because Abell and Bertola are skilled at concealing assets and have a long history of spoliating evidence and refusing to comply with discovery requests (as detailed below), the Liquidating Trustee has not identified all properties and assets that are properly the subject of this action.  As a result, each of the defined terms in this Paragraph 6 include all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3A, 3B, 3C, and 3D* and are hereafter added to those exhibits. Had they not been concealed, all properties currently (and still to-be identified) in categories 3A and 3B would have been included in the Trustee's Original Adversary Proceeding (defined below in para. 7.f.ii.).

c.    Sold Properties.  A declaratory judgment that the Sold Properties were Property and Liquidation Trust Assets of and owned by the Liquidation Trust and, therefore, the proceeds from the sales of the Sold Properties should have been, but were not, paid into the Liquidation Trust.  Accordingly, the Liquidating Trustee seeks money judgments jointly and severally against Abell, Bertola, and all appropriate Entity Defendants in the amount of such proceeds.

d.    After Acquired—Held Properties.  A declaratory judgment that the After Acquired—Held Properties were acquired with funds belonging to but concealed from the Liquidation Trust and, as such, are Property and Liquidation Trust Assets of and owned by the Liquidation Trust.

e.    The After Acquired—Sold Properties.  A declaratory judgment that the After Acquired—Sold Properties were acquired with funds belonging to but concealed from the Liquidation Trust and that the proceeds from the Sold Properties should have been, but were not, paid into the Liquidation Trust.  Accordingly, the Liquidating Trustee seeks money judgments jointly and severally against Abell, Bertola, and all appropriate Entity Defendants in the amount of such proceeds.

f.    Additional/Alternative Relief.  In addition and/or in the alternative to the relief described above, the Liquidating Trustee seeks declarations that:

i.    each Entity Defendant has no independent identity distinct from Abell or from Abell and Bertola jointly or in common, because each Entity Defendant is the alter-ego of Abell or of Abell and Bertola jointly and, therefore, each Entity Defendant is an illegitimate entity that lost or never had any of the personal liability protection attributes of a properly formed limited liability company in good standing under Maryland or any other state's law; and

ii.      consequently, Abell or Abell and Bertola jointly or in common is/are the beneficial, actual owner(s) of the Subject Properties that purport to be owned by any Entity Defendant and, therefore, such properties are encumbered by the judgment liens created by a recorded, monetary judgment that the Liquidating Trustee obtained in this Court on July 15, 2016 in the principal amount of $602,232.20 against Abell, Bertola, and an Abell entity, jointly and severally.  *See* AP ECF 443 in *Roger Schlossberg, Ch. 11 Trustee v. Vincent L. Abell, et. al.*, Adv. Proc. No. 14-00417 ("Original Adversary Proceeding").[2] The Plan defines the judgment and related orders as the "Spoliation Judgments."  Plan, §1.01.82.

g.      a money judgment for the proceeds from the sale of Sold Properties and After-Acquired Sold Properties, which sales flow from the unauthorized use of funds and property that were property of the Bankruptcy Estate and/or Liquidation Trust (11 U.S.C. §§ 549 and 550).

**B.  The Plan and the Liquidating Trust**

8.      The Plan expressly authorizes the Liquidating Trustee to bring this action and assert the claims set forth in this complaint.  This Court confirmed the Plan (BK Doc. 1286) on January 14, 2021 with a Plan Effective Date of January 28, 2021.  *See* BK Doc. 1326.

9.      The Liquidation Trust was created pursuant to the Plan "for the primary purposes of monetizing, collecting, holding, administering, distributing and liquidating the Liquidation Trust Assets and/or Property for the benefit of the Beneficiaries[3] . . . ."

---

[2] Citations to papers filed in the Original Adversary Proceeding are cited by reference to the document's "ECF" number in the following format:  "AP ECF ___."  Citations to papers filed in the Bankruptcy Case are cited by reference to the document's "Doc." Number in the following format:  "BK Doc. ___."

[3] "Beneficiaries" are "Holders of Allowed Claims under the Plan, or any successors to such Holders' Allowed Claims."  *See* Trust Agreement, *Exhibit 2* at § 1.1.2.

10

10.    Under the Plan, the term "'Property' means, as to the Debtor, any and all assets or property of the Debtor or Estate, of any kind, nature or description whatsoever, real or personal, tangible or intangible, as defined in section 541 of the Bankruptcy Code." Plan, § 1.01.72. The term "'Estate' means the estate of the Debtor created by operation of law on the Petition Date pursuant to section 541 of the Bankruptcy Code." Plan, § 1.01.37. Property of the Estate includes "[a]ny interest in property that the estate acquires after the commencement of the case" as set forth in §547(a)(7), including the Entity Defendants, the Subject Properties, and any other assets the Debtor so acquired.

11.    On the Effective Date, *i.e.*, January 28, 2021, the Liquidation Trust was established for purposes of administering all of the Property, and all of the Property automatically vested in the Liquidation Trust and became "Liquidation Trust Assets" on that date. Plan, § 5.02(a) and (b)(i).

12.    Any Property in which Abell had any right, title, or interest before or during the pendency of the Bankruptcy Case is a Liquidation Trust Asset of the Liquidation Trust and is, therefore, subject to the Liquidating Trustee's plenary authority to control the Property for its ultimate liquidation and distribution. Plan, § 5.05.

13.    The Liquidating Trustee's powers include the power "to prosecute, compromise, and/or settle Claims and Causes of Action . . . ." Plan, § 5.05(c)(iv). "'Cause(s) of Action' means any and all of the following owned by the Debtor, the Trustee or the Estate: actions, proceedings, obligations, judgments (**including, without limitation, the Spoliation Judgments** and any other judgments obtained by the Trustee), debts, accounts, claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, causes of action (including against insiders), choses in action, controversies, agreements, promises, rights to legal remedies,

rights to equitable remedies, rights to payment and claims whatsoever (and any rights to any of the foregoing), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, then existing or thereafter arising, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, including, without limitation, any recharacterization, subordination, Avoidance Action, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any similar provisions of applicable state or federal law. Causes of Action constitute Property as defined herein." Plan, §1.01.16 (emphasis added).

14.     Consequently, the Liquidating Trustee has full power and authority to bring this action and to seek the relief sought in this complaint.

### III.    JURISDICTION AND VENUE

15.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. §157(a), United States District Court Local Rule No. 402, Bankr. Rule 7001. Further, this adversary proceeding is a "core proceeding" as contemplated in 28 U.S.C. §157(b)(2)(A),(E), (K), (L), and (O).  Alternatively, this Court has jurisdiction pursuant to 28 U.S.C. § 157(c)(1).

16.     This adversary proceeding seeks declaratory relief, injunctive relief, and other forms of equitable relief based upon state law claims.  These claims against Abell, against Bertola, against Abell and Bertola jointly, and against the Entity Defendants arise out of matters related to the Bankruptcy Case and its administration and this Court also has supplemental jurisdiction over these matters under 28 U.S.C. § 1367.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1409 because: (i) the chapter 11 case to which this action is related is the captioned Bankruptcy Case before this Court; and (ii) none of the exceptions set forth in 28 U.S.C. § 1409 applies to this action.

18.     In accordance with Local Rule 7012-1(b), the Liquidating Trustee states that he consents to entry of final orders or judgments by the Bankruptcy Judge.

## IV.    FACTS

### A.  Abell and Bertola's Long-Standing History of Fraud

19.     Abell and Bertola — through various sham entities, their children and other family members, and close associates — have actively attempted to conceal tens of millions of dollars' worth of properties and assets from this Court, the Estate, Abell's *bona fide* creditors, and now the Liquidation Trust.  As described in a 43-count complaint against Abell, Bertola, and others in the Original Adversary Proceeding (AP ECF 7), Abell has implemented a continuing scheme to camouflage his ownership of ongoing businesses and scores of properties and assets, manufacturing hundreds of phony transactions to create the appearance, on paper, that Abell is not the true owner, when in fact he is.

20.     In the court systems of Maryland and the District of Columbia, Abell is an adjudicated fraudster.  From the outset of his real estate career, Abell used real estate transactions to defraud vulnerable people of limited means.  In connection with federal charges related to 24 "deals" that Abell brokered in the 1980s, Abell pled guilty to making a false statement on a federal form and was sentenced to six months in prison.  The government noted in its January 30, 1989 sentencing memorandum that Abell used straw purchasers to create the illusion that he had sold a property, but that Abell would maintain ownership and control of the property.  Specifically, the government commented that his "use of straws to conceal assets and circumvent rent control

13

regulations is particularly venal."  As detailed in this complaint, such conduct continues to this day.

21.    In the years before he filed his bankruptcy petition in the Bankruptcy Case, Abell expanded his real estate empire through repeated "mortgage rescue" scams that preyed on elderly and other vulnerable members of the community.  Pursuant to Abell's scheme, Abell (or one of his agents) approached homeowners who were behind on their mortgage payments and on the brink of foreclosure.  Abell promised to pay off the outstanding mortgages in return for his victims' agreement to pay him back.  In reality, however, the documents that Abell and his former wife, Bertola (a suspended lawyer), prepared were largely illegitimate loan documents which  Abell and Bertola used to trick their victims into unwittingly deeding their homes to Abell and becoming his tenants.  The victims were then required to make significant "rental" payments to Abell to keep living in their homes.  And when his victims were eventually unable to pay that rent (as Abell counted on), Abell evicted them, took possession of their homes, and rented the homes to new tenants or sold the homes for large profits.

22.    Those victims who were fortunate enough to retain counsel obtained significant judgments for both compensatory and punitive damages against Abell and his business, defendant Modern Management Company ("Modern Management").  Many of those victims are now the Beneficiaries of the Liquidation Trust for whom this lawsuit is brought.

23.    For example, a jury found that Abell lured one of his victims, Maria Wilson ("Wilson"), into believing that he was paying off the mortgage on her house in return for her agreement to make payments on a significant loan.  Instead, Abell deceived Wilson into selling her house for a small price and becoming bound to a lease with unaffordable rent.  When she eventually was unable to pay her "rent," Abell evicted her.  On April 13, 2007, Wilson obtained a

14

judgment against Abell and Modern Management for compensatory and punitive damages totaling nearly $2 million.

24.    Likewise, in 2006, the Circuit Court for Prince George's County entered a judgment for Tommie Mae Smith for $510,968.28, including $500,000 in punitive damages. Similarly, the Circuit Court for Montgomery County entered a series of judgments in favor of Mark Cissel, Karen Cissel, and Hedwig Cissel for a total of $60,000 in compensatory damages, $85,000 in punitive damages, and $328,780.01 in attorneys' fees.

25.    As a result of those lawsuits, Abell's fraudulent enterprise became the subject of several stinging judicial opinions. As the Hon. Stephen Platt, then of the Circuit Court for Prince George's County, observed in *Smith v. Abell*:

> The Defendant, Mr. Abell's tortious conduct in this case constitutes the most reprehensible actions this Court has ever observed in his 28 years on the Orphans Court, the District Court, and the Circuit Court save only the physical violence and death routinely visited on the Court's conscience in criminal cases. On a scale of one to ten as to its reprehensibility, one being slightly reprehensible and ten being super reprehensib[le] . . . the Court rates this an eleven. If the Defendant sleeps at night, the Court can't help but wonder how.

26.    Similarly, in an opinion affirming a judgment against Abell in the Circuit Court for Montgomery County, former Chief Judge Wilner of the Court of Special Appeals of Maryland wrote that Abell had taken "chutzpah to new heights."

27.    There are no fewer than 20 court orders sanctioning Abell and/or Bertola for discovery abuses and directing them to comply with discovery obligations, including an order incarcerating Mr. Abell for contempt for his failure to comply with post-judgment discovery in aid of collection. Rather than complying with post-judgment discovery, Abell chose instead to be incarcerated for nearly six months until the Superior Court for the District of Columbia finally

15

concluded that no further purpose of the contempt could be served — regardless, Abell never complied.

28.     In addition to the multiple cases and judgments against Abell in the Maryland courts, as of the date the Original Adversary Proceeding was filed, Abell had been a party in more than 130 different cases in the District of Columbia.  An Order of Contempt entered by the Superior Court for the District of Columbia ("3/29/13 Order") summarized Abell's infamous history of fraud and contempt of court orders and describes Abell as a "highly experienced litigant."  That order culminates in the determination that incarceration was the only remedy for Abell's refusal to provide discovery given Abell's flagrant contemptuous conduct.

29.     When a few of his victims — who later became judgment creditors, Abell's bankruptcy creditors and now Beneficiaries — began closing in on Abell, Abell applied the same fraudulent practices to avoid his debts and conceal his assets from them.  Although elaborate in many respects, the goal of his fraudulent plan has been and remains simple: To avoid paying his victims by hiding his assets and retaining everything for himself.

30.     Abell's plan had two basic parts.  The first part involved the orchestration of sham transactions, ranging from simple transactions where Abell uses friends or family members as "pass-throughs" or "straw man" purchasers to conceal his true ownership in the assets, to more elaborate schemes, involving a series of cleverly devised, but ultimately phony, transactions designed to make it appear that Abell is not the true owner of his assets and holdings.

31.     In one category of sham transactions, Abell purports to grant liens upon his real estate (or real estate titled in the names of others on his behalf) to insiders, family members/relatives, friends and related entities (that he controls) on account of sham loans — "loans" where in fact there is no underlying debt obligation and nothing actually owed.  These

4864-4068-5135, v. 1

purported liens are always in favor of a person or entity that is a confederate of Abell. The purpose of such liens is to capture — for Abell's benefit — equity in an asset to the detriment of Abell's known and unknown actual creditors. Through these wide-ranging scams, Abell's objective is to put his assets and money out of reach of creditors and to disguise himself as a man of only modest holdings.

32.    In the same manner, Abell has attempted to obscure his interest in individual properties. For example, two weeks after Wilson obtained her substantial judgment, Abell purported to convey a Silver Spring property to Bertola for no consideration. Six weeks later, Bertola sold the same property to a third party for $325,000. None of that money was used to pay Wilson.

33.    During the very same time period, Abell ginned up "loans" he purportedly received from several other defendants, including Fela Bertola (Abell's mother-in-law), Maria Antonopoulis (a family friend) and several Abell-related entities. The loans, however, were shams. These defendants did not provide funds to Abell; rather, the "loans" were engineered by Abell after-the-fact as an excuse to justify payments to his friends and associates, who had agreed to hold funds for him in a form that Abell's bona fide creditors, like Wilson, could not reach.

34.    None of the proceeds in these transactions, or the dozens of transactions just like them, flowed to any of Abell's victims. Money traveled in and out of bank accounts that were only open for a matter of days, and Abell and Bertola refused to explain where the money had gone. As the Superior Court for the District of Columbia observed, Wilson "is totally unable to collect her judgment [against Abell] because of the intricate and ongoing ways in which Abell has hidden his assets and hidden information about his financial empire." 3/29/13 Order, at 30. "He is using every imaginable approach to avoid payment of the money judgment in this case." *Id.* at 28. All

the while, Abell, his friends, and his family members continue to enjoy the proceeds of his fraud. Another tactic that Abell has employed in his attempt to put assets out of reach of creditors is to title entities or properties in the name of purported retirement or pension plan, asserting they are exempt from collection by creditors.

35.     The second part of Abell's fraudulent plan was his filing of the Bankruptcy Case. Naturally, the assets that he has concealed from his victims — assets that appear on paper not to belong to him, but in which he retained a secret beneficial interest — were not listed on his Statement of Financial Affairs or on the schedules filed in the Bankruptcy Case.  Those assets generated substantial revenues.  Abell directed that those revenues be paid to his friends and family members, instead of allowing that money to flow into the bankruptcy estate.

36.     As to the assets that he did schedule in the Bankruptcy Case, Abell either: (i) misrepresented the nature of his interest in the property; or (ii) caused them to be "liened up" with bogus mortgages purportedly held by friends and family members.  In the case of the former, Abell fraudulently misrepresented that he held multiple properties jointly with his then wife, Bertola, as tenants-by-the-entirety when in fact the properties are owned and controlled solely by him.  In the case of the latter, Abell manufactured false liens in an attempt to ensure that the proceeds from the sales of his assets would flow to his friends and family members and away from his creditors. Indeed, Abell went so far as to concoct false proofs of claim from his friends and family members, some of which Bertola prepared and signed, purportedly as the "creditor's authorized agent."  Abell then personally delivered these false proofs of claim to the federal courthouse in Baltimore after his failed attempt personally to file them in Greenbelt.

37.     Thus, Abell attempted to put millions of dollars' worth of assets and income from his real estate empire out of the reach of the BK Trustee, this Court, Abell's creditors and now the

Liquidating Trustee.  Abell's endgame was to obtain a discharge (which the Court denied) without ever subjecting the vast majority of his holdings to the claims of his legitimate creditors.

38.     Because "Abell uses other persons and other entities to hide information," 3/29/13 Order at 29, those other persons and entities — specifically, Bertola and the Entity Defendants — are necessarily defendants in this action.  They are Abell's co-conspirators and active aiders and abettors of Abell's fraudulent enterprise.

**B.  This Court's Terminating Sanctions and the Spoliation Judgments**

39.     Abell's and Bertola's fraudulent conduct and concealment of assets were on full display in the Original Adversary Proceeding.  During discovery in the Adversary Proceeding, the BK Trustee pursued discovery of documents and electronically-stored information ("ESI") pertaining to Abell's real estate empire.  The BK Trustee uncovered that, while his lawyers were pursuing discovery, Abell and Bertola were, behind the scenes, actively and intentionally destroying massive stores of evidence for the purpose of blocking the BK Trustee and the Court from uncovering Abell's assets and bringing them into the Estate.

40.     When the Trustee first discovered that Bertola and Abell were spoliating evidence, the BK Trustee promptly filed motions for sanctions.  After extensive briefing and discovery on the issue of the scope and methods of the spoliation, this Court conducted a one-week evidentiary hearing where several witnesses (including forensic experts) testified and hundreds of documents were moved into evidence. The evidence overwhelmingly demonstrated that Bertola — with Abell's knowledge and consent — engaged in systematic efforts to destroy evidence of their real estate holdings and to cover the tracks of their spoliation.

41.     In a 51-page Memorandum of Decision issued on April 14, 2016 (AP ECF 326), Judge Catliota found, in no uncertain terms, that "Ms. Bertola, with Mr. Abell's knowledge and

19

acquiescence, intentionally, willfully and repeatedly destroyed discoverable information for the specific purpose of keeping it from the [BK] Trustee and Ms. Wilson. The court also finds that, in doing so, Ms. Bertola acted on behalf of herself, Mr. Abell, American Trust, and other Abell-related entities." *Id.* at 2. The Court found that "Ms. Bertola stalled the turnover of ESI again, while she continued to destroy evidence, with the knowledge that she had a continued legal duty to preserve." *Id.* at 27-89. Indeed, Judge Catliota found that she destroyed ESI "on at least sixteen different occasions and on several devices." *Id.* at 28. Judge Catliota held:

> Ms. Bertola's destruction of ESI was intentional and in bad faith, and done for the express purpose of depriving the Trustee, Ms. Wilson, and other claimants of evidence. Ms. Bertola ran the Wipe Free Space feature before the two computer imagings, and at other times, to destroy data. She did so to ensure that the deleted information would be lost forever. She did so as part of an intentional effort to prevent the ESI from being retrieved in discovery. This is established by both direct evidence and substantial circumstantial evidence. It is also established by the lack of credibility in Ms. Bertola's explanation.

*Id.* at 36. "Mr. Abell and Ms. Bertola have made a mockery of the judicial process." *Id.* at 47. Judge Catliota found that Mr. Abell has "distain for the judicial process," and Ms. Bertola "holds little regard for the judicial process." *Id.*

42.     As a result of their egregious misconduct, Judge Catliota granted the BK Trustee's request for terminating sanctions, entering judgments against them pursuant to the BK Trustee's complaint that resulted in hundreds of properties — properties that Abell had titled in names of sham entities or confederates the paper work for which was often prepared by Bertola in furtherance of their attempt to conceal assets from this Court — being deemed property of the Estate.

43.     In addition, Judge Catliota granted judgment for the BK Trustee under the count of the BK Trustee's complaint that sought this Court's denial of the Debtor's Discharge pursuant to

11 U.S.C. § 727(a)(2) through (5) because Abell, with the intent to hinder, delay, and/or defraud his creditors and the BK Trustee, concealed property from the Estate.

44.    Moreover, the Court awarded attorneys' fees and costs in favor of the BK Trustee and against Bertola and Abell, jointly and severally, which is embodied in the above-described Spoliation Judgments entered by this Court on July 16, 2016.  The Spoliation Judgments remain open and unsatisfied, and continue to accrue a legal rate of interest.

**C.  The Entity Defendants and the Subject Properties**

45.    The Spoliation Judgments, the denial of Abell's discharge, the Trustee's recovery and liquidation of nearly $20 Million of Abell's mostly concealed assets and their direct knowledge that the Liquidation Trust was designed to allow the Liquidating Trustee to recover the assets described in this Complaint have, incomprehensibly, not deterred Abell and Bertola.  To the contrary, Abell and Bertola have continued their fraudulent scheme to defraud creditors and conceal assets from the Estate and from the Liquidation Trust.  Indeed, the Liquidating Trustee has discovered that, after the filing of the instant action, while Abell was in communications with undersigned counsel seeking a stay of his time for answering the complaint in this action and for responding to state court discovery requests, he was actively selling property and pocketing the money right under the nose of the Liquidating Trustee.

46.    Each of the Entity Defendants is a sham entity that Abell, or Abell and Bertola jointly, formed to conceal the Subject Properties and all proceeds derived therefrom (and potentially other assets) from the BK Trustee and now the Liquidating Trustee.

47.    For example, Vinmar, which was formed on January 27, 2020.  The entity's name is a combination of the first three letters of Abell's and Bertola's first names, *i.e.*, "Vin" for **Vin**cent Abell and "mar" for **Mar**ta Bertola.  Recently, Bertola has asserted that "Vin" does not refer to

Abell, but instead refers to their son Vincent, Jr.  Although "Vin" does refer to Abell, her false assertion is consistent with their practice of using their children as "strawmen" to hide Abell's true beneficial interest in the entity.

48.     Each Entity Defendant was a device that Abell used to acquire the Subject Properties, while concealing that he is the true owner of the Subject Properties.  The Currently Held Properties (identified in *Exhibit 3A*) and the Sold Properties (identified in *Exhibit 3B*) were acquired by their corresponding Entity Defendants while the Bankruptcy Action was pending and before establishment of the Liquidation Trust.  As such, the Currently Held Properties rightfully belong to the Liquidation Trust and the proceeds of the Sold Properties must be paid into the Liquidation Trust.

49.     Upon information and belief, using the proceeds from the sale of the Sold Properties and other funds belonging to the Liquidation Trust, Abell, through the corresponding Entity Defendants, acquired the After Acquired—Held Properties (identified in *Exhibit 3C*) and the After Acquired—Sold Properties (identified in *Exhibit 3D*).   As such, the After Acquired—Held Properties are Property of the Estate and, therefore, a Liquidation Trust Asset.  Unfortunately, although Abell was able to sell the After Acquired—Sold Properties, he never paid the proceeds of such sales into the Liquidation Trust where they belong.  Hence, those proceeds must be paid into the Liquidation Trust.

50.     At bottom, Abell and Bertola are using the Entity Defendants as part of the same old playbook they have employed for close to two decades to hide Abell's assets from creditors, including the Liquidating Trustee.

51.     Although the Subject Properties are or were nominally titled to various Entity Defendants (as set forth in *Exhibits 3A*, *3B*, *3C*, and *3D*), in actuality the entities are nothing more

than the alter egos of Abell (or Abell and Bertola jointly) and, consequently, it is *Abell* (*or Abell and Bertola jointly*) who acquired those properties (and received the cash proceeds from the sales of any such properties).  Abell, or Abell and Bertola jointly, exercise(s) complete dominion and control over each entity and its operations.  None of the entities has an independent identity distinct from that of Abell or of Abell and Bertola jointly.  Abell and Bertola have disregarded any organizational formalities with respect to the entities, just as they have done with all of their other sham entities which became Property of the Estate pursuant to the Spoliation Judgments.  Abell or Abell and Bertola jointly exercise complete control over and guide every aspect of the Entity Defendants and such control and operation has been used by him or them to conceal information and assets from the BK Trustee and the Liquidating Trustee.  Abell, or Abell and Bertola jointly, are using the Entity Defendants to deceive the Liquidating Trustee and frustrate his ability to take control of the Subject Properties (to the extent they have not been sold) and obtain the proceeds from the Subject Properties (to the extent any have been sold).

52.     As just one example of their disregard of organizational formalities, they have represented in public land records that Bertola is the "Sole Member" of Vinmar, thus perpetuating the illusion that she is the sole owner of Vinmar and that no other person, including Abell, is an owner of Vinmar.  When they needed to obtain a zoning variance for one of the Currently Held Properties, a property located in Cecil County and identified in *Exhibit 3A*, however, Bertola and Abell held themselves out to the public and in their testimony before the Cecil County Board of Appeals as partners in Vinmar.  This is consistent with their long track record of creating hundreds and hundreds of entities to conceal Abell's true beneficial interest in the real estate that he owns.

53.     The Entity Defendants are being used by Abell, or Abell and Bertola jointly, to commit a fraud or wrong upon the Liquidating Trustee and creditors.  Abell, or Abell and Bertola

23

jointly, exercise(s) such complete control and dominion over the Entity Defendants that they are his or their alter egos.

54.     Despite efforts to obscure and conceal his ownership interest in the Subject Properties that have not yet been sold, Abell maintains an ongoing equitable and beneficial (if not sole ownership) interest in the identified Subject Properties and any proceeds therefrom, and, accordingly, all are Property and Liquidation Trust Assets of and owned by the Liquidation Trust.

55.     Rock Hall, Greenspring, Federalsburg — Entity Defendants that were all formed in 2019 during the pendency of the Bankruptcy Action — are sham entities created by Abell.  To conceal his true ownership interest in the entities, Abell formed the entities listing his longtime girlfriend and now wife, Maria Maya ("Maya"), as the owner.  That Maya is the owner of any of these entities is a farce.  Abell is the owner.  Rock Hall, Greenspring, and Federalsburg are the nominal owners of certain Currently Held Properties as identified on *Exhibit 3A* and were the nominal owners of certain Sold Properties as identified on *Exhibit 3B* before Abell caused those properties to be sold and the proceeds concealed from the Liquidation Trust.

56.     Upon information and belief, with proceeds from the sale of Sold Properties, certain After Acquired—Held Properties and After Acquired—Sold Properties (as identified in *Exhibits 3C* and *3D*) were acquired by Abell.  As explained above, Merganser, Rock Hall, Greenspring, Federalsburg, Griffin Arms and Conowingo are alter-egos of Abell, and any assets or property purported to be owned by those entities and the proceeds from the sales of the any properties purported to be owned by those entities are Property of the Estate and, therefore, a Liquidation Trust Asset.

4864-4068-5135, v. 1

## V. COUNTS

### COUNT I
**Declaratory Judgment Pursuant to
28 U.S.C. §§ 2201 and 2202
(The Currently Held Properties — *Exhibit 3A*)**

57.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

58.    An actual controversy exists between and among the parties.

59.    Specifically, the Liquidating Trustee contends that each of the Currently Held Properties is Property and a Liquidation Trust Asset of and owned by the Liquidation Trust, whereas presumably one or more of the Defendants contend that the Currently Held Properties are not assets of the Liquidation Trust.

60.    Antagonistic claims exist between and among the parties which indicate and have resulted in imminent and inevitable litigation.  Therefore, a controversy between and among the parties exists which entitles the Liquidating Trustee to this Court's declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

61.    This Court's declaratory judgment concerning the parties' rights and interests as to each of the Currently Held Properties will terminate this controversy.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment, declaring, decreeing, and adjudging the rights of the parties as follows:

A.    Each of the Currently Held Properties, identified in detail in *Exhibit 3A*, is Property of the Liquidation Trust and a Liquidation Trust Asset;

B.      The Liquidating Trustee is authorized to take control and dispose of each of the Currently Held Properties pursuant to his authority as Liquidating Trustee of the Liquidation Trust;

C.      The deed to each of the Currently Held Properties is reformed to reflect that the Liquidating Trustee is the record title holder;

D.      All such relief granted by the Court under this Count shall apply to all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3A* and are hereafter added to *Exhibit 3A*;

E.      The Liquidating Trustee is entitled to such other necessary or proper relief to be determined upon the adjudication of the merits of this action.

## COUNT II
**Declaratory Judgment Pursuant to**
**28 U.S.C. §§ 2201 and 2202**
**(The Sold Properties — *Exhibit 3B*)**

62.      Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph. To the extent that this Count seeks relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

63.      An actual controversy exists between and among the parties.

64.      Specifically, the Liquidating Trustee contends that each of the Sold Properties was Property and a Liquidation Trust Asset of and owned by the Liquidation Trust, whereas presumably one or more of the Defendants contend that the Sold Properties were not assets of the Liquidation Trust.

65.     Antagonistic claims exist between and among the parties which indicate and have resulted in imminent and inevitable litigation.  Therefore, a controversy between and among the parties exists which entitles the Liquidating Trustee to this Court's declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

66.     This Court's declaratory judgment concerning the parties' rights and interests as to each of the Sold Properties will terminate this controversy.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment, declaring, decreeing, and adjudging the rights of the parties as follows:

A.     Each of the Sold Properties, identified in detail in *Exhibit 3B*, was Property of the Liquidation Trust and a Liquidation Trust Asset;

B.     All such relief granted by the Court under this Count shall apply to all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3B* and are hereafter added to *Exhibit 3B*; and

C.     The Liquidating Trustee is entitled to such other necessary or proper relief to be determined upon the adjudication of the merits of this action.

### COUNT III
**Declaratory Judgment Pursuant to
28 U.S.C. §§ 2201 and 2202
(The After Acquired—Held Properties — *Exhibit 3C*)**

67.     Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

68.     An actual controversy exists between and among the parties.

69.     Specifically, the Liquidating Trustee contends that each After Acquired—Held Property is Property and a Liquidation Trust Asset of and owned by the Liquidation Trust, whereas presumably one or more of the Defendants contend that the After Acquired—Held Properties are not assets of the Liquidation Trust.

70.     Antagonistic claims exist between and among the parties which indicate and have resulted in imminent and inevitable litigation.  Therefore, a controversy between and among the parties exists which entitles the Liquidating Trustee to this Court's declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

71.     This Court's declaratory judgment concerning the parties' rights and interests as to each of the After Acquired—Held Properties will terminate this controversy.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment, declaring, decreeing, and adjudging the rights of the parties as follows:

A.     Each of the After Acquired—Held Properties, identified in detail in *Exhibit 3C*, is Property of the Liquidation Trust and a Liquidation Trust Asset;

B.     The Liquidating Trustee is authorized to take control and dispose of each of the After-Acquired Held Properties pursuant to his authority as Liquidating Trustee of the Liquidation Trust;

C.     The deed to each of the After Acquired—Held Properties is reformed to reflect that the Liquidating Trustee is the record title holder;

D.     All such relief granted by the Court under this Count shall apply to all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3C* and are hereafter added to *Exhibit 3C*; and

4864-4068-5135, v. 1

E.    The Liquidating Trustee is entitled to such other necessary or proper relief to be determined upon the adjudication of the merits of this action.

## COUNT IV
### Declaratory Judgment Pursuant to
### 28 U.S.C. §§ 2201 and 2202
### (The After Acquired—Sold Properties — *Exhibit 3D*)

72.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

73.    An actual controversy exists between and among the parties.

74.    Specifically, the Liquidating Trustee contends that each of the After Acquired—Sold Properties was Property and a Liquidation Trust Asset of and owned by the Liquidation Trust, whereas presumably one or more of the Defendants contend that the After Acquired—Sold Properties were not assets of the Liquidation Trust.

75.    Antagonistic claims exist between and among the parties which indicate and have resulted in imminent and inevitable litigation.  Therefore, a controversy between and among the parties exists which entitles the Liquidating Trustee to this Court's declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

76.    This Court's declaratory judgment concerning the parties' rights and interests as to each of the After Acquired—Sold Properties will terminate this controversy.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment, declaring, decreeing, and adjudging the rights of the parties as follows:

4864-4068-5135, v. 1

A.    Each of the After Acquired—Sold Properties, identified in detail in *Exhibit 3D*, was Property of the Liquidation Trust and a Liquidation Trust Asset;

B.    All such relief granted by the Court under this Count shall apply to all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3D* and are hereafter added to *Exhibit 3D*; and

C.    The Liquidating Trustee is entitled to such other necessary or proper relief to be determined upon the adjudication of the merits of this action.

## COUNT V
### Constructive Trust under Maryland Law
### (The Currently Held Properties — *Exhibit 3A*)

77.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

78.    Each of the Currently Held Properties identified in *Exhibit 3A* belongs to and is owned by the Liquidation Trust.  They are Liquidation Trust Assets.

79.    As such, the Liquidating Trustee's equitable right, title, and interest in each of the Currently Held Properties are superior to that of any other person, including Defendants.

80.    Any claim of ownership of each of the Currently Held Properties by any Defendant derives from Abell's fraud, misrepresentations, and unlawful efforts to evade his creditors and hide assets.  It is inequitable for any Defendant to retain any purported interest in each or any of the Currently Held Properties and/or to exercise any control over each or any of the Currently Held

30

Properties. The Liquidating Trustee has a higher equitable call on each of the Currently Held Properties than any Defendant.

81.    It would be unjust and inequitable for any other person to continue to purport to own, hold, and maintain each or any of the Currently Held Properties for the benefit of Abell or themselves as opposed to Abell's *bona fide* creditors, and each of the Currently Held Properties, including all rents and income derived therefrom, should be conveyed to the Liquidation Trust pursuant to equitable principles. The Court should impose a constructive trust on each of the Currently Held Properties for the benefit of Abell's creditors, and order that each of the Currently Held Properties be conveyed and or re-titled to the Liquidation Trust.

WHEREFORE, the Liquidating Trustee requests that this Court: (a) charge upon Defendants a constructive trust of each of the Currently Held Properties (and all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3A* and are hereafter added to *Exhibit 3A*) for the benefit of the Liquidating Trustee; (b) declare and adjudge that Defendants have held and continue to hold each such properties in trust for the benefit of the Liquidation Trust and/or Abell's creditors; (c) order Defendants to convey all purported rights, title, and interests in each such properties to the Liquidating Trustee, free and clear of all liens, mortgages, and other encumbrances; (d) award a money judgment against Defendants in an amount to be established at trial representing the damages resulting from their misuse of each such properties; and (e) grant such other further relief which is just and equitable under the circumstances.

### COUNT VI
### Constructive Trust under Maryland Law
### (The After Acquired—Held Properties — *Exhibit 3C*)

82.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph. To the extent that this Count seeks

4864-4068-5135, v. 1

relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

83.    Each of the After Acquired—Held Properties identified in *Exhibit 3C* belongs to and is owned by the Liquidation Trust.  They are Liquidation Trust Assets.

84.    As such, the Liquidating Trustee's equitable right, title, and interest in each of the After Acquired—Held Properties are superior to that of any other person, including Defendants.

85.    Any claim of ownership of each of the After Acquired—Held Properties by any Defendant derives from Abell's fraud, misrepresentations, and unlawful efforts to evade his creditors and hide assets.  It is inequitable for any Defendant to retain any purported interest in each or any of the After Acquired—Held Properties and/or to exercise any control over each or any of the After Acquired—Held Properties.  The Liquidating Trustee has a higher equitable call on each of the After Acquired—Held Properties than any Defendant.

86.    It would be unjust and inequitable for any other person to continue to purport to own, hold, and maintain each or any of the After Acquired—Held Properties for the benefit of Abell or themselves as opposed to Abell's *bona fide* creditors, and each of the After Acquired—Held Properties, including all rents and income derived therefrom, should be conveyed to the Liquidation Trust pursuant to equitable principles.  The Court should impose a constructive trust on each of the After Acquired—Held Properties for the benefit of Abell's creditors, and order that each of the After Acquired—Held Properties be conveyed and or re-titled to the Liquidation Trust.

WHEREFORE, the Liquidating Trustee requests that this Court: (a) charge upon Defendants a constructive trust of each of the After Acquired—Held Properties (and all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3C* and are

hereafter added to *Exhibit 3C*) for the benefit of the Liquidating Trustee; (b) declare and adjudge that Defendants have held and continue to hold each such properties in trust for the benefit of the Liquidation Trust and/or Abell's creditors; (c) order Defendants to convey all purported rights, title, and interests in each such properties to the Liquidating Trustee, free and clear of all liens, mortgages, and other encumbrances; (d) award a money judgment against Defendants in an amount to be established at trial representing the damages resulting from their misuse of each such properties; and (e) grant such other further relief which is just and equitable under the circumstances.

**COUNT VII**
**Constructive Trust under Maryland Law**
**(The Sold Properties — *Exhibit 3B*)**

87.     Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

88.     All proceeds from the sale of each of the Sold Properties identified in *Exhibit 3B* belong to and are owned by the Liquidation Trust.  They are Liquidation Trust Assets.

89.     As such, the Liquidating Trustee's equitable right, title, and interest in all proceeds from the sale of each of the Sold Properties are superior to that of any other person, including Defendants.

90.     Any claim of ownership of or entitlement to any proceeds from the sale of each of the Sold Properties by any Defendant derives from Abell's fraud, misrepresentations, and unlawful efforts to evade his creditors and hide assets.  It is inequitable for any Defendant to retain any purported interest any proceeds from the sale of each of the Sold Properties and/or to exercise any

control over any proceeds from the sale of each of the Sold Properties. The Liquidating Trustee has a higher equitable call on all proceeds from the sale of each of the Sold Properties than any Defendant.

91.     It would be unjust and inequitable for any other person to continue to purport to own, hold, and maintain any proceeds from the sale of each of the Sold Properties for the benefit of Abell or themselves as opposed to Abell's *bona fide* creditors, all proceeds from the sale of each of the Sold Properties, should be conveyed to the Liquidation Trust pursuant to equitable principles. The Court should impose a constructive trust on all proceeds from the sale of each of the Sold Properties for the benefit of Abell's creditors, and order that a judgment in the amount of all proceeds from the sale of each of the Sold Properties be awarded to the Liquidation Trust.

WHEREFORE, the Liquidating Trustee requests that this Court: (a) charge upon Defendants a constructive trust of all proceeds from the sale of each of the Sold Properties (and all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3B* and are hereafter added to *Exhibit 3B*) for the benefit of the Liquidating Trustee; (b) declare and adjudge that Defendants have held and continue to hold all proceeds from the sale of each such properties in trust for the benefit of the Liquidation Trust and/or Abell's creditors; (c) award a money judgment against Defendants in an amount to be established at trial representing all proceeds from the sale of each such properties; and (d) grant such other further relief which is just and equitable under the circumstances.

### COUNT VIII
### Constructive Trust under Maryland Law
### (The After Acquired—Sold Properties — *Exhibit 3D*)

92.     Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph. To the extent that this Count seeks

relief that is inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

93.    All proceeds from the sale of each of the After Acquired—Sold Properties identified in *Exhibit 3D* belong to and are owned by the Liquidation Trust.  They are Liquidation Trust Assets.

94.    As such, the Liquidating Trustee's equitable right, title, and interest in all proceeds from the sale of each of the After Acquired—Sold Properties are superior to that of any other person, including Defendants.

95.    Any claim of ownership of or entitlement to any proceeds from the sale of each of the After Acquired—Sold Properties by any Defendant derives from Abell's fraud, misrepresentations, and unlawful efforts to evade his creditors and hide assets.  It is inequitable for any Defendant to retain any purported interest any proceeds from the sale of each of the After Acquired—Sold Properties and/or to exercise any control over any proceeds from the sale of each of the After Acquired—Sold Properties.  The Liquidating Trustee has a higher equitable call on all proceeds from the sale of each of the After Acquired—Sold Properties than any Defendant.

96.    It would be unjust and inequitable for any other person to continue to purport to own, hold, and maintain any proceeds from the sale of each of the After Acquired—Sold Properties for the benefit of Abell or themselves as opposed to Abell's *bona fide* creditors, all proceeds from the sale of each of the After Acquired—Sold Properties, should be conveyed to the Liquidation Trust pursuant to equitable principles.  The Court should impose a constructive trust on all proceeds from the sale of each of the After Acquired—Sold Properties for the benefit of Abell's creditors, and order that a judgment in the amount of all proceeds from the sale of each of the After Acquired—Sold Properties be awarded to the Liquidation Trust.

WHEREFORE, the Liquidating Trustee requests that this Court: (a) charge upon Defendants a constructive trust of all proceeds from the sale of each of the After Acquired—Sold Properties (and all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3D* and are hereafter added to *Exhibit 3D*) for the benefit of the Liquidating Trustee; (b) declare and adjudge that Defendants have held and continue to hold all proceeds from the sale of each such properties in trust for the benefit of the Liquidation Trust and/or Abell's creditors; (c) award a money judgment against Defendants in an amount to be established at trial representing all proceeds from the sale of each such properties; and (d) grant such other further relief which is just and equitable under the circumstances.

## COUNT IX
### Quiet Title Pursuant to Md. Code Ann., Real Prop. § 14-601 *et seq.*
### (The Currently Held Properties — *Exhibit 3A*)

97.     Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

98.     The Liquidating Trustee brings this claim to establish title in his favor against the adverse claims of any of the Defendants, each or some of whom presumably dispute the Liquidation Trust's claim to title.

99.     Pursuant to Md. Code Ann., Real Prop. § 14-603(a), "[i]n an action under this subtitle [*i.e.,* Subtitle 6 of Title 14 of the Real Property Article of the Annotated Code of Maryland], the court is deemed to have obtained possession and control of the property for the purposes of the action."  Pursuant to § 14-603(b), "[t]his subtitle does not limit any authority the

36

court may have to grant any equitable relief that may be proper under the circumstances of the case."

100.    As explained in this complaint, the Liquidating Trustee seeks a determination that he is the rightful fee simple or leasehold title owner of each of the Currently Held Properties identified in *Exhibit 3A* and that Defendants have no right, title, or interest in and to the Currently Held Properties.

WHEREFORE, the Liquidating Trustee requests that this Court: (a) determine that fee simple or leasehold title to each of the Currently Held Properties (and all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3A* and are hereafter added to *Exhibit 3A*) be in the name of the Liquidation Trust; (b) reform or re-title the deed of each such properties to identify the Liquidating Trustee as fee simple or leasehold record titleholder of the each such property; and (c) issue an order directing the Liquidating Trustee, as prevailing party, to cause this Court's judgment to be recorded in the land records of the county in which each such property is located, with Defendants being entered in the land records as grantor and the Liquidating Trustee as grantee (*see* Md. Rule 12-811(a) and (b)).

### COUNT X
**Quiet Title Pursuant to Md. Code Ann., Real Prop. § 14-601 *et seq.***
**(The After Acquired—Held Properties — *Exhibit 3C*)**

101.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

4864-4068-5135, v. 1

102.    The Liquidating Trustee brings this claim to establish title in his favor against the adverse claims of any Defendants, each or some of whom presumably dispute the Liquidation Trust's claim to title.

103.    Pursuant to Md. Code Ann., Real Prop. § 14-603(a), "[i]n an action under this subtitle [*i.e.,* Subtitle 6 of Title 14 of the Real Property Article of the Annotated Code of Maryland], the court is deemed to have obtained possession and control of the property for the purposes of the action." Pursuant to § 14-603(b), "[t]his subtitle does not limit any authority the court may have to grant any equitable relief that may be proper under the circumstances of the case."

104.    As explained in this complaint, the Liquidating Trustee seeks a determination that he is the rightful fee simple or leasehold title owner of each of the After Acquired—Held Properties identified in *Exhibit 3C* and that Defendants have no right, title, or interest in and to the After Acquired—Held Properties.

WHEREFORE, the Liquidating Trustee requests that this Court: (a) determine that fee simple or leasehold title to each of the After Acquired—Held Properties (and all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3C* and are hereafter added to *Exhibit 3C*) be in the name of the Liquidation Trust; (b) reform or re-title the deed of each such properties to identify the Liquidating Trustee as fee simple or leasehold record titleholder of the each such property; and (c) issue an order directing the Liquidating Trustee, as prevailing party, to cause this Court's judgment to be recorded in the land records of the county in which each such properties is located, with Defendants being entered in the land records as grantor and the Liquidating Trustee as grantee (*see* Md. Rule 12-811(a) and (b)).

4864-4068-5135, v. 1

**COUNT XI**
**Declaratory Judgment Pursuant to**
**28 U.S.C. §§ 2201 and 2202**
**(Entity Defendants)**

105.     Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

106.     An actual controversy exists between and among the parties.

107.     Specifically, the Liquidating Trustee contends that each Entity Defendant is Property and a Liquidation Trust Asset of and owned by the Liquidation Trust, whereas presumably Abell, Maya, and/or Bertola contend that each Entity Defendant is not an asset of the Liquidation Trust.

108.     Antagonistic claims exist between and among the parties which indicate and have resulted in imminent and inevitable litigation.  Therefore, a controversy between and among the parties exists which entitles the Liquidating Trustee to this Court's declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

109.     This Court's declaratory judgment concerning the parties' rights and interests as to Vinmar will terminate this controversy.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment, declaring, decreeing, and adjudging the rights of the parties as follows:

A.     Each Entity Defendant is Property and a Liquidation Trust Asset of the Liquidation Trust;

4864-4068-5135, v. 1

B.      The Liquidating Trustee is authorized to take control of and liquidate each Entity

Defendant and any assets purportedly owned by such Defendant pursuant to his

authority as Liquidating Trustee of the Liquidation Trust;

C.      All such relief granted by the Court under this Count shall apply to any other

entities yet to be discovered by the Liquidating Trustee that are properly made the

subject of this action; and

D.      The Liquidating Trustee is entitled to such other necessary or proper relief to be

determined upon the adjudication of the merits of this action.

### COUNT XII
### Constructive Trust under Maryland
### (Entity Defendants)

110.    Each of the allegations contained in each of the numbered paragraphs of this

complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks

relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded

in the alternative to such other Counts.

111.    Each Entity Defendant belongs to the Liquidation Trust.  It is a Liquidation Trust

Asset.

112.    As such, the Liquidating Trustee's equitable right, title, and interest in **each Entity**

**Defendant** are superior to that of any other person, including Defendants.

113.    Any claim of ownership of **each Entity Defendant** by any Defendant derives from

Abell's fraud, misrepresentations, and unlawful efforts to evade his creditors and hide assets.  It is

inequitable for any Defendant to retain any purported interest in **each Entity Defendant** and/or to

exercise any control over **each Entity Defendant**.  The Liquidating Trustee and Liquidation Trust

have a higher equitable call on **each Entity Defendant** than any Defendant.

40

114.    It would be unjust and inequitable for any other person to continue to purport to own, hold, and maintain **each Entity Defendant** for the benefit of Abell or themselves as opposed to Abell's *bona fide* creditors, and **each Entity Defendant**, including all of its assets and income, should be conveyed or re-titled to the Liquidation Trust pursuant to equitable principles.  The Court should impose a constructive trust on **each Entity Defendant** for the benefit of Abell's creditors, and order that **each Entity Defendant** be conveyed to the Liquidation Trust.

WHEREFORE, the Liquidating Trustee requests that this Court: (a) charge upon Defendants a constructive trust of **each Entity Defendant** for the benefit of the Liquidating Trustee; (b) declare and adjudge that Defendants have held and continue to hold **each Entity Defendant** in trust for the benefit of the Liquidation Trust and/or Abell's creditors; (c) order Defendants to convey all purported rights, title, and interests in **each Entity Defendant** to the Liquidating Trustee, free and clear of all liens, mortgages, and other encumbrances; (d) award a money judgment against Defendants in an amount to be established at trial representing the damages resulting from their misuse of **each Entity Defendant**; and (e) grant such other further relief which is just and equitable under the circumstances, including making all such foregoing relief applicable to any other entities yet to be discovered by the Liquidating Trustee that are properly made the subject of this action.

**COUNT XIII**
**Declaratory Judgment Pursuant to**
**28 U.S.C. §§ 2201 and 2202**
**(as to Abell's and/or Abell and Bertola's Interest in**
**the Subject Properties and Proceeds Therefrom and Veil Piercing)**

115.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  This Count is brought in the alternative in the event that this Court determines that neither the Currently Held Properties, the

After Acquired—Held Properties, proceeds from the sale of the Sold Properties, proceeds from the sale of the After Acquired—Sold Properties, nor the Entity Defendants are Property or Liquidation Trust Assets of the Liquidation Trust.

116.    An actual controversy exists between and among the parties.

117.    Specifically, as explained above, the Liquidating Trustee contends the Currently Held Properties, the After Acquired—Held Properties, proceeds from the sale of the Sold Properties, proceeds from the sale of the After Acquired—Sold Properties, and the Entity Defendants are all Property and Liquidation Trust Assets of and owned by the Liquidation Trust, whereas presumably one or more Defendants dispute that contention.  In the event this Court does not find that either the Currently Held Properties, the After Acquired—Held Properties, proceeds from the sale of the Sold Properties, proceeds from the sale of the After Acquired—Sold Properties, or the Entity Defendants are Property and Liquidation Trust Assets of the Liquidation Trust, the Liquidating Trustee contends, in the alternative, that the Entity Defendants are illegitimate entities that lost or never had any of the personal liability protection attributes of a properly formed limited liability company in good standing under Maryland law.  In this regard, the Liquidating Trustee contends that the Entity Defendants have no independent identity distinct from that of Abell, or of Abell and Bertola jointly, and are merely the alter-egos of Abell alone or, alternatively, of Abell and Bertola jointly.  The Liquidating Trustee further contends that Abell alone or, alternatively, Abell and Bertola jointly, have used and are using the Entity Defendants to commit fraud, defraud creditors, and conceal assets and income from creditors.  The Liquidating Trustee contends that this Court should disregard each of the Entity Defendants as an entity and pierce the corporate veil, holding that the Currently Held Properties, the After Acquired—Held Properties, proceeds from the sale of the Sold Properties, and proceeds from the sale of the After

4864-4068-5135, v. 1

Acquired—Sold Properties are owned by Abell alone or, alternatively, by Abell and Bertola jointly. As such, this Court should determine that the Spoliation Judgments against Bertola and Abell constitute a judgment lien against the Currently Held Properties and the After Acquired—Held Properties and lien on the proceeds from the sale of the Sold Properties and the After Acquired—Sold Properties received by the Entity Defendants, Abell, Bertola, or Abell and Bertola jointly. Presumably, Defendants dispute the foregoing contentions.

118.    Antagonistic claims exist between and among the parties which indicate and have resulted in imminent and inevitable litigation. Therefore, a controversy between and among the parties exists which entitles the Liquidating Trustee to this Court's declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

119.    This Court's declaratory judgment concerning the parties' rights and interests as to the Subject Properties will terminate this controversy.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment, declaring, decreeing, and adjudging the rights of the parties as follows:

A.    Each Entity Defendant is an illegitimate entity that lost or never had any of the personal liability protection attributes of a properly formed limited liability company in good standing under Maryland law;

B.    Each Entity Defendant has no independent identity and is merely the alter ego of Abell alone or, alternatively, of Abell and Bertola jointly;

C.    The Spoliation Judgments against Bertola and Abell constitute a judgment lien against the Currently Held Properties and the After Acquired—Held Properties;

D.      The Spoliation Judgments constitute a judgment lien against any proceeds received by Abell or Bertola or, alternatively, Abell and Bertola jointly, in connection with the sale of the Sold Properties and the After Acquired—Sold Properties; and

E.      The Liquidating Trustee is entitled to such other necessary or proper relief to be determined upon the adjudication of the merits of this action, including making all such foregoing relief applicable to any other properties and entities yet to be discovered by the Liquidating Trustee that are properly made the subject of this action.

**COUNT XIII**
**Unjust Enrichment**
**(as to the Proceeds from the Sale of Sold Properties and After Acquired— Sold Properties)**

120.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.

121.    The proceeds from the sale of the Sold Properties and of the After Acquired—Sold Properties (and from the sale of any properties yet to be discovered by the Liquidating Trustee that belong on *Exhibits 3B* and *3D* and are hereafter added to *Exhibits 3B* and *3D*) are Property and, therefore, Liquidation Trust Assets of the Liquidation Trust.  Although the proceeds did not belong to them and instead belonged to the Liquidation Trust, the Entity Defendants, Abell, and Bertola collected the sale proceeds without paying the proceeds over to the Liquidation Trust. Consequently, Defendants, without any right to do so, came into possession of money that belonged to the Liquidating Trustee.

122.    It would be inequitable for Defendants to retain any such funds.  In equity and good conscience, Defendants should not be allowed to retain the funds.

4864-4068-5135, v. 1

123.    As a result, the Liquidating Trustee has been damaged in the amount of such funds wrongfully retained by Defendants.

WHEREFORE, the Liquidating Trustee requests that this Court enter a money judgment against each Defendant in amount equal to all sale proceeds retained by such Defendant, plus pre-judgment interest, post-judgment interest, and costs, and grant such other and further relief as this Court deems equitable.

**COUNT XIV**
**Avoidance of Postpetition Transactions**
**Pursuant to 11 U.S.C. §§ 549 and 550**
**(as to the Proceeds from the Sale of Sold Properties and After Acquired— Sold Properties)**

124.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.

125.    The transfers and conveyances of assets described in the complaint (and any others that the Liquidating Trustee later discovers as part of his investigation) that occurred after the commencement of Abell's bankruptcy case are post-petition transactions.

126.    Those post-petition transactions were not authorized by the Court or the Bankruptcy Code.

127.    The post-petition transfers are avoidable and recoverable pursuant to §§ 549 and 550 of the Bankruptcy Code, and the Liquidating Trustee is entitled to a monetary judgment against Defendants in the amounts of the post-petition transfers to be proved at trial, and to have all such post-petition transfers set aside, and to levy and garnish upon all such assets, funds, and properties, to the extent they are no longer available to satisfy Abell's liabilities to his creditors.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment for the Liquidating Trustee and against all Defendants:

4864-4068-5135, v. 1

A. determining that any post-petition transfers to Defendants are avoided;

B. awarding an amount to be proved at trial, plus prejudgment and post-judgment

interest and costs;

C. directing Defendants to pay to the Liquidating Trustee such amount; and

D. granting the Liquidating Trustee such other and further relief as is just and equitable.

Respectfully submitted,

/s/ David J. Shuster
David J. Shuster (D. Md. Bar No. 23120)
        dshuster@kg-law.com
Jean E. Lewis (D. Md. Bar No.  27562)
        jlewis@kg-law.com
Emily R. Greene (D. Md. Bar No. 20302)
        egreene@kg-law.com
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland  21202
Telephone:  (410) 752-6030
Facsimile: (410) 539-1269

*Attorneys for Liquidating Trustee
Roger Schlossberg*

4864-4068-5135, v. 1

## VERIFICATION AS TO COUNTS IX AND X PURSUANT
## TO MD. CODE ANN., REAL PROP. § 14-606

I solemnly affirm under the penalties of perjury that the factual allegations in the foregoing complaint that support Count IX and X (Quiet Title) are true to the best of my knowledge, information, and belief.

*/s/ Roger Schlossberg*
Roger Schlossberg, Liquidating Trustee

47

# EXHIBIT 1

THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

In re:                                   *

**VINCENT L. ABELL,**                    *        Case No. 13-13847-TJC

*       *       *       *       *       *       *       *       *       *       *       *       *

## CHAPTER 11 TRUSTEE'S PLAN OF LIQUIDATION

Dated: November 11, 2020              /s/ *Richard M. Goldberg*
                                      Richard M. Goldberg, Bar No. 07994
                                      Anastasia L. McCusker, Bar No. 29533
                                      SHAPIRO SHER GUINOT & SANDLER
                                      250 W. Pratt Street, Suite 2000
                                      Baltimore, Maryland  21201-3147
                                      Tel: 410-385-4274
                                      rmg@shapirosher.com
                                      alm@shapirosher.com

                                      *Attorneys for Roger Schlossberg, Chapter 11
                                      Trustee*

# TABLE OF CONTENTS

**ARTICLE I DEFINITIONS, RULES OF CONSTRUCTION AND EXHIBITS**...................5

    SECTION 1.01.   DEFINITIONS.............................................................5
    SECTION 1.02.   INTERPRETATION; APPLICATION OF DEFINITIONS;
                       AND RULES OF CONSTRUCTION. .................................15

**ARTICLE II CLASSIFICATION OF CLAIMS** ..................................................17

    SECTION 2.01.   GENERAL.................................................................17
    SECTION 2.02.   UNCLASSIFIED CLAIMS (NOT ENTITLED TO VOTE
                       ON THE PLAN). ......................................................17
    SECTION 2.03.   CLASSIFICATION OF CLAIMS.......................................17

**ARTICLE III TREATMENT OF CLAIMS** .......................................................17

    SECTION 3.01.   SATISFACTION OF CLAIMS..........................................17
    SECTION 3.02.   TREATMENT OF CLAIMS. ...........................................18
        a.     Provisions for Treatment of Unclassified Claims....................18
        b.     Provisions for Treatment of Classified Claims.......................19

**ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN** ........................21

    SECTION 4.01.   EACH IMPAIRED CLASS ENTITLED TO VOTE
                       SEPARATELY.........................................................21
    SECTION 4.02.   ACCEPTANCE BY A CLASS OF CLAIMS. .......................22
    SECTION 4.03.   CONFIRMATION PURSUANT TO SECTION 1129(B) OF
                       THE BANKRUPTCY CODE OR "CRAMDOWN." ...............22
    SECTION 4.04.   VOTING CLASSES. ....................................................22

**ARTICLE V MEANS OF PLAN IMPLEMENTATION** ......................................22

    SECTION 5.01.   PLAN OBJECTIVES....................................................22
    SECTION 5.02.   THE LIQUIDATION TRUST ..........................................22
        a.     Formation of the Liquidation Trust....................................22
        b.     Funding of the Liquidation Trust ......................................23
    SECTION 5.03.   ADMINISTRATION OF ASSETS.....................................24
    SECTION 5.04.   CONCLUSION OF SERVICES OF THE TRUSTEE .............24
    SECTION 5.05.   LIQUIDATING TRUSTEE..............................................24
        a.     Identity .................................................................24
        b.     Responsibilities of the Liquidating Trustee ..........................24
        c.     Powers and Authority of Liquidating Trustee........................25
        d.     Retention of Professionals .............................................26
        e.     Liquidating Trustee Compensation ...................................26
        f.     Successor Liquidating Trustee .........................................26
        g.     Termination of Liquidation Trust ......................................27
        h.     Records .................................................................27
    SECTION 5.06.   INDEMNIFICATION....................................................27
    SECTION 5.07.   PROVISION FOR TREATMENT OF DISPUTED CLAIMS .................28
        a.     Liquidation Trustee Standing..........................................28

b. Plan Reserves ...................................................................28

SECTION 5.08. DISTRIBUTION OF PROPERTY UNDER THE PLAN .........................29

 a. Source of Distributions ...................................................29
 b. Manner of Cash Payments ...............................................29
 c. Timing of Distributions....................................................29
 d. Setoff and Recoupment ....................................................29
 e. Interest on Claims ............................................................30
 f. Withholding and Reporting Requirements........................30
 g. No *De Minimus* Distributions .........................................30
 h. Fractional Dollars............................................................31
 i. No Distributions With Respect to Disputed Claims .........31
 j. Undeliverable or Unclaimed Distributions ......................31

**ARTICLE VI LITIGATION** ..........................................................................**32**

SECTION 6.01. PRESERVATION OF CAUSES OF ACTION AND DEFENSES................................................................................32

SECTION 6.02. PRECLUSION DOCTRINES ..................................................33

**ARTICLE VII EXCULPATION**.....................................................................**33**

SECTION 7.01. LIMITATION OF LIABILITY IN CONNECTION WITH THE CASE, THE PLAN, DISCLOSURE STATEMENT, AND RELATED DOCUMENTS ...................................................33

SECTION 7.02. INJUNCTION AGAINST SUING THE TRUSTEE, THE LIQUIDATION TRUST, AND THE LIQUIDATING TRUSTEE ............................................................................34

**ARTICLE VIII OTHER PLAN PROVISIONS** ...........................................**35**

SECTION 8.01. CONDITIONS TO CONFIRMATION ....................................35
SECTION 8.02. THE EFFECTIVE DATE ......................................................35
SECTION 8.03. WAIVER OF CONDITIONS ................................................35
SECTION 8.04. CONSEQUENCES OF NON-OCCURRENCE OF EFFECTIVE DATE ...............................................................36
SECTION 8.05. EXECUTORY CONTRACTS AND UNEXPIRED LEASES.................36
 a. Rejection of Executory Contracts and Unexpired Leases ......................36
 b. Bar Date for Rejection Damage Claims.............................36
SECTION 8.06. INDEMNIFICATION OBLIGATIONS ..................................37
SECTION 8.07. ENTRY OF A FINAL DECREE ............................................37
SECTION 8.08. UNITED STATES TRUSTEE FEES AND REPORTS ..........37
SECTION 8.09. POST-CONFIRMATION STATUS REPORTS ......................37
SECTION 8.10. POST-EFFECTIVE DATE EFFECT OF EVIDENCES OF CLAIMS ...............................................................................37
SECTION 8.11. NONDISCHARGE OF THE DEBTOR .................................37
SECTION 8.12. NO RECOURSE ...................................................................38
SECTION 8.13. NO ADMISSIONS ...............................................................38
SECTION 8.14. SEVERABILITY OF PLAN PROVISIONS ..........................38
SECTION 8.15. GOVERNING LAW ..............................................................38
SECTION 8.16. RETENTION OF JURISDICTION .......................................39

SECTION 8.17.    SUCCESSORS AND ASSIGNS ..................................................................41
SECTION 8.18.    SATURDAY, SUNDAY, OR LEGAL HOLIDAY ...................................41
SECTION 8.19.    PLAN MODIFICATION .........................................................................41
SECTION 8.20.    WITHDRAWAL OF THE PLAN ............................................................41
SECTION 8.21.    CONFLICT. .............................................................................................41
SECTION 8.22.    MODIFICATIONS AND AMENDMENTS. ...........................................41

**ARTICLE IX RECOMMENDATIONS AND CONCLUSION ...............................................42**

## INTRODUCTION

Roger Schlossberg, the duly appointed and acting Chapter 11 Trustee (the "Trustee") for Vincent L. Abell (the "Debtor"), files this Chapter 11 Plan of Liquidation (the "Plan") for the resolution of the outstanding Claims against the Debtor's Chapter 11 bankruptcy estate.[1] Reference is made to the Trustee's Disclosure Statement for a discussion of the history of this bankruptcy case, including the Trustee's sales of real property, litigation and the resolution thereof, risk factors, a summary and analysis of the Plan, and certain related matters including, among other things, certain tax matters. The Trustee reserves the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

## ARTICLE I
## DEFINITIONS, RULES OF CONSTRUCTION AND EXHIBITS

### SECTION 1.01.  DEFINITIONS.

Unless otherwise provided in the Plan, all terms used herein shall have the meanings ascribed to such terms in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. For the purposes of the Plan, the following terms (which appear in the Plan in capitalized form) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context otherwise requires:

1.      "*Administrative Claim(s)*" means a Claim for any cost or expense of administration of the Chapter 11 Case, of the kind specified in section 503(b), including sections 503(b)(9), and 507(a)(2) of the Bankruptcy Code, including, but not limited to: (i) any actual and necessary post-petition costs or expenses of preserving the Estate, (ii) any actual and necessary costs and expenses of the Trustee's operation of the Debtor's businesses, (iii) any indebtedness or obligations incurred or assumed by the Trustee in connection with the Trustee's conduct of any of the Debtor's businesses or operations, (iv) amounts owed to vendors providing goods and services to the Trustee during the Chapter 11 Case, (v) tax obligations incurred after the Petition Date, (vi) all compensation and reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under sections 328, 330, or 331 of the Bankruptcy Code, whether fixed before or after the Effective Date, and (vii) United States Trustee's Fee Claims. Administrative Claims do not include Professional Fee Claims unless otherwise indicated herein.

2.      "*Administrative Claims Bar Date*" means the date that is sixty (60) days after the Effective Date or such other date as the Bankruptcy Court determines.

3.      "*Allowed*" means with respect to any Claim (including any Administrative Claim) or portion thereof (to the extent such Claim is not Disputed or Disallowed): (a) any Claim, proof of which (i) was timely filed with the Bankruptcy Court, (ii) was deemed timely filed pursuant to section 1111(a) of the Bankruptcy Code, or (iii) was not required to be filed pursuant to a Final Order; (b) any Claim that has been, or hereafter is, listed in the Schedules as of the Effective Date as (i) liquidated in an amount other than zero, or (ii) not Disputed or a Contingent Claim (or

---

[1] All capitalized terms used but not defined herein shall have the meanings set forth in Article I herein.

as to which the applicable Proof of Claim has been withdrawn or Disallowed); (c) any Claim which has been allowed (whether in whole or in part) by a Final Order (but only to the extent so allowed), and, in (a) and (b) above, as to which no objection to the allowance thereof, or action to subordinate, avoid, classify, reclassify, expunge, estimate or otherwise limit recovery with respect thereto, has been filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order; (d) any Claim allowed under or pursuant to the terms of the Plan; (e) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code which has been allowed in accordance with section 502(h) of the Bankruptcy Code; (f) any Claim relating to a rejected Executory Contract or rejected Unexpired Lease that either (i) is not Disputed or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been filed by the applicable Bar Date or is a Claim for which a fee award amount has been approved by Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.

4. *"Asset"* means Property unless otherwise indicated herein.

5. *"Available Cash"* means all Cash held by the Liquidation Trust on and after the Effective Date.   Available Cash shall not include the Cash in any of the Plan Reserve Accounts.

6. *"Avoidance Action(s)"* means any and all Causes of Action that the trustee, the estate or other appropriate party in interest may assert under Chapter 5 of the Bankruptcy Code, including, but not limited to, sections 502(d), 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code.

7. *"Ballot"* means the form distributed to each Holder of an Impaired Claim entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan.

8. *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, together with all amendments and modifications thereto as applicable to this Chapter 11 Case.

9. *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Maryland or, if such court ceases to exercise jurisdiction over this proceeding, the court or adjunct thereof that exercises jurisdiction over this Chapter 11 Case.

10. *"Bankruptcy Rule(s)"* means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under 28 U.S.C. § 2075, (b) the applicable Federal Rules of Civil Procedure, as amended and promulgated under 28 U.S.C. § 2072, (c) the applicable Local Rules of Civil Practice and Procedure of the United States District Court for the District of Maryland, to the extent applicable, and (d) any local rules and standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to this Chapter 11 Case or proceedings therein, as the case may be.

11. *"Bar Date"* means the general bar date and governmental bar date as set forth in the Bar Date Notice, or any other date set therefore by order of the Bankruptcy Court.

12. "*Bar Date Notice*" means the notice of the Bar Date established by the Bankruptcy Court by notice dated March 6, 2013 [ECF No. 7].

13. "*Beneficiaries*" means Holders of Allowed Claims entitled to receive Distributions under the Plan.

14. "*Business Day(s)*" means any day that is not a Saturday, a Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), or a day on which banking institutions in the State of Maryland are authorized or obligated by law, executive order or governmental decree to be closed.

15. "*Cash*" or "*$*" means the lawful currency of the United States of America and its equivalents, including bank deposits and checks.

16. "*Cause(s) of Action*" means any and all of the following owned by the Debtor, the Trustee or the Estate: actions, proceedings, obligations, judgments (including, without limitation, the Spoliation Judgments and any other judgments obtained by the Trustee), debts, accounts, claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, causes of action (including against insiders), choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever (and any rights to any of the foregoing), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, then existing or thereafter arising, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, including, without limitation, any recharacterization, subordination, Avoidance Action, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any similar provisions of applicable state or federal law. Causes of Action constitute Property as defined herein.

17. "*Chapter 11 Case*" or "*Case*" means the above-captioned Chapter 11 case.

18. "*Claim(s)*" means a "claim" as defined in section 101(5) of the Bankruptcy Code against the Debtor, the Estate, or Property, whether or not asserted.

19. "*Claims Objection Deadline*" means the last day for filing objections to Claims, which day shall be the later of (a) sixty (60) days after the Effective Date or (b) such other date as the Bankruptcy Court may order. The Liquidating Trustee may authorize a one-time automatic extension of the Claims Objection Deadline by filing a notice of extension of the Claims Objection Deadline, which shall automatically extend the Claims Objection Deadline until the date specified in such notice up to an additional sixty (60) days after the original Claims Objection Deadline. Thereafter, any further extension of the Claims Objection Deadline shall require Bankruptcy Court approval, and may be granted only upon a showing of exigent circumstances. In the event that such a motion to further extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the original Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to further extend the Claims Objection Deadline. For the

7

avoidance of doubt, after the Effective Date, no Person other than the Liquidating Trustee shall be authorized to file objections to Claims.

20.     "*Class*" means each group or category of Claims as classified herein.

21.     "*Confirmation*" means the entry by the Bankruptcy Court of the Confirmation Order.

22.     "*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

23.     "*Confirmation Hearing*" means the hearing held before the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128(a) and 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

24.     "*Confirmation Order*" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

25.     "*Creditor*" means any Person that is the Holder of any Claim against the Debtor and/or the Estate.

26.     "*Debtor*" means Vincent L. Abell, the above-referenced debtor, including in his capacity as debtor after the Effective Date (in respect of references to matters after the Effective Date).

27.     "*Disallowed*" means any Claim against the Debtor and/or Estate which, in whole or in part: (i) has been disallowed by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Trustee or Liquidating Trustee; (iii) has been withdrawn by the Holder thereof; (iv) is listed in the Schedules as a zero amount or as Disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been timely filed or deemed timely filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated resulting in a reduction in the filed amount of any Proof of Claim; (vi) is evidenced by a Proof of Claim that is required to be filed, but was not timely or properly filed; (vii) is a Property Sale Claim for which no Property Sale Claim Dispute has been filed; (viii) includes unmatured interest, penalties or late charges; (ix) is for reimbursement or contribution that is contingent as of the time of allowance or disallowance of such claim; (x) is a Claim or portion thereof for any fine, penalty, forfeiture, attorneys' fees (to the extent such attorneys' fees are punitive in nature), or for multiple, exemplary or punitive damages, to the extent that such fine, penalty, forfeiture, attorneys' fees or damages does not constitute compensation for the Creditor's actual pecuniary loss; (xi) is an Insider Claim or are Insider Claims; or (xii) is unenforceable against the Debtor and/or the Estate, and the Property of the Debtor or the proceeds of sale of any Property, under any agreement or applicable law for a reason other than because such Claim is contingent or unmatured.  In each case a Disallowed Claim is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation

8

28.    "*Disallowed Claim*" means a Claim that is Disallowed, or the Disallowed portion thereof, including, without limitation the Claims described in the immediately preceding Article 1.01(27).

29.    "*Disbursing Agent(s)*" means the Liquidating Trustee or any other entity in its capacity as a disbursing agent under the Plan as so assigned by the Liquidating Trustee.

30.    "*Disclosure Statement*" means the disclosure statement dated November ___, 2020, related to the Plan as such disclosure statement may be amended, modified or supplemented from time to time, and all exhibits and schedules annexed thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

31.    "*Disputed*" means with respect to any Claim: (a) if no Proof of Claim has been filed by the applicable Bar Date or has otherwise been deemed timely filed under applicable law, a Claim that is listed on the Schedules as other than disputed, contingent or unliquidated, but as to which the Trustee or Liquidating Trustee or, prior to the Confirmation Date, any other party in interest, has filed an objection by the Claims Objection Deadline, and such objection has not been withdrawn or denied by a Final Order; (b) if a Claim that is listed on the Claim Register has been filed by the applicable Bar Date or has otherwise been deemed timely filed under applicable law: (i) a Claim for which no corresponding Claim is listed on the Schedules; (ii) a Claim for which a corresponding Claim is listed on the Schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted in the Proof of Claim varies from the nature and amount of such Claim as it is listed on the Schedules; (iv) a Claim for which a corresponding Claim is listed on the Schedules as disputed, contingent or unliquidated; (v) a Claim for which an objection has been filed by the Trustee or Liquidating Trustee or, prior to the Confirmation Date, any other party-in-interest, by the Claims Objection Deadline, and such objection has not been withdrawn or denied by a Final Order; (vi) a Claim which asserts it is contingent or unliquidated in whole or in part; or (vii) a tort claim; or (c) a Property Sale Claim.

32.    "*Disputed Claims Reserve(s)*" means the reserve(s) established in accordance with Article 5.07 of the Plan, in such amounts that the Liquidating Trustee determines in his discretion, for the payment of Disputed Claims that become allowed after the Effective Date, for the benefit of Disputed Claims.

33.    "*Disputed Distribution*" means any dispute that arises as to an Allowed Claim who is to receive any Distribution.

34.    "*Distribution*" means Cash, property, interests in property or other value distributed under the Plan to the Holders of Allowed Claims or Allowed Administrative Claims.

35.    "*Distribution Record Date*" means, for purposes of determining the Holders of Claims entitled to receive Distributions under the Plan on account of such Claims and, to the extent applicable, to vote on the Plan, the Effective Date.

36.    "*Effective Date*" means the first Business Day on which all conditions to the Effective Date set forth in Article 8.02 of the Plan have been satisfied or waived.

37.    "*Estate*" means the estate of the Debtor created by operation of law on the Petition Date pursuant to section 541 of the Bankruptcy Code.

38.    "*Executory Contract*" means a written contract between the Debtor and any other Person entered into prior to and in effect as of the Petition Date under which performance remains due on both sides.

39.    "*Final Order*" means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended, and as to which (i) the time to appeal or petition for review, rehearing, certiorari, reargument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending, or (ii) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken for granted.

40.    "*General Assets*" means all Assets of the Liquidation Trust.  General Assets are also referred to as the Liquidation Trust Assets.

41.    "*General Unsecured Claim*" means any Claim against the Debtor and/or the Estate that is not an Administrative Claim, Priority Non-Tax Claim, Priority Tax Claim, Secured Claim for which no amended proof of claim in respect of a deficiency claim has been filed as of the date ballots are due for voting on the Plan or is otherwise disallowed as a result of applicable state or federal law, or Property Sale Claim.

42.    "*Holder*" means the legal or beneficial holder of a Claim.

43.    "*Impaired*" means, when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

44.    "*Insider*" means an insider as that term is defined in Bankruptcy Code section 101(31) and includes all blood-related family members of the Debtor and/or Marta Bertola, including, without limitation, their children, parents, siblings and other blood-related relatives to four (4) degrees of consanguinity and is meant to be as expansive and inclusive as possible.

45.    "*Insider Claim(s)*" means the Claim or Claims (including, without limitation, Liens) asserted by any Insider of the Debtor, including, without limitation Marta Bertola, James Abell, the children of the Debtor and Marta Bertola, Fela Bertola, Carroll Robinson, and Maria Antonopoulos, and any entity owned by the such insider to the extent such entity asserts a claim against the Debtor.

46.    "*IRS*" means the Internal Revenue Service.

47.    "*Law Firms*" means collectively, Yumkas, Vidmar, Sweeney & Mulrenin, LLC, McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., Leach Travell PC, and Hirschler Fleischer.

48. ***"Law Firm Claims"*** means the claims of the Law Firms in such amounts set forth in, and subject to the terms and conditions of, the Order Approving Settlement and Compromise of Controversy Between Roger Schlossberg, Chapter 11 Trustee and the Movants in Certain Fee Motions (ECF No. 1221), including as set forth in the Settlement and Release Agreement (ECF No. 1186-1) attached to Motion (ECF No. 1186) seeking approval of such Order.

49. ***"Law Firm Claims*** Order*"* means the Order found at ECF No. 1221 in the Case.

50. *"Lien"* means, with respect to any asset or Property (or the Cash, rent, revenue, income, profit or proceed therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or Property, or upon the Cash, rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any Property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of General Unsecured Creditors.

51. "***Liquidation Trust Assets***" shall have the meaning set forth in Article 5.02 of the Plan.

52. ***"Liquidating Trustee"*** means the Trustee and any successor Liquidating Trustee appointed as trustee of the ***Liquidation*** Trust pursuant to the terms of the Plan and the Liquidation Trust Agreement annexed to this Plan as Exhibit A.

53. ***"Liquidation Trust"*** means the Liquidation Trust described in Article 5.02 of this Plan that will succeed to all of the Property, Assets, and Liabilities of the Estate and the Trustee as of the Effective Date.

54. ***"Liquidation Trust Agreement"*** means the agreement annexed hereto as Exhibit A establishing and delineating the terms and conditions of the Liquidation Trust.

55. "***Litigation Settlement Claims***" means, collectively, the Law Firm Claims and the Wilson Claims.

56. "***Objection***" means any objection, application, motion, complaint or other legal, equitable or administrative proceeding brought by any party (including arbitration, mediation, summary proceeding, adversary proceeding or other litigation if applicable) seeking to disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, avoid, subordinate, estimate or otherwise limit recovery, in whole or in part, with respect to any Claim (including the resolution of any request for payment of any Administrative Claim).

57. ***"Order for Relief"*** shall mean the Petition Date.

58. "***Person(s)***" means a corporation, governmental unit and person, each as respectively defined in sections 101(9), (27) and (41) of the Bankruptcy Code, including a

natural person, individual, partnership, corporation, or other domestic or foreign entity or organization.

59.     "*Petition Date*" means March 5, 2013, the date upon which the Chapter 11 Case was commenced in the Bankruptcy Court.

60.     "*Plan*" means this Chapter 11 plan of liquidation, including all exhibits, appendices, schedules, annexes, if any, and the Liquidation Trust Agreement attached or to be attached thereto or filed or considered in connection therewith including a Plan Supplement, if any, as such plan and related documents may be further altered, amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and/or the Confirmation Order.

61.     "*Plan Document*" means collectively the Plan and or any schedule, appendix or exhibit thereto, including, but not limited to the Liquidation Trust Agreement.

62.     "*Plan Supplement*" means (if any) such exhibits, documents, lists or schedules not filed with the Plan but as may be filed in connection therewith prior to the hearing to confirm the Plan, or such other date as the Bankruptcy Court may establish.

63.     "**Plan Reserve** Accounts**" means all accounts to be established by the Liquidating Trustee to hold the various Plan Reserves.

64.     "**Plan Reserves**" means all reserves of assets of the Liquidation Trust established in the Liquidating Trustee's discretion on the Effective Date (or as soon as reasonably practicable thereafter) including, but not limited to the Post-Effective Date Expense Reserve and reserves for payment of Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Non-Tax Priority Claims, Disputed Secured Claims, Disputed General Unsecured Claims, and undeliverable Distributions as of the date of any contemplated Distribution.

65.     "**Post-Effective Date Expenses**" means any expenses incurred by the Liquidation Trust after the Effective Date, including, but not limited to, professional fees incurred by the Liquidating Trustee, compensation payable to the Liquidating Trustee, expenses incurred by Liquidating Trustee, fees payable to the United States Trustee, and premiums related to any Liquidating Trustee's bond or insurance policy.

66.     "**Post-Effective Date Expense Reserve**" means a reserve from the assets of the Liquidation Trust established by and at the discretion of the Liquidating Trustee to pay anticipated post-Effective Date Expenses.

67.     "*Priority Non-Tax Claim*" means any Claims entitled to priority in payment pursuant to sections 507(a)(3) and 507(a)(4) of the Bankruptcy Code.

68.     "*Priority Tax Claim*" means any Claims of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the kind entitled to priority in payment pursuant to sections 502(i) and 507(a)(8) of the Bankruptcy Code.

69. "**_Professional_**" shall mean any professional retained by Order of the Bankruptcy Court in the Chapter 11 Case in accordance with sections 327, 328, 330 or 1103 of the Bankruptcy Code.

70. "**_Professional Fee Claim_**" means:

(a) A Claim under Bankruptcy Code sections 326, 327, 328, 330, 331, 503, or 1103 for compensation for services rendered for or by the Trustee or any of the Professionals, or related expenses, incurred after the date of the Order for Relief but prior to the Effective Date on behalf of the Estate; or

(b) A Claim either under Bankruptcy Code section 503(b)(4) for compensation for professional services rendered or under Bankruptcy Code section 503(b)(3)(D) for related expenses incurred after the date of the appointment of the Trustee but prior to the Effective Date in making a substantial contribution to the Estate.

(c) For purposes of clarity: (i) claims of attorneys for contingent fees arising from a post-Effective Date settlement or adjudication of a Cause of Action shall not be considered Professional Fee Claims. Rather, post-Effective Date contingent fee claims shall be treated as Post-Effective Date Expenses, subject to the provisions of Article 5.50(d)

71. "**_Proof(s) of Claim_**" means any proof of claim filed or that should have been filed with the Bankruptcy Court in the Case pursuant to Bankruptcy Rules 3001 or 3002, the Bar Date Notice, or other order of the Bankruptcy Court.

72. "**_Property_**" means, as to the Debtor, any and all assets or property of the Debtor or Estate, of any kind, nature or description whatsoever, real or personal, tangible or intangible, as defined in section 541 of the Bankruptcy Code.

73. "**_Property Sale Claim_**" means the claims of holders of Sale Interests.

74. "**_Property Sale Claim Dispute_**" means an Objection filed by the Holder of a Property Sale Claim pursuant to the provisions of Article 3.02(b)(ii) of this Plan.

75. "**_Pro Rata Share_**" means the proportion that the face amount of a Claim in a particular Class or Classes bears to the aggregate face amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless the Plan provides otherwise.

76. "**_Released Parties_**" means, collectively, (a) the Trustee-Released Parties and their members, advisors and professionals (including any attorneys, financial advisors, and other professionals retained by such persons), each solely in their capacity as such.

13

77. **"Sale Interests"** means a claim held by a Person in respect of a lien, claim, encumbrance or interest on proceeds of sale of Property by the Trustee pursuant to an order of the Court.

78. **"Schedules"** means the Schedules, Statements and Lists filed with the Bankruptcy Court by the Debtor pursuant to Bankruptcy Code section 521(1) and Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court prior to the entry of the final decree in this Case.

79. **"Section 506(c) Claim"** means any surcharge claim asserted by the Trustee before the Effective Date or the Liquidating Trustee as successor to the Trustee after the Effective Date, pursuant to section 506(c) of the Bankruptcy Code.

80. **"Secured Claim"** means a Claim that is secured by a valid and unavoidable lien against Property in which the Estate has an interest or that is subject to setoff under Bankruptcy Code section 553. A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

81. **"Spoliation Defendants"** means the Debtor, Marta Bertola and American Trust, LLC in the context of the Order Entering Final Judgment, ECF No 443, in the Adversary Proceeding *Schlossberg v. Abell, et al.*, Adv. Proc. No. 14-00417, and any defendants named in any related orders and memoranda of the Bankruptcy Court.

82. **"Spoliation Judgments"** means the judgments the Trustee obtained as memorialized in the Order Entering Final Judgment, ECF No 443, in the Adversary Proceeding *Schlossberg v. Abell, et al.*, Adv. Proc. No. 14-00417, and all related orders and memoranda of the Bankruptcy Court.

83. **"Tax(es)"** means any tax, charge, fee, levy, or other assessment by any federal, state, local or foreign governmental authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax, together with any interest, penalties, fines or additions attributable to, imposed on, or collected by any such federal, state, local or foreign governmental authority.

84. **"Trustee"** means Roger Schlossberg, the chapter 11 trustee for the Debtor appointed by the Bankruptcy Court pursuant to section 1104 of the Bankruptcy Code and in his capacity under section 323 of the Bankruptcy Code.

85. **"Trustee-Released Parties"** means, collectively, the Trustee, his agents, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons), each solely in their capacity as such, and to the extent such Persons occupied any such positions at any time on or after the Petition Date.

14

86.    "***Unclaimed Property***" means any unclaimed Distribution of Cash or any other Property made pursuant to the Plan or Liquidation Trust to the Holder of an Allowed Claim that is not cashed for ninety (90) days after issuance.

87.    "***Unimpaired***" means any Claim that is not Impaired.

88.    "***United States Trustee***" means the United States Trustee appointed under section 58l(a)(2) of title 28 of the United States Code to serve in the Chapter 11 Case.

89.    "***United States Trustee Fee Claims***" means fees arising under 28 U.S.C. § 1930(a)(6) or accrued interest thereon arising under 31 U.S.C. § 3717.

90.    "***Unsecured Claim(s)***" means any Claim that arose prior to the Petition Date, is not subject to any priority under the Bankruptcy Code and is not secured by a Lien on any Property.

91.    "***Voting Record Date***" means the record date for voting on the Plan that is designated in the Disclosure Statement order.

92.    "***Wilson***" means Maria-Theresa Wilson.

93.    "***Wilson Claims***" means the claims of Wilson in such amounts set forth in, and subject to the terms and conditions of, the Order Approving Settlement and Compromise of Controversy Between Roger Schlossberg, Chapter 11 Trustee and Creditor Maria-Theresa Wilson, including as set forth in the Settlement and Release Agreement (ECF No. 1129-1) (ECF No. 1135).

94.    "***Wilson Claims Order***" means the Order Approving Settlement and Compromise of Controversy Between Roger Schlossberg, Chapter 11 Trustee and Creditor Maria-Theresa Wilson, ECF No. 1135.

**SECTION 1.02.    INTERPRETATION; APPLICATION OF DEFINITIONS; AND RULES OF CONSTRUCTION.**

a.    Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral.

b.    Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

c.    The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in the Plan.

d.    The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity

and do not in any respect qualify, characterize or limit the generality of the class within which such things are included.

e. The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

f. Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.

g. Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

h. Unless otherwise indicated, the phrase "in the Plan," "in this Plan," "under the Plan," "under this Plan," and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

i. Unless otherwise specified, all references to Articles or Exhibits are references to this Plan's Articles or Exhibits.

j. Any term used in the Plan that is not defined in the Plan, either in Article I of the Plan or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity). Without limiting the preceding sentence, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein.

k. To the extent that the description of the Plan or any Plan document is inconsistent with the actual terms or conditions of the Plan or any Plan document, the terms and conditions of the Plan or Plan document, as the case may be, shall control.

l. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of the State of Maryland shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

m. All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.

n. Where context so requires, the use of the word "Debtor" shall be construed as "Trustee" as defined herein and as acting in his capacity as representative of the Estate under section 323 of the Bankruptcy Code. Where context so requires, the use of the word "Trustee" shall be construed as "Debtor" as defined herein.

# ARTICLE II
## CLASSIFICATION OF CLAIMS

**SECTION 2.01.   GENERAL.**

Pursuant to section 1122 of the Bankruptcy Code, a Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent the Claim qualifies within the description of that different Class. A Claim is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan and only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

**SECTION 2.02.   UNCLASSIFIED   CLAIMS   (NOT   ENTITLED   TO   VOTE ON THE PLAN).**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, United States Trustee Fees, and Priority Tax Claims are not classified. The treatment accorded Administrative Claims, Professional Fee Claims, United States Trustee Fees, and Priority Tax Claims is set forth in Article 3.02 of the Plan.

**SECTION 2.03.   CLASSIFICATION OF CLAIMS.**

The following table designates the Classes of Claims against the Estate and the Property, and specifies which Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, or (c) deemed to accept or reject the Plan:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | No | No (deemed to accept) |
| Class 2 | Property Sale Claims | Yes | Yes |
| Class 3 | General Unsecured Claims | Yes | Yes |
| Class 4 | The Litigation Settlement Claims | Yes | Yes |
| Class 5 | The Insider Claims | Yes | Yes |

# ARTICLE III
## TREATMENT OF CLAIMS

**SECTION 3.01.   SATISFACTION OF CLAIMS.**

The treatment of and consideration to be received by Holders of Allowed Claims pursuant to the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Claims against the Estate and the Property. The treatment in this

17

Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of an Allowed Claim may have against the Estate or the Property. This treatment supersedes and replaces any agreements or rights those Holders have against the Estate or the Property. All Distributions under the Plan will be tendered to the Person holding the Allowed Claim.

**EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

**SECTION 3.02.   TREATMENT OF CLAIMS.**

    **a.**    **Provisions for Treatment of Unclassified Claims.**

        i.    Administrative Claims

Except to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment, or as otherwise provided for in the Plan, the each Holder of an Allowed Administrative Claim shall receive an amount equal to the amount of such Allowed Administrative Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, and (ii) the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is reasonably practicable.

Any requests for payment of an Administrative Claim that are not properly filed and served by the Administrative Claims Bar Date shall be disallowed automatically without the need for any objection from the Trustee or Liquidating Trustee or any action by the Bankruptcy Court.  The Liquidating Trustee shall have until 120 days after the Administrative Claims Bar Date (or such longer period as may be allowed by order of the Bankruptcy Court) to review and object to all applications for the allowance of Administrative Claims.  Unless the Liquidating Trustee objects to a timely-filed and properly served Administrative Claim, such Administrative Claim shall be deemed Allowed in the amount requested.

        ii.    Professional Fee Claims.

Any entity seeking an award by the Bankruptcy Court of compensation or reimbursement of Professional Fee Claims for services rendered prior to the Effective Date shall file and serve on the Liquidating Trustee and his counsel, the United States Trustee, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or any other order(s) of the Court, its final application for allowance of such compensation and/or reimbursement by no later than thirty (30) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court.    Holders of Professional Fee Claims  that are required to file and serve applications for final allowance of their Professional Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Professional Fee Claims against the Liquidation Trust, and such Professional Fee Claims shall be deemed discharged as of the Effective Date.  Objections to any Professional Fee Claims must be filed and served on the Trustee, Liquidating Trustee and his counsel and the requesting party no

later than twenty-one (21) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which an application for final allowance of such Professional Fee Claims was filed and served.

The Liquidating Trustee may, without application to or approval by the Bankruptcy Court, retain professionals and pay reasonable professional fees and expenses and Liquidating Trustee compensation in connection with services rendered after the Effective Date.

iii.    <u>Chapter 11 Trustee Compensation</u>

Not less than twenty-five (25) days prior to the Confirmation Hearing, the Trustee shall file his Application for Allowance and Payment of Compensation to Trustee (the "Trustee Compensation Application") seeking compensation pursuant to 11 U.S.C. § 326, and shall provide notice of the filing to all parties-in-interest herein, which shall note the Trustee's request that the Trustee Compensation Application and any objections thereto will be considered at the Confirmation Hearing. Following consideration thereof and any objections thereto, the Trustee will request that the Court's disposition be incorporated in the Confirmation Order or made by separate Order entered contemporaneously with the Confirmation Order.

iv.    <u>United States Trustee Fees.</u>

On the Effective Date or as soon as practicable thereafter, the Trustee or Liquidating Trustee shall pay all United States Trustee Fees.

v.    <u>Priority Tax Claims.</u>

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Tax Claim shall receive, in full and complete satisfaction, settlement, and release of, and in exchange for such Allowed Priority Tax Claim, at the sole option of the Liquidating Trustee, (a) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Allowed Priority Tax Claim, or (b) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled to be calculated in accordance with section 511 of the Bankruptcy Code). All Allowed Priority Tax Claims which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business. The Liquidating Trustee shall retain the right to pay any Allowed Priority Tax Claim, or any remaining balance of such claim, in full at any time without premium or penalty.

**b.    Provisions for Treatment of Classified Claims.**

i.    <u>Class 1 – Priority Non-Tax Claims</u>.

A.    <u>Treatment</u>. The legal, equitable and contractual rights of the holders of Class 1 Claims are unaltered by the Plan. Except to the extent a Holder of a Priority

19

Non-Tax Claim agrees to different treatment, each Holder of an Allowed Priority Non-Tax Claim will be paid, in full and complete satisfaction, settlement, and release of and in exchange for such Allowed Priority Non-Tax Claim, the Allowed Amount of such Allowed Priority Non-Tax Claim in full in Cash on the later of the Effective Date and the first distribution date subsequent to the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim.

B.    Voting. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Priority Non-Tax Claims are conclusively presumed to accept the Plan and the votes of such Holders will not be solicited with respect to such Allowed Priority Non-Tax Claims.

ii.    Class 2 – Property Sale Claims.

A.    Allowance and Treatment. On the date the Confirmation Order is entered, all holders of Property Sale Claims shall receive no Distribution, shall have no Claim against the Estate, the Trustee, the Liquidating Trustee or the Liquidation Trust, and such Claims shall be deemed to have been, eliminated, cancelled, and/or extinguished by the entry of the Confirmation Order, and shall not receive or retain any property or interest in Property on account of such Claims. Notwithstanding the preceding sentence, within forty-five (45) days of the entry of the Confirmation Order, any Holder of a Property Sale Claim may dispute that it has no Claim by filing a Property Sale Claim Dispute with the Bankruptcy Court stating the amount of its asserted Claim along with detailed grounds and bases therefor and for Allowance under this Plan, and shall attach all documents that support such Claim. The Liquidating Trustee in response to any Property Sale Claim Dispute may: (i) without further notice or order of the Bankruptcy Court, negotiate a resolution of any Property Sale Claim Dispute with such resolved amount being an Allowed Claim subject to its allocable share of Distribution solely from the net proceeds of sale of the specific parcel of Property upon which such Property Sale Claim Holder had a Property Sale Claim, with any excess to be paid as a Class 3 General Unsecured Claim in its Pro Rata share of remaining funds available for Class 3 General Unsecured Claims as of the time of such resolution; or (ii) file within forty-five (45) days an objection to the Property Sale Claim Dispute with a resolution thereof to be determined by the Bankruptcy Court and any Allowed Claim to be paid by the Liquidating Trustee to the extent of allowance in accordance with the remaining terms of this Plan in such Class as the Bankruptcy Court determines. The Liquidating Trustee shall reserve funds sufficient to pay any Property Sale Claim Dispute pending resolution thereof or an order of the Bankruptcy Court determining such Claim.

B.    Voting. The Property Sale Claims are Impaired and as a result such Holders are entitled to vote to accept or reject the Plan.

iii.    Class 3 – General Unsecured Claims.

A.    Treatment. Except to the extent that a Holder of a General Unsecured Claim agrees to a different treatment, in full and complete settlement, satisfaction and discharge of its Claim against the Estate, the Property, the Trustee, and the Liquidation Trust, each holder of a General Unsecured Claim shall receive from the Liquidation Trust a Pro Rata share of any Distribution made by the Liquidating Trustee from the General Assets. The

Liquidating Trustee may make interim Distributions of Available Cash from the General Assets to Holders of Class 3 General Unsecured Claims as provided herein and in the Liquidating Trust Agreement.

            B.    <u>Voting</u>.  The General Unsecured Claims are Impaired, and Holders of such Claims are entitled to vote to accept or reject the Plan.

        iv.    <u>Class 4 – The Litigation Settlement Claims.</u>

            A.    <u>Treatment</u>.  Except to the extent that a Holder of a Litigation Settlement Claim agrees to different treatment, each Holder of a Litigation Settlement Claim shall receive, in full and complete satisfaction, settlement and release of and in exchange for such Claims, payment in accordance with, respectively, the Law Firm Claims Order for the Law Firms and the Wilson Claims Order for Wilson, but only to the extent Funds are available for any such Distribution.

            B.    <u>Voting</u>.  The Litigation Settlement Claims are Impaired Claims, and Holders of such Claims are entitled to vote to accept or reject the Plan.

        v.    <u>Class 5 – The Insider Claims.</u>

            A.    <u>Treatment</u>.  Upon entry of the Confirmation Order, except to the extent that a Holder of an Insider Claim agrees to different treatment, pursuant to section 510(c), each Holder of an Insider Claim shall receive no Distribution, shall have no Claim against the Estate, Property, the Trustee, the Liquidating Trustee, or the Liquidation Trust and shall be deemed to have been, eliminated, cancelled, and/or extinguished by the entry of the Confirmation Order, and shall not receive or retain any property or interest in property on account of such Claims.

            B.    <u>Voting</u>.  The Class 5 Insider Claims are Impaired Claims, and Holders of such Claims are entitled to vote to accept or reject the Plan, in the absence of an order of the Bankruptcy Court precluding such voting.

**ARTICLE IV**
**ACCEPTANCE OR REJECTION OF THE PLAN**

**SECTION 4.01.  <u>EACH IMPAIRED CLASS ENTITLED TO VOTE SEPARATELY</u>.**

      Each Impaired Class of Claims that is to receive a Distribution under the Plan will be entitled to vote separately to accept or reject the Plan.  Except as provided herein, each Person that, as of the Voting Record Date, holds a Claim in an Impaired Class will receive a Ballot that will be used to cast its vote to accept or reject the Plan.  In the event of a controversy as to whether any Class of Claims is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## SECTION 4.02.   ACCEPTANCE BY A CLASS OF CLAIMS.

In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims will be deemed to accept the Plan if the Plan is accepted by the Holders of Claims in such Class that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

## SECTION 4.03.   CONFIRMATION PURSUANT TO SECTION 1129(B) OF THE BANKRUPTCY CODE OR "CRAMDOWN."

Because certain Classes are deemed to have rejected the Plan, the Trustee will seek confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Trustee reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## SECTION 4.04.   VOTING CLASSES.

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class.

## ARTICLE V
## MEANS OF PLAN IMPLEMENTATION

## SECTION 5.01.   PLAN OBJECTIVES.

The Plan establishes a Liquidation Trust on the Effective Date for the purposes of: (a) administering the Property and Assets of the Estate and the Trustee, including, but not limited to, the prosecution and/or settlement of Causes of Action and execution and recovery of any judgments, including, without limitation, the Spoliation Judgments (whether obtained pre- or post- Confirmation of this Plan), (b) resolving Claims, and (c) making Distributions to the Beneficiaries provided for under the Plan. The Liquidation Trust shall be under the direction and control of the Liquidating Trustee, as trustee of the Liquidation Trust, as more specifically set forth in the Liquidation Trust Agreement.  On the Effective Date, all of the Property, including, without limitation, the Causes of Action assigned pursuant to the procedures outlined above, shall vest in the Liquidation Trust.

## SECTION 5.02.   THE LIQUIDATION TRUST

### a.      Formation of the Liquidation Trust

On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement, attached to the Plan as Exhibit A, for the purposes of, *inter alia*, (a) administering all of the Property, including, without limitation the Causes of Action, conveyed to the Liquidation Trust, (b) resolving all Claims, and (c) making all Distributions to the Beneficiaries provided for under the Plan.

22

**b.      Funding of the Liquidation Trust**

i.      On the Effective Date, all of the Property, including, without limitation, the Causes of Action assigned pursuant to the procedures outlined above, as well as the rights and powers of the Debtor, the Trustee, and the Estate, shall automatically vest in the Liquidation Trust for the benefit and on behalf of the Beneficiaries (the "Liquidation Trust Assets"). The Liquidation Trust shall succeed to all of the Debtor's, the Trustee's and the Estate's rights, title, and interest in the Property and the Debtor will have no further interest in or with respect thereto.

ii.      The Liquidation Trust Assets will be treated for tax purposes as being a grantor trust transferred by the Trustee to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims, and any Causes of Action assigned pursuant to the procedures outlined above, and then by the Beneficiaries to the Liquidation Trust in exchange for the beneficial interests in the Liquidation Trust. Thus, for tax purposes, the Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust, the parties to this Agreement intend to create a liquidating trust in accordance with Treasury Regulation § 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684, which shall be treated as a grantor trust for federal income tax purposes within the meaning of Sections 671-677 of the Internal Revenue Code of 1986 (as amended, the "IRC"), except to the extent otherwise provided in this plan. Although, the Trustee has not applied for a revenue ruling or other opinion from the IRS regarding the application of the aforementioned Revenue Procedure to the Liquidating Trust hereby created, all the elements of the Revenue Procedure have been incorporated into the Liquidating Trust Agreement attached hereto.

iii.      As soon as reasonably practicable after the Effective Date, (i) the Liquidating Trustee shall determine the fair market value of the Liquidation Trust Assets, and Causes of Action assigned to the Liquidation Trust, as of the Effective Date, based on his good faith estimation and (ii) the Liquidating Trustee shall apprise the Beneficiaries of such estimated valuation by notice mailed to the address of such Beneficiary set forth in any request for notice filed with the Bankruptcy Court; or if no such request has been filed, such address set forth in any proof of claim filed, and, if no claim has been filed, such address set forth in the schedules, if any. The Liquidating Trustee shall have no other or further obligation to notify Beneficiaries of the estimated value of the Liquidation Trust Assets. The valuation shall be used consistently by all parties (including, without limitation, the Trustee, the Liquidation Trust, the Liquidating Trustee, and the Beneficiaries) for all federal income tax purposes.

## SECTION 5.03.   ADMINISTRATION OF ASSETS

The Liquidation Trust Assets will be administered by the Liquidating Trustee pursuant to the terms of this Plan and the Liquidation Trust Agreement. The Liquidation Trust, acting through the Liquidating Trustee pursuant to the terms of this Plan and the Liquidation Trust Agreement, shall be authorized to exercise and perform the rights, powers and duties held by the Trustee and the Estate, including without limitation the authority as the Estate's representative under sections 323 and 1123(b)(3) of the Bankruptcy Code, to provide for the prosecution, settlement, adjustment, retention and enforcement of claims and interests of the Estate, including, but not limited to, the Causes of Action, the authority to administer the Claims resolution process, and the authority to exercise all rights and powers under sections 105, 506(c), 544-551, 1106, 1107 and 1108 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules.

## SECTION 5.04.   CONCLUSION OF SERVICES OF THE TRUSTEE

Except as provided below in this Article 5.04 on the Effective Date, the duties, responsibilities and services of the Trustee shall conclude. On and after the Effective Date, the Trustee's and Estate's affairs will be managed by the Liquidating Trustee, pursuant to the terms of the Plan and the Liquidation Trust Agreement. The Trustee shall turn over to the Liquidating Trustee all Assets and Property of the Estate, including, without limitation, all business and financial records. The Trustee shall continue to serve after such date with respect to (i) all the applications filed pursuant to sections 330 and 331 of the Bankruptcy Code seeking payment of Professional Fee Claims, (ii) any post-confirmation modifications to, or motions seeking the enforcement of, the provisions of this Plan or the Confirmation Order (iii) to immediately effectuate any transition from the Trustee to the Liquidating Trustee consistent with the terms of the Plan; and (iv) to file any required post-Confirmation reports.

## SECTION 5.05.   LIQUIDATING TRUSTEE

### a.     Identity

On the Effective Date, the Trustee will be appointed the Liquidating Trustee, as trustee of the Liquidation Trust.

### b.     Responsibilities of the Liquidating Trustee

   i. The responsibilities of the Liquidating Trustee are more thoroughly set forth in the Liquidation Trust Agreement, and shall include, without limitation: (i) prosecuting, executing upon and/or settling the Causes of Action; (ii) prosecuting and/or settling objections to, and estimations of, Claims; (iii) liquidating the remaining Property of the Estate, and providing for the distribution of the net sale proceeds thereof, in accordance with the provisions of the Plan; (iv) calculating and implementing all Distributions required under the Plan; (v) filing all required tax returns, and paying taxes and all other obligations on behalf of the Estate from Estate funds; (vi) managing the wind down of the Estate, and otherwise administering the Estate; (vii) establishing, at his discretion, the Plan Reserves, subject to the availability of funds; (ix)

24

engaging and compensating counsel and other professionals; and (x) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Confirmation Order or the Liquidation Trust Agreement, or as may be necessary and proper to carry out the provisions of the Plan.

ii.  The Liquidating Trustee shall use his best good faith efforts to provide a status report on a bi-yearly basis, or at such other interval as may be appropriate, via a filing with the Bankruptcy Court. Such status report shall provide updates regarding the current status of (i) the litigation and/or settlement of the Causes of Action, (ii) the Claims resolution process, including the allowance of, objection to and litigation and/or settlement of any and all Claims, (iii) the proposed distributions on Allowed Claims, (iv) the creation of proposed Plan Reserve Accounts, and (v) the then current financial status of the Liquidation Trust.

### c.  Powers and Authority of Liquidating Trustee

The powers and authority of the Liquidating Trustee shall be set forth in the Liquidation Trust Agreement, and shall include, without limitation and without further Bankruptcy Court approval, the power: (i) to invest funds of the Estate, and withdraw funds of the Estate, make Distributions, incur obligations for reasonable and necessary expenses in liquidating and converting any remaining assets of the Liquidation Trust to Cash and pay taxes and other obligations owed by the Estate and/or the Liquidation Trust from funds held by the Liquidating Trustee in accordance with the Plan; (ii) to request prompt audit of tax filings pursuant to Bankruptcy Code Section 505(b); (iii) to engage employees and professionals to assist the Liquidating Trustee with respect to his responsibilities, including, but not limited to, any Professionals employed by the Trustee; (iv) to prosecute, compromise and/or settle Claims and Causes of Action and objections to Disputed Claims on behalf of the Estate; (v) to liquidate any remaining Property, and provide for the Distributions in accordance with the provisions of the Plan; (vi) to manage the continued liquidation of the Estate's Assets and Property, and to otherwise administer the Liquidation Trust; (vii) to stand in the shoes of the Trustee and/or Debtor and assert or waive attorney client and other privileges; (viii) to interpret the Plan in the Liquidating Trustee's reasonable discretion; (ix) to borrow from the Beneficiaries of the Trust, such funds as are necessary to fund litigation of the Causes of Action; (x) to file any remaining tax returns or other required filings for the Estate as may be necessary to facilitate the Plan and transfer of Assets to the Liquidating Trust; and (xi) such other powers and authority as may be vested in or assumed by the Liquidating Trustee by any Court Order or as may be necessary, appropriate or incident to the performance of his duties under the Plan and the Liquidation Trust Agreement.  The Liquidating Trustee, on behalf of the Estate, shall have discretion to pursue, not pursue or settle, any and all Causes of Action and objections to Claims, as he determines is in the best interests of the Estate and Liquidation Trust. The Liquidating Trustee shall, pursuant to Bankruptcy Rule 7025(c), be substituted as plaintiff in all Causes of Action commenced by the Trustee pre-Confirmation, and the Confirmation Order shall be deemed to provide for such substitution.

The Liquidating Trustee shall have the exclusive power and authority to prosecute, compromise and/or settle Causes of Action assigned to the Liquidation Trust. All proceeds of

any Causes of Action shall be placed in a bank account that contains the Available Cash and shall be controlled by the Liquidating Trustee in his name or the name of the Liquidation Trust. The Liquidating Trustee has the power and authority to engage employees and professionals to assist in the prosecution of the Causes of Action and may pay all such expenses and such fees incurred from the Available Cash without notice or any further order of the Bankruptcy Court as costs of administration of the Liquidation Trust.

**d.     Retention of Professionals**

The Liquidating Trustee may, without further notice or order of the Bankruptcy Court, employ professionals, including, but not limited to, counsel, expert witnesses, consultants, tax professionals and financial advisors, as needed to assist him in fulfilling his obligations under the Plan and Liquidation Trust, and on whatever fee arrangement he deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements. Professionals engaged by the Liquidating Trustee shall not be required to file applications for compensation in order to receive the compensation provided for herein. If the Liquidating Trustee has any objection to an application for compensation submitted to him by a Professional, the Liquidating Trustee and the Professional that has submitted the application to which the Liquidating Trustee has raised the objection may mutually agree to submit the dispute to binding arbitration or, if the parties do not mutually agree to arbitration, then they may file a motion with the Bankruptcy Court to decide the matter.

**e.     Liquidating Trustee Compensation**

In addition to the reimbursement for actual out-of-pocket expenses incurred by the Liquidating Trustee, the Liquidating Trustee shall be entitled to receive reasonable compensation for services rendered on behalf of the Liquidation Trust  payable after such services are rendered in an amount not to exceed those limitations on compensation provided in 11 U.S.C. § 326(a). For the purposes of calculation of such commissions payable to the Liquidating Trustee, all commissions previously allowed and paid to the Chapter 11 Trustee as contemplated to be allowed under the provisions of Article 3.02(a)(iii) shall be included in application of the declining compensation formula set forth in 11 U.S.C. § 326(a).  All such compensation payable to the Liquidating Trustee may be paid by the Liquidating Trustee from the assets of the Liquidation Trust without application to or order of the Court.

**f.     Successor Liquidating Trustee**

In the event that the Liquidating Trustee resigns, is removed, or otherwise ceases to serve as Liquidating Trustee a successor Liquidating Trustee shall be appointed by a majority vote of then Allowed Claims, within ten (10) Business Days of such resignation, removal or other cessation of service by the incumbent Liquidating Trustee, subject to Bankruptcy Court approval. Any successor Liquidating Trustee shall be subject to the same qualifications and shall have the same rights, powers, duties and discretion, and otherwise be in the same position, as the originally named Liquidating Trustee.   References herein to the Liquidating Trustee shall be deemed to refer to any successor Liquidating Trustee acting hereunder. The Liquidating Trustee may be removed only for cause in accordance with Bankruptcy Code section 324(a), including,

but not limited to, breach of his duties under the Plan, and only by order of the Bankruptcy Court.

### g.     Termination of Liquidation Trust

The duties, responsibilities and powers of the Liquidating Trustee shall terminate in accordance with the terms of the Liquidation Trust Agreement after all of the Liquidation Trust Assets have been liquidated and after all Distributions have been made to Holders of Allowed Claims.

### h.     Records

The Liquidating Trustee shall maintain good and sufficient books and records of account relating to the Available Cash and General Assets and any other assets of the Liquidation Trust, the management thereof, all post-Effective Date transactions undertaken by the Liquidating Trustee, all expenses incurred by or on behalf of the Liquidating Trustee after the Effective Date, and all Distributions contemplated or effectuated under the Plan.

## SECTION 5.06.   INDEMNIFICATION

From and after the Effective Date, the Trustee and the Liquidating Trustee and their respective firms, companies, shareholders, members, partners, officers, directors, employees, professionals, representatives, successors, and assigns (collectively, the "Indemnified Parties" and each an "Indemnified Party") shall be indemnified by the Liquidation Trust, to the fullest extent permissible by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees and defense costs and other assertions of liability arising out of any such Indemnified Parties' good faith exercise of what such Indemnified Party reasonably understands to be its powers or the discharge of what such Indemnified Party reasonably understands to be its duties conferred by the Plan, the Liquidation Trust Agreement, or by any order of the Bankruptcy Court entered pursuant to, or in furtherance of, this Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order of a court of competent jurisdiction to be due to their own respective fraud, gross negligence or intentional misconduct), including without limitation, acts or omissions concerning pursuing, not pursuing or settling the Causes of Action, sales of assets, or objections to Claims, on and after the Effective Date. The foregoing indemnification shall also extend to matters directly or indirectly, in connection with, arising out of, based on, or in any way related to (i) the Plan; (ii) the services to be rendered pursuant to the Plan; (iii) the Liquidation Trust Agreement or any other document or information, whether verbal or written, referred to herein or supplied to or by the Liquidating Trustee; and/or (iv) the pre-Effective Date acts and omissions of the Chapter 11 Trustee and their respective firms, companies, shareholders, members, partners, officers, directors, employees, professionals, representatives, successors and assigns. The Liquidating Trustee shall, on demand, advance or pay promptly out of Available Cash or a Plan Reserve Account set up specifically for this purpose if such an account is established by the Liquidating Trustee, on behalf of each Indemnified Party, reasonable attorneys' fees and other expenses and disbursements which such Indemnified Party would be entitled to receive pursuant to the foregoing indemnification obligation; provided, however, that any Indemnified Party receiving any such advance shall

execute a written undertaking to repay such advance amounts if a court of competent jurisdiction ultimately determines that such Indemnified Party is not entitled to indemnification hereunder due to the fraud, gross negligence or intentional misconduct of such Indemnified Party. The Liquidating Trustee may in his discretion obtain insurance to cover the indemnity obligations of the Liquidation Trust, the premiums, fees and other costs of which shall be paid from the Liquidation Trust Assets.

## SECTION 5.07.  PROVISION FOR TREATMENT OF DISPUTED CLAIMS

### a.    Liquidation Trustee Standing

Unless otherwise ordered by the Bankruptcy Court or provided for in the Plan, the Liquidating Trustee will have the exclusive right, except with respect to Professional Fee Claims, to object to the allowance of Claims. The Liquidating Trustee may bring, compromise and settle any objections to Claims without the approval of the Bankruptcy Court. At such time as a Disputed Claim is resolved by Final Order and is Allowed or is settled by the Liquidating Trustee, the Holder thereof will receive, as soon as practicable thereafter, the Distributions to which such Holder is then entitled under this Plan.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall prevent the Liquidating Trustee from objecting to any Claim, except where such Claim is specifically allowed in the Plan or other Final Order.

### b.    Plan Reserves

i.    Establishment of Plan Reserves.  On or after the Effective Date, and subject to the availability of funds, the Liquidating Trustee may in his discretion establish appropriate reserves, including but not limited to reserves for Post-Effective Date Expenses, Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Non-Tax Priority Claims, Disputed Secured Claims, and Disputed General Unsecured Claims, which shall be funded in accordance with subparagraph 2 below.

ii.    Order of Funding of Reserves.  The Plan Reserves, if any, shall be funded in the following order, and no Plan Reserve shall be funded until the prior Plan Reserves have been fully funded in accordance with the terms of this Plan: (i) the Post-Effective Date Expense Reserve, which may include Liquidating Trustee compensation; (ii) the Disputed Administrative Expense Claims Reserve; (iii) the Disputed Priority Tax Claims Reserve; (iv) the Disputed Non-Tax Priority Claims Reserve; (v) the Disputed Class 3 Claims Reserve; and (vi) the Disputed Class 4 Claims Reserve. In addition to the specific reserves identified herein, the Liquidating Trustee may, until they become deliverable, create a reserve for undeliverable Distributions, subject to subparagraph iii below for the benefit of the Persons entitled to the Distributions and such other reserves as he deems appropriate.

       iii.    <u>Investment of Reserves</u>. If practicable, the Liquidating Trustee may invest any Cash or Available Cash that is held in any of the Plan Reserves created under this Plan in an appropriate manner to ensure the safety of the investment; provided, however, that, except to the extent expressly set forth in this Plan, nothing in this Plan, the Disclosure Statement, or the Liquidation Trust Agreement shall be deemed to entitle the Holder of a Claim to postpetition interest on such Claim.

## SECTION 5.08.   <u>DISTRIBUTION OF PROPERTY UNDER THE PLAN</u>

### a.     Source of Distributions

The sources of all Distributions and payments under this Plan are the Available Cash and any proceeds from the liquidation of the Causes of Action, and any remaining Property of the Estate.

### b.     Manner of Cash Payments

Cash payments to domestic entities holding Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Liquidating Trustee or, at the Liquidating Trustee's option, by wire transfer from a domestic bank. Cash payments to foreign entities holding Allowed Claims may be paid, at the Liquidating Trustee's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

### c.     Timing of Distributions

Except as otherwise provided in the Liquidation Trust Agreement, upon liquidation of all the General Assets of the Liquidation Trust and completion of the prosecution of the Causes of Action, the Liquidating Trustee shall make a final distribution of all the General Assets of the Liquidation Trust. Except where the Plan or Liquidation Trust provides otherwise and to the extent of Available Cash, the Liquidating Trustee may, but shall not be required to, make such interim Distributions as he believes appropriate. The Liquidating Trustee shall make an initial Distribution, which shall be made as soon as is practical after the Effective Date, but no later than ninety (90) days after the Effective Date provided that funds are available for distribution notwithstanding any reserves otherwise required by the Plan and Liquidation Trust Agreement, in the sole judgment of the Liquidating Trustee.  Thereafter, Distributions shall be made every six (6) months subsequent to the initial Distribution date, or as soon thereafter as is reasonably practicable, unless the Liquidating Trustee determines, in his reasonable discretion, that such Distribution would be economically impracticable.

### d.     Setoff and Recoupment

Notwithstanding anything to the contrary in this Plan, the Liquidating Trustee may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim any claims that Estate or Trustee may have against the claimant or the Person holding the Allowed Claim. The Liquidating Trustee does not and shall not be deemed to waive or release any claim against those Persons by failing to effect such a setoff or recoupment, by the

allowance of any Claim against the Estate, or by making a Distribution on account of an Allowed Claim. In addition, the settlement or adjudication of any Avoidance Action shall not bar the Liquidating Trustee from filing a subsequent objection to Claim. The Liquidating Trustee may assert all of the same rights and defenses, including the setoff rights and rights under section 502(d) of the Bankruptcy Code, with respect to any Claim held by an Assignee of a Claim as he could against the original Holder of the Claim.

### e.      Interest on Claims

Unless otherwise specifically provided for in this Plan, the Confirmation Order, any order of this Court, or required by applicable bankruptcy law, Post-Petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

### f.      Withholding and Reporting Requirements

In connection with this Plan and all Distributions under this Plan, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements.

The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment and reporting requirements. All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder. All Holders shall be required to provide any information necessary to effect information reporting and withholding of such taxes, including but not limited to taxpayer identification numbers.   Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, and other tax obligations, on account of such Distribution. The Liquidating Trustee will require any Creditor to provide a completed form W-8, W-9, or W-4 IRS tax form or otherwise furnish to the Liquidating Trustee its tax identification number as assigned by the IRS.   In the event a Creditor fails to provide the aforesaid tax information, the Liquidating Trustee may take such action as provided in the Liquidating Trust Agreement.

### g.      No *De Minimus* Distributions

Notwithstanding anything to the contrary in the Plan, no Cash payment of less than $100 will be made by the Liquidating Trustee to any Person holding an Allowed Claim. No consideration will be provided in lieu of the *de minimus* Distributions that are not made under this Article.

### h. Fractional Dollars

Any other provision of this Plan notwithstanding, the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

### i. No Distributions With Respect to Disputed Claims

Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim, **provided, however**, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to receive a Distribution on account of that portion of the Disputed Claim, if any, which the Liquidating Trustee does not dispute, which Distribution shall be made by the Liquidating Trustee at the same time and in the same manner that such Liquidating Trustee makes Distributions to Holders of similar Allowed Claims pursuant to the provisions of the Plan. The Liquidating Trustee may, in his discretion, withhold Distributions otherwise due and payable by the Liquidating Trustee hereunder to any applicable Holder of a Claim until the Claims Objection Deadline, to enable a timely objection thereto to be filed. A Claim of any Person from which property may be recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that may be avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be a Disallowed Claim unless and until the Person or transferee has paid the amount or turned over the property for which such Person or transferee is liable. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan and the Liquidation Trust Agreement.

### j. Undeliverable or Unclaimed Distributions

Subject to the aforesaid paragraphs, Distributions to Persons holding Allowed Claims will initially be made by mail as follows:

i. Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change received by the Liquidating Trustee; or

ii. The Liquidating Trustee will require any Creditor to provide a completed form W-8 or W-9 IRS tax form or otherwise furnish to the Trustee its tax identification number as assigned by the IRS. In the event a Creditor fails to provide the aforesaid tax information, the Trustee may take such action as provided in the Liquidating Trust Agreement.

If the Persons holding Allowed Claims fails to provide the information required by this paragraph, the Distribution will be deemed to be undeliverable. If a Distribution is returned to the Liquidating Trustee as an undeliverable Distribution or is deemed to be an undeliverable Distribution, the Liquidating Trustee will make no further Distribution to the Person holding the Claim on which the Distribution is being made unless and until the Liquidating Trustee is timely

notified in writing of that Person's current address and the required information pursuant to this Paragraph j(ii). Subject to the following paragraph, until they become deliverable, the Liquidating Trustee may, in his discretion, create a Plan Reserve for undeliverable Distributions for the benefit of the Persons entitled to the Distributions. These Persons will not be entitled to any interest on account of the undeliverable Distributions.

Any Person that is otherwise entitled to an undeliverable Distribution and that does not, within the later of six months after the Effective Date, or sixty (60) days after a Distribution is returned to the Liquidating Trustee as undeliverable, or is deemed to be an undeliverable Distribution, provide the Liquidating Trustee with a written notice asserting its claim to or interest in that undeliverable Distribution and setting forth a current, deliverable address and the required information pursuant to this Paragraph j(ii) will be deemed to waive any claim to or interest in that undeliverable Distribution and will be forever barred from receiving that undeliverable Distribution or asserting any Claim related thereto against the Liquidation Trust, the Estate, or the Liquidating Trustee. Any undeliverable Distributions that are not claimed under this Article will become Available Cash. Nothing in the Plan requires the Liquidating Trustee to attempt to locate any Person holding an Allowed Claim and whose Distribution is undeliverable. The aforesaid shall apply to any Unclaimed Property.

## ARTICLE VI
## LITIGATION

### SECTION 6.01.   PRESERVATION OF CAUSES OF ACTION AND DEFENSES

Except as otherwise expressly provided in the Plan or the Liquidation Trust Agreement, on the Effective Date, all Property of the Estate, including, but not limited to, all claims, rights, defenses, Causes of Action and any Property of the Debtor that is part of the Estate assigned to the Liquidation Trust, shall vest in the Liquidation Trust, free and clear of all Liens, Claims, charges or other encumbrances.

Unless expressly waived, released or settled in the Plan or any Final Order, the Liquidating Trustee shall retain, and may exclusively enforce, any and all claims, rights, defenses and Causes of Action (including without limitation, claims, rights, defenses and Causes of Action not specifically identified, or which the Trustee or the Liquidating Trustee, may presently be unaware of, or which may arise or exist by reason of additional facts or circumstances unknown to the Trustee or the Liquidating Trustee, at this time, or facts or circumstances which may change or be different from those which the Trustee believes to exist), whether arising before or after the Petition Date, in any court or tribunal, including, but not limited to, the Bankruptcy Court. The Liquidating Trustee, is authorized to exercise and perform the rights, powers and duties held by the Estate, including without limitation the authority under Bankruptcy Code section 1123(b)(3) to provide for the settlement, adjustment, retention and enforcement of claims, rights, defenses and Causes of Action. The Liquidating Trustee shall further have the power, and may exercise discretion, to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, defenses and Causes of Action, and shall not be required to seek Bankruptcy Court approval of such decisions. The Liquidating Trustee stands in the shoes of the Debtor and the Estate and may take such actions in their name without the need to intervene in, amend any pending actions or obtain any further order of the Court.

32

**SECTION 6.02.   PRECLUSION DOCTRINES**

      No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), standing or laches shall apply to such claims, rights, defenses or Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims, rights, defenses or Causes of Action have been released in the Plan or other Final Order. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), standing or laches shall prevent the Liquidating Trustee from objecting to any Claim, except where such Claim is specifically allowed in the Plan or other Final Order.

      No one may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any claim, right, defense or Cause of Action against them as an indication that the Liquidating Trustee will not pursue any and all available claims, rights, defenses, or Causes of Action against them.

      The Confirmation Order shall not bar the Liquidating Trustee by res judicata, collateral estoppel, or otherwise from collecting, prosecuting, settling, or defending any claim, right, defense, or Causes of Action.

**THE LIQUIDATING TRUSTEE WILL MAKE THE DECISION TO PURSUE, NOT PURSUE OR SETTLE CAUSES OF ACTION.  THIS DECISION MAY BE BASED ON MANY FACTORS, INCLUDING, BUT NOT LIMITED TO, THE MERITS OF THE CAUSES OF ACTION AND THE COSTS REQUIRED TO PROSECUTE SUCH CAUSES OF ACTION. AS SET FORTH IN ARTICLES 5.03 and 5.05 OF THE PLAN, THE LIQUIDATING TRUSTEE HIS RESPECTIVE FIRMS, COMPANIES, SHAREHOLDERS, MEMBERS, PARTNERS, OFFICERS, DIRECTORS, EMPLOYEES, PROFESSIONALS, ATTORNEYS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS SHALL NOT HAVE ANY LIABILITY ARISING OUT OF THE LIQUIDATING TRUSTEE'S GOOD FAITH DETERMINATION OF WHETHER OR NOT TO PURSUE PROSECUTION OR SETTLEMENT OF ANY CAUSE OF ACTION.**

**ARTICLE VII**
**EXCULPATION**

**SECTION 7.01.   LIMITATION OF LIABILITY IN CONNECTION WITH THE CASE, THE PLAN, DISCLOSURE STATEMENT, AND RELATED DOCUMENTS**

      Pursuant to section 1125(e) of the Bankruptcy Code, the Trustee, and the Liquidating Trustee and their respective present and former firms, companies, shareholders, members, partners, officers, directors, employees, professionals, representatives, successors, and assigns (collectively, the "Plan Participants") will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Case, including, but not limited to, the formulation, preparation, dissemination, negotiation, implementation,

33

confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, the Liquidation Trust Agreement, or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit, non-pursuit or settlement of Causes of Action, or any other act taken or omitted to be taken in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order, or the Liquidation Trust Agreement or related agreement, including solicitation of acceptances of the Plan, the filing of federal and state income tax returns and any other tax filings ("Exculpated Conduct"); *provided*, *however*, that no Person shall be relieved of liability for fraud, gross negligence, intentional misconduct or the willful violation of federal or state securities laws or the Internal Revenue Code.

The Plan provides that all Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Plan Participants, whether directly, derivatively, on account of or respecting any Claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.   Any Plan Participant injured by any willful violation of the injunctions provided in the Plan shall recover from the willful violator actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

### SECTION 7.02.   <u>INJUNCTION AGAINST SUING THE TRUSTEE, THE LIQUIDATION TRUST, AND THE LIQUIDATING TRUSTEE</u>

Unless otherwise provided herein or the Confirmation Order, all injunctions or stays provided for in the Case pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.

**As of the Effective Date, all Persons (unless such Person has obtained an order of the Court granting nondischargability of such Person's claim against the Debtor BUT ONLY TO THE EXTENT OF ASSETS NOT INCLUDED IN THE LIQUIDATION TRUST, INCLUDING WITHOUT LIMITATION THE PROPERTY AS DEFINED HEREIN) that have held, hold, or may hold Claims (including, but not limited to, Administrative Claims) are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of any such Claim, Administrative Claim against the Estate until the Liquidation Trust is wound up and closed, the  Trustee, and the Liquidating Trustee and their respective firms, companies, shareholders, members, partners, officers, directors, employees, professionals, representatives, successors and assigns (the "Estate Parties"), including, but not limited to, any Claims, Administrative Claims based upon any act or omission, transaction, or other activity of any kind, type or nature that occurred in connection with the Case prior to the Confirmation Date; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Estate Parties arising from any matter related to the Case; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claims (including, but not limited to, Administrative Claims); and (iv) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation due from the Estate Parties or against the**

**property, or interests in property, of the Estate Parties with respect to any such Claim (including, but not limited to, Administrative Claims). Provided, however, and notwithstanding anything to the contrary in this paragraph, (i) nothing shall impair the rights of a defendant to a Cause of Action from asserting a right of setoff, subrogation, or recoupment as an affirmative defense, (ii) nothing shall impair the rights of Creditors to defend any Claim objection or receive treatment provided under the Plan, (iii) nothing shall prohibit Persons from filing Administrative Expense Claims on or before the Administrative Claims Bar Date, and (iv) nothing shall relieve the Estate Parties from their obligations under the Plan.**

For the avoidance of doubt, and notwithstanding any other provision contained in the Plan or the Confirmation Order, nothing in the Plan or the Confirmation Order shall release or enjoin the prosecution of any claims or Causes of Action held by the Estate or assigned to the Liquidation Trust.

## ARTICLE VIII
## OTHER PLAN PROVISIONS

### SECTION 8.01.  CONDITIONS TO CONFIRMATION

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in writing in accordance with Article 8.03

    a.    An order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code section 1125 shall have been entered by the Bankruptcy Court; and

    b.    A Confirmation Order in form and substance, reasonably acceptable to the Trustee shall have been entered by the Bankruptcy Court.

### SECTION 8.02.  THE EFFECTIVE DATE

This Plan will not be consummated or become binding unless and until the Effective Date Occurs. The Effective Date will be the first Business Day after the following conditions have been satisfied:

    a.    Fourteen (14) days have passed since the Confirmation Date; and

    b.    The Confirmation Order is not stayed.

### SECTION 8.03.  WAIVER OF CONDITIONS

Each of the conditions set forth in Articles 8.01 and 8.02 of this Plan, except for entry of the Confirmation Order, may be waived in whole or in part by the Trustee. For the avoidance of doubt, absent a stay pending appeal, the pendency of any appeal of the Confirmation Order shall not cause the delay of the Effective Date. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Trustee as a basis to not consummate this Plan regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the

Trustee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## SECTION 8.04.  CONSEQUENCES OF NON-OCCURRENCE OF EFFECTIVE DATE

In the event that the Effective Date does not timely occur, the Trustee reserves all rights to seek orders from the Bankruptcy Court directing that the Confirmation Order be vacated, that this Plan be null and void in all respects, and/or that any settlement of Claims provided for in this Plan be null and void. In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Trustee may assume and assign or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions.

## SECTION 8.05.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### a.  Rejection of Executory Contracts and Unexpired Leases

The Trustee does not believe there are any executory contracts, however to the extent any exist they are to be treated as follows: except as otherwise provided in the Confirmation Order, this Plan, or any other Plan Document, on the Effective Date, the Trustee will be deemed to have rejected any and all agreements that the Debtor executed before the Effective Date -- other than agreements that were previously assumed or rejected either by a Final Order or under Bankruptcy Code section 365 -- to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code section 365. On the Effective Date, the Confirmation Order will constitute a Court order approving this rejection.

To the extent provided in the Confirmation Order, this Plan, or any other Plan Document entered into after the Petition Date or in connection with this Plan, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 assuming, as of the Effective Date, those executory contracts and unexpired leases identified in such documents as being assumed. To the extent provided in the Confirmation Order, this Plan, or any other Plan Document entered into after the Petition Date or in connection with this Plan, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 assigning, as of the Effective Date, those executory contracts and unexpired leases identified in such documents as being assigned.

### b.  Bar Date for Rejection Damage Claims

Any rejection damage claims arising from the rejection under the Plan of an executory contract or an unexpired lease must be filed with the Court and served on the Liquidating Trustee and his counsel within thirty (30) days after the Effective Date. Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable and the Persons holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims. The Liquidating Trustee reserves the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than the Claims Objection Deadline.

## SECTION 8.06.   INDEMNIFICATION OBLIGATIONS

Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Estate has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law, shall be rejected as of the Effective Date, to the extent executory. Nothing in this Plan shall be deemed to release the Debtor's insurers from any claims that might be asserted by counter-parties to contracts or agreements providing the indemnification by and of the Debtor, to the extent of available coverage.

## SECTION 8.07.   ENTRY OF A FINAL DECREE

Promptly following the completion of all Distributions contemplated by this Plan, the Liquidating Trustee will file a motion with the Bankruptcy Court to obtain the entry of a final decree.

## SECTION 8.08.   UNITED STATES TRUSTEE FEES AND REPORTS

Pursuant to section 1129(a)(12) of the Bankruptcy Code, any outstanding quarterly fees due and owing to the Office of the United States Trustee under 28 U.S.C. §1930(a)(6) shall be paid from Available Cash in the Estate. After the Effective Date, the Liquidating Trustee shall file post- confirmation quarterly disbursement reports and pay from Available Cash or a designated Plan Reserve Account all quarterly fees to the Office of the United States Trustee which are required by applicable law. The Liquidating Trustee shall include in any Plan Reserve created for Post- Effective Date Expenses reasonably sufficient monies to cover the quarterly fees of the Office of the United States Trustee incurred, or to be incurred, after the Effective Date.

## SECTION 8.09.   POST-CONFIRMATION STATUS REPORTS

The Liquidating Trustee shall endeavor to file post-confirmation status reports with the Court regarding the status of the implementation of the Plan every 180 days following the Effective Date.  The Trustee anticipates seeking a final decree of the Case at such time as he determines (in his capacity as Liquidating Trustee) that such relief is appropriate.

## SECTION 8.10.   POST-EFFECTIVE DATE EFFECT OF EVIDENCES OF CLAIMS

Commencing on the Effective Date, notes and other evidences of Claims will represent only the right to receive the Distributions contemplated under the Plan.

## SECTION 8.11.   NONDISCHARGE OF THE DEBTOR

In accordance with the Spoliation Judgment, the Confirmation Order will not discharge Claims against the Debtor. However, no Person holding a Claim may receive any payment from, or seek recourse against, any assets that are to be distributed under this Plan other than assets required to be distributed to that Person under the Plan until after the final decree is entered by the Bankruptcy Court.  As of the Effective Date and until entry of the final decree, all Persons

are precluded from asserting against any of the Liquidation Trust Assets or any property that is to be distributed under this Plan any Claims, rights, Causes of Action, liabilities, or interests based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided for in the Plan or in the Confirmation Order.

Nothing herein shall prevent a Creditor from seeking to recover a Claim from non-Liquidation Trust Assets, pursuant to the procedures described herein.

## SECTION 8.12.   NO RECOURSE

No Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Estate, the Trustee, the Liquidating Trustee and their respective firms, companies, shareholders, members, partners, officers, directors, employees, professionals, attorneys, representatives, successors, and assigns, or their respective property and assets, other than the right to receive Distributions in accordance with the terms of the Plan.

## SECTION 8.13.   NO ADMISSIONS

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed, is revoked, or otherwise the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will: (a) be deemed to be an admission by the Trustee with respect to any matter discussed in the Plan or the Disclosure Statement, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims or any Causes of Action held by the Estate; or (c) prejudice in any manner the rights of the Trustee, the Estate, or the Liquidating Trustee or any creditors or equity security holders in any further proceedings.

## SECTION 8.14.   SEVERABILITY OF PLAN PROVISIONS

If, before confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted.

Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Article, is valid and enforceable under its terms.

## SECTION 8.15.   GOVERNING LAW

The rights and obligations arising under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan will be governed by, and construed and enforced in accordance with, Maryland law without giving effect to Maryland law's conflict of law principles, unless a rule of law or procedure is supplied by: (a) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (b) an express choice-of-

law provision in any document provided for, or executed under or in connection with, the Plan terms.

## SECTION 8.16.   RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Case, this Plan, the Liquidation Trust and the Plan Documents to the fullest extent permitted by law, including, among other things, jurisdiction to:

a.   Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code section 507(a)(2), including compensation of any reimbursement of expenses of parties entitled thereto;

b.   Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the retention and payment of the fees and expenses of the Professionals of the Trustee, whose employment is continued by the Liquidating Trustee,  and compensation of the Liquidating Trustee, may be made in the ordinary course of business without the approval of the Bankruptcy Court;

c.   Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

d.   Effectuate performance of and payments under the provisions of this Plan;

e.   Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Case, this Plan, or any Plan Document;

f.   Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

g.   Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

h.    Consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

i.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

j.    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

k.    Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, the Confirmation Order, or any Plan Document;

l.    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Case;

m.    Except as otherwise limited herein, recover all Assets of the Debtor and Property of the Estate, wherever located;

n.    Hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

o.    Hear and determine motions for Bankruptcy Rule 2004 examinations;

p.    Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

q.    Hear and determine any Causes of Action;

r.    Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan;

s.    Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

t.    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

u.    Enforce all orders previously entered by the Bankruptcy Court;

v.       Dismiss the Case; and

w.      Enter a final decree closing the Case.

If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article will not affect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

## SECTION 8.17.   SUCCESSORS AND ASSIGNS

The rights, benefits, and obligations of any Person referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of that Person.

## SECTION 8.18.   SATURDAY, SUNDAY, OR LEGAL HOLIDAY

If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

## SECTION 8.19.   PLAN MODIFICATION

Subject to the restrictions set forth in Bankruptcy Code section 1127, the Chapter 11 Trustee (prior to the Effective Date) or the Liquidation Trustee (after the Effective Date) reserve the right to alter, amend, or modify the Plan before it is substantially consummated.

## SECTION 8.20.   WITHDRAWAL OF THE PLAN

The Trustee reserves the right to withdraw the Plan before the Confirmation Date.

## SECTION 8.21.   CONFLICT.

To the extent that terms of Confirmation Order or the Plan are inconsistent with the Disclosure Statement or any agreement entered into by the Trustee and any other party, the terms of the Plan control the Disclosure Statement and any such agreement, and the provisions of the Confirmation Order (and any Final Orders entered by the Bankruptcy Court after the date of the Plan) control the terms of the Plan.  In the event of any inconsistency between any provision of the Plan and any provision of the Liquidating Trust Agreement, the Liquidating Trust Agreement shall control.

## SECTION 8.22.   MODIFICATIONS AND AMENDMENTS.

The Trustee may alter, amend, or modify the Plan or any Plan Document under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.

The Trustee shall provide parties-in-interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or order of the Bankruptcy Court.  A

Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Holder.

After the Confirmation Date and prior to substantial consummation (as defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Trustee or the Liquidating Trustee, as applicable, may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan; provided, however, that, to the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or clarified, if the proposed alteration, amendment, modification or clarification does not materially and adversely change the treatment of the Claim of such Holder.

## ARTICLE IX
## RECOMMENDATIONS AND CONCLUSION

The Trustee, as the proponent of the Plan, strongly recommends that all creditors receiving a Ballot vote in favor of the Plan. The Trustee believes that the Plan maximizes recoveries to all Creditors entitled to receive distributions on their Allowed Claims and, thus, is in their best interests. The Plan as structured, among other things, allows creditors to participate in distributions in excess of those that would be available if the Estate was liquidated under chapter 7 of the Bankruptcy Code, and minimizes delays in recoveries to all Creditors entitled to receive distributions on their Allowed Claims.

Respectively submitted,

Dated: November 11, 2020

/s/ *Richard M. Goldberg*
Richard M. Goldberg, Bar No. 07994
Anastasia L. McCusker, Bar No. 29533
SHAPIRO SHER GUINOT & SANDLER
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201-3147
Tel: 410-385-4274
rmg@shapirosher.com
alm@shapirosher.com

*Attorneys for Roger Schlossberg, Chapter 11 Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of November, 2020, I reviewed the Court's

CM/ECF system and it reports that an electronic copy of the *foregoing* will be served

electronically by the Court's CM/ECF system on the following:

- **Elizabeth Marian Abood-Carroll**    ANHSOrlans@InfoEx.com, ecfaccount@orlans.com
- **Nancy Alper**    nancy.alper@dc.gov
- **Scott C. Borison**    borison@legglaw.com, ecf@legglaw.com
- **Todd Michael Brooks**    tbrooks@wtplaw.com, rodom@wtplaw.com
- **Kristine D Brown**    LOGSECF@logs.com
- **Michael T. Cantrell**    bankruptcymd@mwc-law.com, bankruptcymd@ecf.inforuptcy.com
- **Shaan S. Chima**    shaan.chima@gebsmith.com
- **Matthew Cohen**    matt.cohen@bww-law.com
- **Augustus T Curtis**    augie.curtis@cohenbaldinger.com
- **Mark S. Devan**    bankruptcy@albalawgroup.com
- **Alan D. Eisler**    aeisler@e-hlegal.com, mcghamilton@gmail.com
- **Matthew Anselm Sodaro Esworthy**    esworthy@bowie-jensen.com, hanley@bowie-jensen.com
- **William R. Feldman**    wrflaw@aol.com, acurtis@wfeldmanlaw.com
- **Wendell Finner**    himself@wendellfinner.com
- **Leah Christina Freedman**    bankruptcy@bww-law.com, leah.freedman@bww-law.com
- **Mark J. Friedman**    kimberly.curry@dlapiper.com, mfriedman@ecf.axosfs.com;regan.latesta@dlapiper.com
- **Mark J. Friedman**    yvonne.garber@dlapiper.com, mfriedman@ecf.axosfs.com;regan.latesta@dlapiper.com
- **Brian T. Gallagher**    Gallagher@councilbaradel.com, russo@councilbaradel.com;steadman@councilbaradel.com;ana@councilbaradel.com;ksm@councilbaradel.com;abs@councilbaradel.com;sb@councilbaradel.com
- **Martin Stuart Goldberg**    martin.s.goldbergesq@gmail.com
- **Richard Marc Goldberg**    rmg@shapirosher.com, ejd@shapirosher.com;mas@shapirosher.com
- **James Greenan**    jgreenan@mhlawyers.com, dmoorehead@mhlawyers.com;sgoldberg@mhlawyers.com;jgreenan@ecf.inforuptcy.com;jsantana@mhlawyers.com;sshin@mhlawyers.com
- **Edsel J. Guydon**    guydonlaw@aol.com
- **Richard E. Hagerty**    richard.hagerty@troutman.com, sharron.fay@troutman.com;natalya.diamond@troutman.com;angie.mcdade@troutman.com
- **Christopher Hamlin**    chamlin@mhlawyers.com, dmoorehead@mhlawyers.com;chamlin@ecf.inforuptcy.com;kolivercross@mhlawyers.com

- **Eric Harlan**    erh@shapirosher.com, mgh@shapirosher.com
- **Emil Hirsch**    ehirsch@polsinelli.com,
  spozefsky@polsinelli.com;mleeling@polsinelli.com;dcdocketing@polsinelli.com
- **Diona Howard-Nicolas**    dhoward-nicolas@kg-law.com
- **Lawrence A. Katz**    lkatz@hirschlerlaw.com, lrodriguez@hirschlerlaw.com
- **Susan J. Klein**    sklein@fftlaw.com, lramsey@fftlaw.com
- **Lynn A. Kohen**    lynn.a.kohen@usdoj.gov
- **Michael Vincent Kuhn**    michael.kuhn@brockandscott.com
- **Richard A. Lash**    rlash@bhlpc.com, bcy@bhlpc.com
- **Leah Victoria Lerman**    llerman@mhlawyers.com
- **Robert Norman Levin**    rnl@lawofficesofrobertlevin.com,
  dec@lawofficesofrobertlevin.com
- **Jean Evelyn Lewis**    jlewis@kg-law.com, tlewis@kg-law.com
- **Michael J. Lichtenstein**    mjl@shulmanrogers.com, tlockwood@shulmanrogers.com
- **Michael J. Lichtenstein**    mjl@shulmanrogers.com, tlockwood@shulmanrogers.com
- **James M. Loots**    jloots@lootslaw.com
- **Lawrence Bain Manley**    lmanley@lmanleylaw.com
- **Frank J. Mastro**    fmastro@schlosslaw.com
- **Anastasia L. McCusker**    alm@shapirosher.com, ejd@shapirosher.com
- **Richard M. McGill**    mcgillrm@aol.com
- **Brian S. McNair**    bankruptcy@albalawgroup.com
- **Philip James McNutt**    pmcnutt@mcnuttlawoffice.com, pmcnutt48@gmail.com
- **William Glenn Merten**    Glenn.merten@faegredrinker.com,
  stevie.price@faegredrinker.com;sandra.grannum@faegredrinker.com
- **Michael Gregg Morin**    MikeMorin.MorinLaw@gmail.com, deshaiesb@gmail.com
- **Randell C. Ogg**    rogg@ogg-law.com
- **Marc A. Ominsky**    info@mdlegalfirm.com,
  marc@mdlegalfirm.com;adeal@mdlegalfirm.com;bkcourtmailmd@gmail.com;a.mr7870
  1@notify.bestcase.com
- **Nisha Ryan Patel**    npatel@siwpc.com,
  bkreferrals@siwpc.com;siwbkecf@siwpc.com;siwpc@ecf.courtdrive.com;siwattecf@siw
  pc.com
- **Justin Akihiko Redd**    jredd@kg-law.com, svogel@kg-law.com
- **L. Jeanette Rice**    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- **Douglas B. Riley**    dbriley@tph-law.com
- **Richard Rogers**    rrogers@cgd-law.com, bankruptcyecf@cgd-law.com;estamas@cgd-
  law.com;bbush@cgd-law.com
- **David A. Rosen**    drosen@bhlpc.com
- **Billy B. Ruhling**    bruhling@Dimuro.com
- **William M. Savage**    LOGSECF@logs.com
- **Alfred L. Scanlan**    ascanlan@schlosslaw.com, mroberts@schlosslaw.com
- **Roger Schlossberg**    trustee@schlosslaw.com, MD20@ecfcbis.com
- **James R. Schraf**    jschraf@yvslaw.com,
  wscalley@yvslaw.com;yvslawcmecf@gmail.com;r39990@notify.bestcase.com;stevenslr
  39990@notify.bestcase.com;pgomez@yvslaw.com
- **Joel I. Sher**    jis@shapirosher.com, ejd@shapirosher.com

- **Jeffrey M. Sherman**    jeffreymsherman@gmail.com, elmoyer99@gmail.com
- **David J. Shuster**    dshuster@kg-law.com, ssohn@kg-law.com
- **David Edwin Solan**    david.solan@bww-law.com
- **John Thomas Szymkowicz**    john@szymkowicz.com
- **Pooya Tavakol**    ptavakol@bhlpc.com, bankruptcy@bhlpc.com;drosen@bhlpc.com;ptavakolbhlpc@gmail.com
- **US Trustee - Greenbelt**    USTPRegion04.GB.ECF@USDOJ.GOV
- **Kerry Brainard Verdi**    kverdi@verdiogletree.com
- **Gerard R. Vetter**    gerard.r.vetter@usdoj.gov
- **William W. Waller**    wwwallerlaw@gmail.com
- **Joshua Welborn**    bankruptcymd@mwc-law.com, bankruptcymd@ecf.inforuptcy.com
- **Christina M. Williamson**    christina.williamson@bww-law.com, bankruptcy@bww-law.com

/s/ *Richard M. Goldberg*
Richard M. Goldberg

Exhibit 1

Liquidation Trust Agreement

# LIQUIDATION TRUST AGREEMENT
## WITH RESPECT TO THE ESTATE OF VINCENT L. ABELL

      This Liquidation Trust Agreement With Respect to the Estate of Vincent L. Abell (the "Agreement") dated as of_____, **2020** is by and between Roger Schlossberg, as Chapter 11 Trustee (the "Chapter 11 Trustee" or the "Settlor") for Vincent L. Abell (the "Debtor") and Roger Schlossberg as the Liquidating Trustee under the terms of the Confirmed Chapter 11 Trustee's Plan of Liquidation of the Estate of Vincent L. Abell (the "Plan") proposed by the Chapter 11 Trustee in the chapter 11 bankruptcy case pending in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") with a caption of *In re Vincent L. Abell*, Case No. 13-13847-TJC, to implement the Liquidation Trust for the benefit of the Beneficiaries (as defined herein) under the terms of the Plan, as confirmed by the Bankruptcy Court by Order entered on _____, as amended, modified, or supplemented by order of the Bankruptcy Court.

## RECITALS

      WHEREAS, the Liquidation Trust is created pursuant to, and to effectuate, the Plan;

      WHEREAS, the Liquidation Trust is created on behalf, and for the sole benefit, of the Beneficiaries pursuant to the Plan;

      WHEREAS, the Liquidation Trust is established for the primary purposes of collecting, holding, administering, distributing and liquidating the Liquidation Trust Assets for the benefit of the Beneficiaries in accordance with the terms of this Agreement and the Plan and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Liquidation Trust;

      WHEREAS, under the terms of the Plan and the Confirmation Order, the Debtor's Estate shall be deemed to have irrevocably granted, transferred, conveyed, and delivered to the Liquidating Trust, on behalf of, and for the benefit of, the Beneficiaries control of, and all the rights, title and interests in and to, the Liquidating Trust Assets with no reversionary interest therein in favor of the Debtor;

      WHEREAS, the parties to this Agreement intend to create a liquidating trust in accordance with Treasury Regulation § 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684, which shall be treated as a grantor trust for federal income tax purposes within the meaning of Sections 671-677 of the Internal Revenue Code of 1986 (as amended, the "IRC"), except to the extent otherwise provided in this Agreement.

      NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Settlor and the Liquidating Trustee agree as follows:

# ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

1.1     Definitions.

      1.1.1     "Agreement" or "Liquidating Trust Agreement" shall mean this Liquidation Trust Agreement with Respect to the Estate of Vincent L. Abell.

      1.1.2     "Beneficiaries" shall collectively mean the Holders of Allowed Claims under the Plan, or any successors to such Holders' Allowed Claims.

      1.1.3     "Chapter 11 Trustee" means Roger Schlossberg, the chapter 11 trustee for the Debtor appointed by the Bankruptcy Court pursuant to Section 1104 of the Bankruptcy Code and in his capacity under Section 323 of the Bankruptcy Code.

      1.1.4     "Liquidation Trust" shall mean the Liquidation Trust established pursuant to the terms of this Agreement and the Plan.

      1.1.5     "Liquidation Trust Assets" shall have the meaning set forth in Article 5.02 of the Plan.

      1.1.6     "Liquidating Trustee" shall mean Roger Schlossberg, as Liquidating Trustee under the Plan, and any successor "Liquidating Trustee," as that term is defined under the Plan and this Agreement, duly appointed under the terms of the Plan and this Agreement.  The Liquidating Trustee shall be appointed as provided in the Plan.

      1.1.7     "Settlor" shall mean the Chapter 11 Trustee for the Debtor.

1.2     Use of Plan Definitions. All terms which are used in this Agreement and not defined herein shall have the same meaning set forth in the Plan.

1.3     Interpretation. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The rules of construction in Bankruptcy Code Section 102 apply to this Agreement. Except as otherwise provided in this Agreement or the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under this Agreement.  A term that is used in this Agreement and that is not defined in this Agreement or the Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules. The definition given to any term or provision in this Agreement supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules, or the Plan. Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms. Any reference to an existing document means the document as it has been, or may be, amended or supplemented. Unless otherwise indicated, the phrase "under the Agreement" and similar words or phrases refer to this Agreement in its entirety rather than to only a portion of the Agreement.  Unless otherwise

2

specified, all references to Articles or Exhibits are references to this Agreement's Articles or Exhibits. Article captions and headings are used only as convenient references and do not affect this Agreement's meaning.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of the State of Maryland shall govern the construction and implementation of the Agreement and any agreements, documents, and instruments executed in connection with the Agreement, without giving effect to the principles of conflicts of law thereof. Any Exhibits are incorporated into and are a part of this Agreement as if set forth in full herein.

1.4     Use of Certain Terminology.   Where context so requires, the use of the word "Debtor" shall be construed as "Chapter 11 Trustee" in his capacity as representative of the Estate under Section 323 of the Bankruptcy Code.   Where context so requires, the use of the word "Chapter 11 Trustee" shall be construed as "Debtor" as defined in the Plan.

**ARTICLE II**
**DECLARATION OF TRUST**

2.1     Purpose of Liquidation Trust.  The Settlor and the Liquidating Trustee, pursuant to the Plan and in accordance with title 11 of the United States Code (the "Bankruptcy Code"), hereby create the Liquidation Trust for the primary purposes of monetizing, collecting, holding, administering, distributing and liquidating the Liquidation Trust Assets and/or Property for the benefit of the Beneficiaries; resolving all Disputed Claims; paying all Liquidating Trust Expenses; making all Distributions to holders of Allowed Claims from the Liquidating Trust Assets as provided for in the Plan and this Agreement; and otherwise implementing the Plan and finally administering the Estate, all pursuant to and in accordance with the Plan and this Agreement.  The Liquidating Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Liquidation Trust. The activities of the Liquidation Trust shall be limited to those activities set forth in this Agreement and as otherwise contemplated by the Plan. The Liquidating Trustee will make continuing efforts to dispose of the Liquidating Trust Assets, make timely distributions, and not unduly prolong the duration of the trust.  It is intended that the Liquidating Trust be treated, for United States federal income tax purposes, as "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684, except to the extent otherwise provided in this Agreement.

2.2     Transfer of Liquidation Trust Assets.

A.     Grant of Liquidation Trust Assets.  The Settlor is deemed to irrevocably grant, release, assign, transfer and deliver, on behalf of the Beneficiaries, the Liquidation Trust Assets to the Liquidating Trustee as of the Effective Date in trust for the benefit of the Beneficiaries to be applied as specified in this Agreement and the Plan, with no revisionary interest whatsoever therein of the Debtor.   The Settlor shall from time to time as and when reasonably requested by the Liquidating Trustee execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Settlor shall take or cause to be taken such further action as the Liquidating Trustee may reasonably deem necessary or appropriate, to vest or perfect in or confirm to the Liquidating Trustee title to

and possession of the Liquidation Trust Assets.

        B.      <u>Rights In Liquidation Trust Assets</u>.  Pursuant to the Plan, all rights, title and interests in the Property of the Debtor's Estate, the Liquidation Trust Assets and the Chapter 11 Trustee are automatically and irrevocably vested in the Liquidation Trust on the Effective Date, free and clear of all liens, claims, encumbrances and other interests, and such transfer is on behalf of the Beneficiaries (whether such Beneficiaries' Claims are Allowed Claims on or after the Effective Date of the Plan) to establish the Liquidation Trust, without wavier of the Chapter 11 Trustee's evidentiary privileges, including the attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) associated with the Liquidating Trust Assets, the Claims of Beneficiaries and Disputed Claims, and all of the books and records relating to the foregoing. To the extent that any law or regulation prohibits the transfer of ownership of any of the Liquidation Trust Assets to the Liquidating Trustee and such law is not superseded by the Bankruptcy Code, the Liquidating Trustee's interest shall be a lien upon and security interest in such Liquidation Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Article 2.1 and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages. All of the Chapter 11 Trustee's and the Estate's rights, title and interests in any attorney-client privilege and work product privilege that attaches to communications or work product that are relevant to any Causes of Action are hereby vested and preserved in the Liquidation Trust and exercisable by the Liquidating Trustee. By executing this Agreement, the Liquidating Trustee hereby accepts all of such property as Liquidation Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

        C.      <u>Vesting of Causes of Action</u>.  Subject to the provisions of this Agreement, from and after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have the exclusive right to investigate, institute, prosecute, abandon, settle, or compromise any Causes of Action, subject to the provisions of this Agreement and the Plan, and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed or to be filed in the Chapter 11 Case.

        D.      <u>Incorporation of the Plan and Confirmation Order</u>.  The Plan and Confirmation Order are <u>each</u> hereby incorporated into this Agreement and made a part hereof by reference.  In the event of any inconsistency between any provision of this Agreement and any provision of the Plan or Confirmation Order, the provisions of this Agreement shall control.

        E.      <u>Treatment of Trust</u>.  Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Chapter 11 Trustee, the Estate, the Beneficiaries, the Liquidating Trustee, and <u>the</u> Liquidation Trust shall treat the Liquidation Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 (or any subsequent Revenue Procedures that may be issued) and transfer of the Liquidation Trust Assets to the Liquidation Trust shall be treated as a transfer of the Liquidation Trust Assets by the Debtor's Estate to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Liquidation Trust Assets by the Beneficiaries to the Liquidation Trust in exchange for their beneficial interests in the Liquidation Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust for federal

income tax purposes.

# ARTICLE III
## ADMINISTRATION OF THE TRUST

3.1  <u>Rights, Powers and Privileges</u>.  The Liquidating Trustee shall have the rights, powers and privileges expressly provided to the Liquidating Trustee in this Agreement and under the Plan.  The Liquidating Trustee shall hold legal title to the Liquidating Trust Assets.  With respect to the Liquidating Trust Assets, the Liquidating Trustee shall be deemed to be the Estate's representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth herein, including without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and the right to seek testimony and production of documents pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.

3.2  <u>Liquidating Trustee Powers</u>.  Without limiting the foregoing, the Liquidating Trustee shall have the power to take the actions set forth in the Plan and in the sub-sections below and any powers reasonably incidental thereto, which the Liquidating Trustee, in his reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Liquidation Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

A.  Hold legal title to any and all rights of the Settlor and the Beneficiaries in or arising from the Liquidation Trust Assets;

B.  Engage and compensate employees and professionals assisting the Liquidating Trustee with respect to his responsibilities, including, but not limited to, any Professionals employed by the Liquidating Trustee, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) for federal income tax purposes;

C.  Liquidate any remaining assets, and provide for the Distributions in accordance with the provisions of the Plan;

D.  Manage the continued liquidation of the Liquidation Trust Assets;

E.  Stand in the shoes of the Debtor and assert or waive attorney client and other privileges;

F.  Interpret the Plan in the Liquidating Trustee's reasonable discretion;

G.  In reliance upon the Debtor's schedules and the official claims register (the "Register") maintained in the Debtor's Chapter 11 Case, maintain on the Liquidating Trustee's books and records a register evidencing the beneficial interest herein held by each Beneficiary;

H.  Protect and enforce the rights to the Liquidation Trust Assets (including prosecuting and/or settling any Causes of Action) vested in the Liquidating Trustee by this

5

Agreement by any method deemed appropriate including, without limitation, by judicial proceedings or otherwise;

I.     Make all distributions to the Beneficiaries provided for in, or contemplated by, the Plan and this Agreement;

J.     Open and maintain bank accounts on behalf of or in the name of the Liquidation Trust;

K.     To file tax returns of the Liquidating Trust as a grantor trust for the Beneficiaries pursuant to Treasury Regulation Section 1.671-4(a) and as otherwise provided in this Trust Agreement;

L.     To request prompt audit of tax filings pursuant to Bankruptcy Code Section 505(b);

M.     Send annually to each Beneficiary a separate statement stating the Beneficiary's share of income, gain, loss, deduction or credit, and instruct all such Beneficiaries to report such items on their federal tax returns as provided in Article 8.3;

N.     Establish such reserves for taxes, assessments and other expenses of administration of the Liquidation Trust as may be necessary and appropriate for the proper operation of matters incident to the Liquidation Trust;

O.     Pay all expenses and make all other payments relating to the Liquidation Trust Assets;

P.     Retain and pay third party professionals pursuant to this Agreement and the Plan;

Q.     Carry insurance coverage or obtain a bond in such amounts as the Liquidating Trustee deems advisable as an expense of the Liquidation Trust, including without limitation any insurance or bonding specifically identified in the Plan;

R.     In accordance with the Plan, be vested with and perform all rights and duties of the Liquidating Trustee;

S.     All powers provided under the Plan, including the exclusive right to pursue and settle Causes of Action and object to and settle objections to Claims;

T.     Invest any moneys held as part of the Liquidation Trust Assets in accordance with this Agreement and the Plan; and

U.     Establish, in his discretion, appropriate reserves for Post-Effective Date Expenses, Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Non-Tax Priority Claims, Disputed Secured Claims, Disputed General Unsecured Claims, and undeliverable

Distributions, and invest such reserves as provided in the Plan.

3.3     Limitation of Liquidating Trustee's Authority.

A.     No Trade or Business. The Liquidating Trustee shall not, and shall not be authorized to, engage in any trade or business with respect to the Liquidation Trust Assets or any proceeds therefrom except to the extent reasonably necessary or appropriate to, and consistent with, the liquidating purpose of the Liquidating Trust and the Liquidating Trustee shall take such actions consistent with the prompt orderly liquidation of the Liquidation Trust Assets as are required by applicable law and consistent with the treatment of the Liquidating Trust as a Liquidating Trust under Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 (or any subsequent Revenue Procedures that may be issued), and such actions permitted herein.

B.     Investment and Safekeeping of the Liquidation Trust Assets. All moneys and other assets received by the Liquidating Trustee shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Beneficiaries, but need not be segregated from other Liquidation Trust Assets, unless and to the extent required by law or permitted by the Plan. The Liquidating Trustee shall be under no liability for interest or producing income on any moneys received by it herein and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Liquidating Trustee. The Liquidating Trustee shall deposit or invest the Cash held in the Liquidation Trust in accordance with the terms of the Plan (collectively, the "Permitted Investments"); provided, however, that the scope of the Permitted Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulation § 301.7701-4(d) may be permitted to invest in, pursuant to the Treasury Regulations and Rev. Proc. 94-45, 1994-28 C.B. 124, or any modification in IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise. Investments of any moneys held by the Liquidating Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; provided, however, that the right and power of the Liquidating Trustee to invest moneys held by the Liquidating Trustee, or any income earned by the Liquidation Trust, shall be limited to the right and power to invest such moneys, pending periodic distributions in accordance with Article IV hereof and the Plan, without application to, or order from, the Bankruptcy Court or other judicial body.

C.     Limiting Transfers. The Liquidating Trustee shall not take, or cause the Liquidating Trust to take, any action that would cause the interests in the Liquidating Trust to be considered readily tradable on a secondary market (or a substantial equivalent thereof) within the meaning of Section 7704(b)(2) of the IRC, and Treasury Regulations § 1.7704-1(c), and the Liquidating Trustee shall not permit any transfer of an interest in the Liquidating Trust if it would cause the Liquidating Trust (were it to be classified as a partnership rather than a grantor trust) to be treated as a "publicly traded partnership" as defined in IRC § 7704.

3.4     Agents and Professionals. Without further notice or order of the Bankruptcy Court, the Liquidating Trustee may, but shall not be required to, consult with and employ attorneys, accountants, appraisers, or other parties deemed by the Liquidating Trustee to have qualifications

necessary to assist in the proper administration of the Liquidation Trust, including professionals previously retained by the Chapter 11 Trustee or any creditors, in accordance with the terms and conditions of the Plan. Without further notice or order of the Bankruptcy Court, the Liquidating Trustee may pay the reasonable salaries, fees and expenses of such persons out of the Liquidation Trust Assets in the ordinary course of business and in accordance with the terms and conditions of the Plan, including Article 5.05(d) of the Plan.

3.5     <u>Status Updates</u>. The Liquidating Trustee shall use his best good faith efforts to provide a status report on a bi-yearly basis, or at such other interval as may be appropriate, via a filing with the Bankruptcy Court. Such status report shall provide updates regarding the current status of (i) the litigation and/or settlement of the Causes of Action, (ii) the Claims resolution process, including the allowance of, objection to and litigation and/or settlement of any and all Claims, (iii) the proposed distributions on Allowed Claims, (iv) the creation of proposed Plan Reserve Accounts, and (v) the then current financial status of the Liquidation Trust.

3.6     <u>No Bond Required</u>.  The Liquidating Trustee (including any successor Trustee) shall not be required to give any bond, surety or other security in any jurisdiction for the performance of any of his duties.

3.7     <u>Compliance with Tax Laws</u>.  The Liquidating Trustee shall comply with all tax laws and shall act in accordance with Article VIII regarding income tax treatment, tax returns and payments, tax withholding and reporting, liability for taxes, valuation of Liquidation Trust Assets and Section 1146(a) exemption, and any other tax matters addressed in this Agreement or in the Plan.

## <u>ARTICLE IV</u><br><u>DISTRIBUTIONS FROM THE TRUST</u>

4.1     <u>Timing of Distributions</u>.  Distributions to the Beneficiaries will be made from the Liquidation Trust in accordance with the terms of the Plan, subject to Available Cash (as defined in the Plan). If at any point, the Liquidating Trustee determines, in good faith, that further disbursements of the Liquidation Trust Assets are unwarranted and/or upon the liquidation of all the General Assets of the Liquidation Trust and completion of the prosecution of the Causes of Action, the Liquidating Trustee shall provide notice of the Liquidating Trustee's intention to make a final distribution to the Beneficiaries. Absent the filing of a timely objection thereto, the Liquidating Trustee shall thereafter be authorized to and shall make the final disbursement of the Liquidation Trust Assets to the Beneficiaries in accordance with their distribution rights under the Plan and this Agreement. Ninety (90) days after the final distribution, the Liquidating Trustee shall stop payment on any check(s) remaining unpaid and such unclaimed funds shall thereafter be used as provided in Article 4.4 of this Agreement.

4.2     <u>Pro Rata Share of Distributions</u>. Each Beneficiary shall receive its pro rata share of any and all Distributions in accordance with the Plan, except that the Liquidating Trustee may withhold from amounts distributable to any Beneficiary any and all amounts, determined in the Liquidating Trustee's reasonable discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

4.3     Undeliverable Distributions. If a Distribution is returned to the Liquidating Trustee as an undeliverable Distribution or is deemed to be an undeliverable Distribution under the Plan, the Liquidating Trustee will make no further Distribution to the Person holding the Claim on which the Distribution is being made unless and until the Liquidating Trustee is timely notified in writing of that Person's current address and provided with that Person's required tax identification number or completed form W-9 and/or W-8. Failure to provide such timely notice and the aforementioned tax identification information may result in the forfeiture of a Person's right to receive the undeliverable distribution, as more particularly set forth in Article 5.08(j) of the Plan.

4.4     Unclaimed Property. Distributions that are not claimed by the expiration of ninety (90) days from the date the Distribution is made, including any check that remains unpaid, will be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Liquidating Trust and the Claims with respect to which those Distributions are made shall be automatically cancelled. After the expiration of that ninety (90) day period, the Liquidating Trustee shall stop payment on any check(s) remaining unpaid and the claim of any Person to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim. All funds or other property that vests or revests in the Liquidating Trust pursuant to this Article shall thereafter be used to satisfy any outstanding expenses of administering the Liquidating Trust and the remaining balance, if any, shall thereafter be paid to a charity to be selected by the Liquidating Trustee.

4.5     No Distributions With Respect to Disputed Claims. Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim, provided, however, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to receive a Distribution on account of that portion of the Disputed Claim, if any, which the Liquidating Trustee does not dispute, which Distribution shall be made by the Liquidating Trustee at the same time and in the same manner that such Liquidating Trustee makes Distributions to Holders of similar Allowed Claims pursuant to the Plan. The Liquidating Trustee may, in his discretion, withhold Distributions otherwise due and payable by the Liquidating Trustee hereunder to any applicable Holder of a Claim until the Claims Objection Deadline, to enable a timely objection thereto to be filed. A Claim of any Person from which property may be recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that may be avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be a Disallowed Claim unless and until the Person or transferee has paid the amount or turned over the property for which such Person or transferee is liable. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of the Plan and this Agreement.

4.6     Fractional Dollars. Any other provision of this Agreement notwithstanding, the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Agreement would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

4.7     Manner of Cash Payments. Cash payments to domestic entities holding Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Liquidating Trustee or, at the Liquidating Trustee's option, by wire transfer from a domestic bank. Cash payments to foreign entities holding Allowed Claims may be paid, at the Liquidating Trustee's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

4.8     Timing of Distributions. Upon liquidation of all the General Assets of the Liquidating Trust and completion of the prosecution of the Causes of Action, the Liquidation Trustee shall make a final distribution of all the General Assets of the Liquidation Trust. Except where the Plan or Liquidation Trust provides otherwise and to the extent of Available Cash, the Liquidating Trustee may, but shall not be required to, make such interim Distributions as he believes appropriate. The Liquidating Trustee shall make an initial Distribution, which shall be made as soon as is practical after the Effective Date, but no later than ninety (90) days after the Effective Date provided that funds are available for distribution notwithstanding any reserves otherwise required by the Plan and Liquidation Trust Agreement. Thereafter, Distributions shall be made every six (6) months subsequent to the initial Distribution date, or as soon thereafter as is reasonably practicable, unless the Liquidating Trustee determines, in his reasonable discretion, that such Distribution would be economically impracticable.

4.9     Setoff and Recoupment. Notwithstanding anything to the contrary in the Plan, the Liquidating Trustee may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim any claims that the Chapter 11 Trustee or the Debtor's Estate may have against the claimant or the Person holding the Allowed Claim. The Liquidating Trustee does not and shall not be deemed to waive or release any claim against those Persons by failing to effect such a setoff or recoupment, by the allowance of any claim against the Estate, or by making a Distribution on account of an Allowed Claim. In addition, the settlement or adjudication of any Avoidance Action shall not bar the Liquidating Trustee from filing a subsequent objection to the Claim. The Liquidating Trustee may assert all of the same rights and defenses, including all setoff rights and rights under Section 502(d) of the Bankruptcy Code, with respect to any Claim held by an Assignee of a Claim as he could against the original Holder of the Claim.

4.10    Interest on Claims. Unless otherwise specifically provided for in the Plan, the Confirmation Order, any order of the Court, or required by applicable bankruptcy law, Post-Petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

4.11    Withholding and Reporting Requirements. In connection with the Plan and all Distributions under this Plan, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment and reporting requirements. All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder. All Holders shall be

required to provide any information necessary to effect information reporting and withholding of such taxes, including but not limited to taxpayer identification numbers. Notwithstanding any other provision of this Agreement, each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Agreement and the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution. The Liquidating Trustee will require any Creditor to provide a completed form W-8 and/or W-9 IRS tax form or otherwise furnish to the Liquidating Trustee its tax identification number as assigned by the IRS and the Liquidating Trustee will condition any distribution to any Creditor upon receipt of such tax identification number. Failure to provide the aforementioned tax identification number will result in the Creditor's Claim being treated as an Undeliverable Distribution pursuant to Article 4.3 of this Agreement.

4.12    No *de minimus* distributions. Notwithstanding anything to the contrary in the Plan, no Cash payment of less than $100 will be made by the Liquidating Trustee to any Person holding an Allowed Claim. No consideration will be provided in lieu of the *de minimus* Distributions that are not made under this Article.

4.13    Priorities of Distribution. The Liquidating Trustee must pay the operating expenses of the Liquidation Trust before approving distributions to or for the benefit of the Beneficiaries.

4.14    Reserves.    Any Plan Reserves and/or Reserve Accounts may be created and administered as provided in the Plan.

## ARTICLE V
## BENEFICIARIES

5.1    Interest Beneficial Only. The ownership of a beneficial interest in the Liquidation Trust shall not entitle any Beneficiary or the Settlor to any title in or to the Liquidation Trust Assets or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein.

5.2    Identification of Beneficiaries. To determine the actual names, addresses and tax identification numbers of the Beneficiaries, the Liquidating Trustee shall be entitled to conclusively rely on the names, addresses and tax identification numbers in Schedules or, if a proof of claim has been filed, such proof of claim. If a Beneficiary has not filed a proof of claim or request for Administrative Expense Claim, or provided written notice indicating such information, the Liquidating Trustee shall be entitled to conclusively rely on the names, addresses and tax identification numbers reflected in the applicable Schedules. Each Beneficiary's right to distribution from the Liquidating Trust shall be that accorded to such Beneficiary under the Plan. Each distribution by the Liquidating Trustee to the Beneficiaries shall be made in accordance with the Plan and terms set forth herein. The Liquidating Trustee will require any Beneficiary to provide a completed form W-8, W9, and/or W-4 IRS tax form or otherwise furnish to the Liquidating Trustee its tax identification number as assigned by the IRS and the Liquidating Trustee will condition any distribution to any Beneficiary upon receipt of such tax identification number. Failure to provide the aforementioned tax identification number will result in the Beneficiary's

11

Claim being treated as an Undeliverable Distribution pursuant to Article 4.3 of this Agreement.

5.3     Ownership of Beneficial Interests Hereunder. Each Beneficiary shall own a beneficial interest herein equal in proportion to the pro rata share of such Beneficiary's Allowed Claim in accordance with the Plan.

5.4     Evidence of Beneficial Interest. Ownership of a beneficial interest in the Liquidation Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidating Trustee.

5.5     Exemption from Registration. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities, and (ii) if the rights arising under the Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under Section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

5.6     Notice of Transfer of Beneficial Interest. Any notice of a change of beneficial interest ownership shall be forwarded to the Liquidating Trustee by registered or certified mail, as set forth herein. The notice shall be executed by both the transferee and the transferor, and the signatures of the parties shall be acknowledged before a notary public.  The notice must clearly describe the interest to be transferred and must include all information required pursuant to Article 5.2 of this Agreement. The Liquidating Trustee may rely upon such signatures and acknowledgments as evidence of such transfer without the requirement of any further investigation.

## ARTICLE VI
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing With the Liquidating Trustee. In the absence of actual knowledge to the contrary, any person dealing with the Liquidation Trust or the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee or any of the Liquidating Trustee's agents to act in connection with the Liquidation Trust Assets. There is no obligation on any Person dealing with the Liquidating Trustee to inquire into the validity or expediency or propriety of any transaction by the Liquidating Trustee or any agent of the Liquidating Trustee.

6.2     Limitation of Liquidating Trustee's Liability. Anything herein to the contrary notwithstanding, in exercising the rights granted herein, the Liquidating Trustee shall exercise the Liquidating Trustee's best judgment, to the end that the affairs of the Liquidation Trust shall be properly managed and the interests of all the Beneficiaries and the Settlor are safeguarded; but the Liquidating Trustee shall not incur any responsibility or liability by reason of any error of law or of any matter or thing done or suffered or omitted to be done under this Agreement, except for fraud, gross negligence or willful misconduct. The Liquidating Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice,

request, consent, order or other paper or document reasonably believed by the Liquidating Trustee to be genuine and to have been signed or presented by the proper party or parties. The Liquidating Trustee may consult with counsel, accountants and other professionals to be selected by the Liquidating Trustee, and shall not be liable for any action taken or omitted to be taken in accordance with the advice thereof, unless such action shall be found by a court of competent jurisdiction to have constituted fraud, gross negligence or willful misconduct. Notwithstanding anything to the contrary in this Agreement, the Plan, or the Confirmation Order, the Liquidating Trustee shall be treated as a trustee acting under title 11 solely for purposes of 31 U.S.C. § 3713 and the Liquidating Trustee shall have no individual liability to the Government thereunder.

6.3     <u>Indemnification</u>. From and after the Effective Date, the Chapter 11 Trustee, the Liquidating Trustee, and their respective firms, attorneys, companies, shareholders, members, partners, officers, directors, employees, professionals, representatives, successors, and assigns (collectively, the "Indemnified Parties" and each an "Indemnified Party") shall be indemnified by the Liquidation Trust, to the fullest extent permissible by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees and defense costs and other assertions of liability arising out of any such Indemnified Parties' good faith exercise of what such Indemnified Party reasonably understands to be its powers or the discharge of what such Indemnified Party reasonably understands to be its duties conferred by the Plan, this Agreement, or by any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order of a court of competent jurisdiction to be due to their own respective fraud, gross negligence or intentional misconduct), including without limitation, acts or omissions concerning pursuing, not pursuing or settling the Causes of Action, sales of assets, or objections to Claims, on and after the Effective Date. The foregoing indemnification shall also extend to matters directly or indirectly, in connection with, arising out of, based on, or in any way related to (i) the Plan; (ii) the services to be rendered pursuant to the Plan; (iii) this Agreement or any other document or information, whether verbal or written, referred to herein or supplied to or by the Liquidating Trustee; and/or (iv) the pre-Effective Date acts and omissions of the Chapter 11 Trustee and/or his respective firms, companies, shareholders, members, partners, officers, directors, employees, professionals, representatives, successors and assigns. The Liquidating Trustee shall, on demand, advance or pay promptly out of Available Cash or a Plan Reserve Account set up specifically for this purpose if such an account is established by the Liquidating Trustee, on behalf of each Indemnified Party, reasonable attorneys' fees and other expenses and disbursements which such Indemnified Party would be entitled to receive pursuant to the foregoing indemnification obligation; provided, however, that any Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance amounts if a court of competent jurisdiction ultimately determines that such Indemnified Party is not entitled to indemnification hereunder due to the fraud, gross negligence or intentional misconduct of such Indemnified Party. The Liquidating Trustee may in his discretion, obtain insurance to cover the indemnity obligations of the Liquidation Trust, the premiums, fees and other costs of which shall be paid from the Liquidation Trust Assets. The Liquidating Trustee shall not be personally liable for the payment of any Liquidation Trust expense or claim or other liability of the Liquidation Trust, and no person shall look to the Indemnified Parties personally for the payment of any such expense or liability. This indemnification shall survive the death, dissolution, resignation or removal, as may be applicable, of the Indemnified Parties, or the termination of the Liquidation

13

Trust, and shall inure to the benefit of the Indemnified Parties' heirs and assigns.

## ARTICLE VII
## SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE

7.1     <u>Liquidating Trustee</u>.  The Liquidating Trustee shall be Roger Schlossberg.

7.2     <u>Term of Service</u>. The Liquidating Trustee shall serve until (a) the completion of all the Liquidating Trustee's duties, responsibilities and obligations under this Agreement and the Plan; (b) termination of the Liquidation Trust in <u>accordance</u> with the terms of this Agreement and the Plan; or (c) the Liquidating Trustee's resignation, death, incapacity or removal.

7.3     <u>Removal of a Liquidating Trustee</u>. The Liquidating Trustee may be removed only for cause in accordance with Bankruptcy Code Section 324(a), including, but not limited to, breach of his duties under the Plan, and only by order of the Bankruptcy Court.

7.4     <u>Resignation of Liquidating Trustee</u>. The Liquidating Trustee may resign at any time in accordance with the terms and conditions of the Plan. In the event of a resignation, the resigning Liquidating Trustee shall render to the Beneficiaries a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Liquidating Trustee. The resignation shall be effective on the later of (i) the date specified in the notice delivered to the U.S. Trustee; (ii) the date that is thirty days (30) after the date such notice is delivered; or (iii) the date the accounting described in the preceding sentence is transmitted to the Beneficiaries by first class mail, postage pre-paid.

7.5     <u>Appointment of Successor Liquidating Trustee</u>. In the event that the Liquidating Trustee resigns (with 30 days notice to the U.S. Trustee), is removed, or otherwise ceases to serve as Liquidating Trustee, the U.S. Trustee shall select a successor Liquidating Trustee within ten (10) Business Days of such resignation, removal or other cessation of service by the incumbent Liquidating Trustee, subject to Bankruptcy Court approval. Any successor Liquidating Trustee so appointed shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement shall be binding upon and shall inure to the benefit of the successor Liquidating Trustee and all of his heirs and legal and personal representatives, successors or assigns.

7.6     <u>Powers and Duties of Successor Liquidating Trustee</u>. A successor Liquidating Trustee shall have all of the rights, privileges, powers, and duties of his predecessor under this Agreement and the Plan.

7.7     <u>Liquidation Trust Continuance</u>. The resignation, death, incapacitation or removal of the Liquidating Trustee shall not terminate the Liquidation Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Liquidating Trustee. In the event that a successor Liquidating Trustee is not appointed when required under this Agreement and the Plan, the U.S. Trustee shall apply to the Bankruptcy Court for appointment of a successor Liquidating Trustee.

7.8    Compensation and Costs of Administration. The Liquidating Trustee shall be compensated in accordance with Article 5.05(e) of the Plan. All costs, expenses, and obligations incurred by the Liquidating Trustee (or professionals who may be employed by the Liquidating Trustee in administering the Liquidation Trust or the Plan, in carrying out their other responsibilities under this Agreement or the Plan, or in any manner connected, incidental, or related thereto) shall be paid by the Liquidating Trustee from the Liquidation Trust Assets prior to any distribution to the Beneficiaries and in accordance with and pursuant to the procedures set forth in the Plan.

# ARTICLE VIII
## TAXES AND MAINTENANCE OF RECORDS

8.1.    Income Tax Treatment. For the United States federal income tax purposes and any comparable provision of state or local law, the Chapter 11 Trustee, the Liquidating Trust, the Liquidating Trustee and the Beneficiaries will treat the Liquidating Trust as follows:

A.    Liquidating Trust. Except to the extent otherwise provided in Article 8.1(B) and 8.1(C) of this Agreement, the Liquidating Trust will be treated as a grantor trust that is a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684. The transfer of the Liquidating Trust Assets (to the extent not distributed to the Holders of Allowed Claims as of the Effective Date) to the respective Liquidating Trust as provided in this Agreement will be treated as a transfer of the Liquidating Trust Assets from the Debtor's Estate to the Holders of Allowed Claims in the amounts to which such holders are entitled under the Plan (subject to any liabilities of the Debtor's Estate or the respective Liquidating Trust payable from the proceeds of such assets), followed by such holders' transfer of such Liquidating Trust Assets (subject to such liabilities) to the Liquidating Trust in exchange for their respective beneficial interests in the Liquidating Trust. Thus, each Holder of such an Allowed Claim on the Effective Date will be treated as transferring its Claim against the Estate in exchange for the Holder's Pro Rata share of the applicable Liquidating Trust Assets (subject to any applicable liabilities), followed by the Holder's transfer of such assets (subject to any applicable liabilities) to the Liquidating Trust. For purposes of the preceding sentence, the applicable Liquidating Trust Assets are the Liquidating Trust Assets (or the proceeds thereof) from which a Holder of an Allowed Claim is entitled to a Distribution under the Plan. Accordingly, the holders of such allowed Claims will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the Liquidating Trust Assets (subject to such liabilities) and any income or earnings thereon as of the date of the transfer of such Liquidating Trust Assets to the Liquidating Trust. The Trustee will allocate to each holder its share of each item of income, gain, deduction, loss and credit recognized by the Liquidating Trust (including interest or dividend income earned on bank accounts and other investments) using any reasonable allocation method.

B.    Disputed Claim Reserve. To the extent that the Liquidating Trustee establishes any Disputed Claim Reserve, such Reserve will be treated as one or more "disputed ownership funds" within the meaning of Treasury Regulation Section 1.468B-9(b)(1), as determined by the Liquidating Trustee in his reasonable discretion. Any income or earnings on the Liquidating Trust Assets allocated to such a Disputed Claim Reserve will be taxed accordingly. The Liquidating Trustee will act as the "administrator" of such disputed ownership funds within

the meaning of Treasury Regulations Section 1.468B-9(b)(2).

        C.    <u>Effective Date Payments</u>.  Distributions made as of the Effective Date to Holders of Allowed Claims will be treated as Distributions directly from the Chapter 11 Trustee to the Holder of such Allowed Claims on the Effective Date.  Such Holders will include in their taxable incomes any interest earned and paid on such Distributions from the Effective Date to the date on which the actual Distribution is made.

    8.2    <u>Tax Returns and Payments.</u>

        A.    <u>General</u>.  The Liquidating Trustee will be responsible for: (a) the preparation and timely filing of all required federal, state, local and foreign tax returns for the Liquidating Trust and the Debtor; (b) the timely payment of any taxes shown on such returns as owing by the Liquidating Trust or the Estate (as applicable) from the applicable Liquidating Trust Assets; and (c) the preparation and timely Distribution to the Beneficiaries of any necessary federal, state, local or foreign information returns.  The Liquidating Trustee will retain all tax returns and supporting documentation until the expiration of the applicable statute of limitations. The Liquidating Trustee may request an expedited determination of any tax matter of the Debtor, the Estate, the Liquidating Trust, or any Disputed Claim Reserve under Section 505 of the Bankruptcy Code.

        B.    <u>Liquidating Trust</u>.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations),the Liquidating <u>Trustee</u> shall file tax returns for the Liquidation Trust as a grantor trust pursuant to Revenue Procedure 94-95, 1994-2 C.B. 684 and Treasury Regulation Section 1.671-4(a), the Trustee will file tax returns pursuant to Treasury Regulation Section 1.671-4(a) on the basis that the Liquidating Trust (to the extent described in Section 8.1(a)) is a grantor trust that is a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and related regulations.  Nothing in this Agreement, the Plan, or the Confirmation Order shall require the Liquidating Trustee to request a private letter ruling under the IRC or applicable Treasury Regulations.

        C.    <u>Allocations of Liquidating Trust Taxable Income</u>. All of the Liquidating Trust's income is subject to tax on a current basis, regardless of whether the Liquidating Trustee has established a reserve for Disputed Claims. Allocations of Liquidating Trust taxable income among Beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein) if, immediately prior to such deemed distribution, the Liquidating Trustee had distributed all of its other assets (valued for this purpose at their tax book value) to Beneficiaries (treating to the extent determined by the Liquidating Trustee in his sole discretion, any holder of a Disputed Claim against the Estate, for this purpose, as a current Beneficiary entitled to distributions), taking into account all prior and concurrent distributions from the Liquidating Trust (including all distributions held in reserve pending the resolution of Disputed Claims). Similarly, taxable losses of the Liquidating Trust will be allocated among Beneficiaries by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidation Trust Assets. The tax book value of the Liquidation Trust

Assets on the Effective Date for this purpose shall be as set forth in the liquidation analysis attached to the Disclosure Statement, or, if acquired later, the fair market value of such assets on the date such assets were acquired by the Liquidating Trust, adjusted in the case in accordance with tax accounting principles prescribed by the IRC, the regulations promulgated thereunder and other applicable administrative and judicial authorities and pronouncements. As soon as reasonably practicable after the close of each calendar year, the Liquidating Trustee shall send the Beneficiaries a statement setting forth the holder's share of items of income, gain, loss, deduction or credit and instructing all such holders to report such items on their federal income tax returns. Pursuant to such provisions, for federal income tax purposes the Liquidating Trustee will allocate to the Beneficiaries their applicable shares of any income, gain, deduction, loss and credit of such grantor trust, and such Beneficiaries will be subject to tax thereon on a current basis.

        D.     <u>Disputed Claim Reserve</u>.  The Liquidating Trustee will file all applicable tax and other returns and statements for any Disputed Claim Reserve that is a "disputed ownership fund" in accordance with the requirements of Treasury Regulation Section 1.468B-9 and any other applicable law.  In addition, the Liquidating Trustee will pay from the applicable Liquidating Trust Assets on a current basis any taxes owed on any net income or gain of such Disputed Claim Reserve.

        8.3    <u>Tax Withholding and Reporting; Liability for Taxes</u>.  Pursuant to the Plan and Confirmation Order, to the extent applicable, the Liquidating Trustee in his capacity as a disbursing agent with respect to the Plan or any third party disbursing agent acting at the direction of the Liquidating Trustee (each a "Disbursing Agent") will comply with all applicable tax withholding and reporting requirements imposed on it or on the Liquidating Trust by any governmental unit, and all Distributions pursuant to the plan will be subject to applicable withholding and reporting requirements.  Each Disbursing Agent will be authorized to take any actions that may be necessary or appropriate to comply with such tax withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanism the Disbursing Agent believes is reasonable and appropriate, including requiring Claim holders to submit appropriate tax and withholding certifications as required by the Disbursing Agent, such Claim holder's Distribution may, in the Disbursing Agent's reasonable discretion, be deemed undeliverable and be subject to the provisions of the Plan and this Agreement with respect to undeliverable Distributions.  Each Person or Entity receiving (or deemed to receive) a Distribution pursuant to the plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of the Distribution, including income, withholding and other tax obligations.

        8.4    <u>Valuation of Liquidating Trust Assets</u>.  As soon as reasonably practicable after the Effective Date, (a) the Liquidating Trustee will determine the fair market value of the Liquidating Trust Assets (other than Cash) as of the Effective Date, based on a good faith determination and the advice of any professional retained by the Liquidating Trustee for that purpose and (b) the Trustee shall establish appropriate means to apprise the Beneficiaries of the grantor trust portion of the Liquidating Trust of the valuation of such Holder's interest in the Liquidating Trust.  The Liquidating Trustee shall have no other or further obligation to notify Beneficiaries of the estimated value of the Liquidation Trust Assets.  The Chapter 11 Trustee, the Liquidating Trust,

the Liquidating Trustee, and the Beneficiaries will use such values consistently for all federal income tax purposes.

8.5     Section 1146(a) Exemption.  The parties to this Agreement intend that, as provided in the Plan, pursuant to Section 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp tax, real estate transfer tax, mortgage recording tax, filing fee, sales or use tax or similar tax: (a) any dissolution or liquidation transaction; (b) the execution and implementation of this Agreement, including the creation of the Liquidating Trust, any transfers of the Liquidating Trust Assets or other assets (if any) to, by, or from the Liquidating Trust, including the sale, liquidation, transfer, foreclosure, abandonment or other disposition of the Liquidating Trust Assets; or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the plan, including any agreements of liquidation or dissolution, bills of sale or assignments, applications, certificates or statements executed or filed in connection with any of the foregoing or pursuant to the Plan.

8.6     Books and Records.  The Liquidating Trustee shall maintain good and sufficient books and records of account relating to the Available Cash and General Assets and any other assets of the Liquidation Trust, the management thereof, all post-Effective Date transactions undertaken by the Liquidating Trustee, all expenses incurred by or on behalf of the Liquidating Trustee after the Effective Date, and all Distributions contemplated or effectuated under the Plan.

## ARTICLE IX
## DURATION OF TRUST

9.1     Duration.  The Liquidation Trust shall become effective upon the Effective Date of the Plan. Thereupon, the Liquidation Trust and its provisions herein shall remain and continue in full force and effect until the Liquidation Trust is terminated, subject to Article 9.3 below.

9.2     Termination Upon Distribution of All Liquidation Trust Assets. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Liquidation Trust, and the distribution of all remaining Liquidation Trust Assets in accordance with the provisions of the Plan, the Confirmation Order and this Agreement, the Liquidation Trust shall terminate and the Liquidating Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3     Termination After Five Years. If the Liquidation Trust has not been previously terminated pursuant to Article 9.2 hereof, on the fifth (5th) anniversary of the Effective Date, the Liquidating Trustee shall distribute all of the Liquidation Trust Assets to the Beneficiaries in accordance with the Plan and immediately thereafter the Liquidation Trust shall terminate and the Liquidating Trustee shall have no further responsibility in connection therewith. The term of the liquidation trust may be extended, provided that any extension shall be for a finite period of time and must be approved by the Bankruptcy Court within six (6) months prior to the beginning of the extended term.

# ARTICLE X
## MISCELLANEOUS

10.1    Limitation on Transferability. It is understood and agreed that the beneficial interests herein shall be assignable during the term of this Agreement. Any assignment of a beneficial interest shall not be effective until written notification, proof of the assignment, and the assignee's completed tax form W-8 and/or W-9 or the assignee's tax identification number as assigned by the IRS is submitted to the Liquidating Trustee. The Liquidating Trustee may continue to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper written notification, tax identification information for the assignee, and proof of assignment. The Liquidating Trustee may rely upon such proof without the requirement of any further investigation.

10.2    Notices. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by the Liquidating Trustee. Any notice or other communication which may be or is required to be given, served, or sent to the Liquidating Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

> If to the Liquidation Trust:
>
> Roger Schlossberg, Chapter 11 Trustee for Vincent L. Abell
> Schlossberg Mastro & Scanlan
> P.O. Box 2067
> Hagerstown, Maryland 21742-2067
> rschlossberg@schlosslaw.com

or to such other address as may from time to time be provided in written notice by the Liquidating Trustee.

10.3    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland.

10.4    Successors and Assigns. This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

10.5    Particular Words. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

10.6    No Execution. All funds in the Liquidation Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Liquidation Trust Assets or the Liquidating Trustee in any manner or compel payment from the Liquidation Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan and this

Agreement.

10.7    <u>Intention of Parties to Establish Grantor Trust</u>. This Agreement is intended to create a grantor trust for United States federal income tax purposes and for state income tax purposes, if applicable, and to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

10.8    <u>Amendment</u>.  This Agreement may be amended only by order of the Bankruptcy Court.

10.9    <u>Severability</u>. If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.10    <u>Counterparts</u>. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.11    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain such jurisdiction as is legally permissible as set forth in this Agreement, the Plan, and in the Confirmation Order, including, but not limited to, jurisdiction to hear and determine disputes arising in connection with the interpretation, implementation, administration or enforcement of this Agreement as well as to hear matters regarding Section 505 of the Bankruptcy Code.

IN WITNESS WHEREOF, the parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year written above.

**THE BANKRUPTCY ESTATE OF**
**VINCENT L. ABELL**

By:_____
      Name: Roger Schlossberg
      Title:  Chapter 11 Trustee


_____
Roger Schlossberg, Liquidating Trustee

# EXHIBIT 2

<u>Exhibit 1</u>

Liquidation Trust Agreement

# LIQUIDATION TRUST AGREEMENT
## WITH RESPECT TO THE ESTATE OF VINCENT L. ABELL

This Liquidation Trust Agreement With Respect to the Estate of Vincent L. Abell (the "Agreement") dated as of_____, **2020** is by and between Roger Schlossberg, as Chapter 11 Trustee (the "Chapter 11 Trustee" or the "Settlor") for Vincent L. Abell (the "Debtor") and Roger Schlossberg as the Liquidating Trustee under the terms of the Confirmed Chapter 11 Trustee's Plan of Liquidation of the Estate of Vincent L. Abell (the "Plan") proposed by the Chapter 11 Trustee in the chapter 11 bankruptcy case pending in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") with a caption of *In re Vincent L. Abell*, Case No. 13-13847-TJC, to implement the Liquidation Trust for the benefit of the Beneficiaries (as defined herein) under the terms of the Plan, as confirmed by the Bankruptcy Court by Order entered on _____, as amended, modified, or supplemented by order of the Bankruptcy Court.

## RECITALS

WHEREAS, the Liquidation Trust is created pursuant to, and to effectuate, the Plan;

WHEREAS, the Liquidation Trust is created on behalf, and for the sole benefit, of the Beneficiaries pursuant to the Plan;

WHEREAS, the Liquidation Trust is established for the primary purposes of collecting, holding, administering, distributing and liquidating the Liquidation Trust Assets for the benefit of the Beneficiaries in accordance with the terms of this Agreement and the Plan and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Liquidation Trust;

WHEREAS, under the terms of the Plan and the Confirmation Order, the Debtor's Estate shall be deemed to have irrevocably granted, transferred, conveyed, and delivered to the Liquidating Trust, on behalf of, and for the benefit of, the Beneficiaries control of, and all the rights, title and interests in and to, the Liquidating Trust Assets with no reversionary interest therein in favor of the Debtor;

WHEREAS, the parties to this Agreement intend to create a liquidating trust in accordance with Treasury Regulation § 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684, which shall be treated as a grantor trust for federal income tax purposes within the meaning of Sections 671-677 of the Internal Revenue Code of 1986 (as amended, the "IRC"), except to the extent otherwise provided in this Agreement.

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Settlor and the Liquidating Trustee agree as follows:

# ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

1.1     Definitions.

1.1.1     "Agreement" or "Liquidating Trust Agreement" shall mean this Liquidation Trust Agreement with Respect to the Estate of Vincent L. Abell.

1.1.2     "Beneficiaries" shall collectively mean the Holders of Allowed Claims under the Plan, or any successors to such Holders' Allowed Claims.

1.1.3     "Chapter 11 Trustee" means Roger Schlossberg, the chapter 11 trustee for the Debtor appointed by the Bankruptcy Court pursuant to Section 1104 of the Bankruptcy Code and in his capacity under Section 323 of the Bankruptcy Code.

1.1.4     "Liquidation Trust" shall mean the Liquidation Trust established pursuant to the terms of this Agreement and the Plan.

1.1.5     "Liquidation Trust Assets" shall have the meaning set forth in Article 5.02 of the Plan.

1.1.6     "Liquidating Trustee" shall mean Roger Schlossberg, as Liquidating Trustee under the Plan, and any successor "Liquidating Trustee," as that term is defined under the Plan and this Agreement, duly appointed under the terms of the Plan and this Agreement.  The Liquidating Trustee shall be appointed as provided in the Plan.

1.1.7     "Settlor" shall mean the Chapter 11 Trustee for the Debtor.

1.2     Use of Plan Definitions.  All terms which are used in this Agreement and not defined herein shall have the same meaning set forth in the Plan.

1.3     Interpretation.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The rules of construction in Bankruptcy Code Section 102 apply to this Agreement. Except as otherwise provided in this Agreement or the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under this Agreement.  A term that is used in this Agreement and that is not defined in this Agreement or the Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules. The definition given to any term or provision in this Agreement supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules, or the Plan. Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms. Any reference to an existing document means the document as it has been, or may be, amended or supplemented. Unless otherwise indicated, the phrase "under the Agreement" and similar words or phrases refer to this Agreement in its entirety rather than to only a portion of the Agreement.  Unless otherwise

specified, all references to Articles or Exhibits are references to this Agreement's Articles or Exhibits. Article captions and headings are used only as convenient references and do not affect this Agreement's meaning. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of the State of Maryland shall govern the construction and implementation of the Agreement and any agreements, documents, and instruments executed in connection with the Agreement, without giving effect to the principles of conflicts of law thereof. Any Exhibits are incorporated into and are a part of this Agreement as if set forth in full herein.

1.4     Use of Certain Terminology. Where context so requires, the use of the word "Debtor" shall be construed as "Chapter 11 Trustee" in his capacity as representative of the Estate under Section 323 of the Bankruptcy Code. Where context so requires, the use of the word "Chapter 11 Trustee" shall be construed as "Debtor" as defined in the Plan.

## ARTICLE II
## DECLARATION OF TRUST

2.1     Purpose of Liquidation Trust. The Settlor and the Liquidating Trustee, pursuant to the Plan and in accordance with title 11 of the United States Code (the "Bankruptcy Code"), hereby create the Liquidation Trust for the primary purposes of monetizing, collecting, holding, administering, distributing and liquidating the Liquidation Trust Assets and/or Property for the benefit of the Beneficiaries; resolving all Disputed Claims; paying all Liquidating Trust Expenses; making all Distributions to holders of Allowed Claims from the Liquidating Trust Assets as provided for in the Plan and this Agreement; and otherwise implementing the Plan and finally administering the Estate, all pursuant to and in accordance with the Plan and this Agreement. The Liquidating Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Liquidation Trust. The activities of the Liquidation Trust shall be limited to those activities set forth in this Agreement and as otherwise contemplated by the Plan. The Liquidating Trustee will make continuing efforts to dispose of the Liquidating Trust Assets, make timely distributions, and not unduly prolong the duration of the trust. It is intended that the Liquidating Trust be treated, for United States federal income tax purposes, as "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684, except to the extent otherwise provided in this Agreement.

2.2     Transfer of Liquidation Trust Assets.

A.     Grant of Liquidation Trust Assets. The Settlor is deemed to irrevocably grant, release, assign, transfer and deliver, on behalf of the Beneficiaries, the Liquidation Trust Assets to the Liquidating Trustee as of the Effective Date in trust for the benefit of the Beneficiaries to be applied as specified in this Agreement and the Plan, with no revisionary interest whatsoever therein of the Debtor. The Settlor shall from time to time as and when reasonably requested by the Liquidating Trustee execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Settlor shall take or cause to be taken such further action as the Liquidating Trustee may reasonably deem necessary or appropriate, to vest or perfect in or confirm to the Liquidating Trustee title to

and possession of the Liquidation Trust Assets.

B.    Rights In Liquidation Trust Assets.  Pursuant to the Plan, all rights, title and interests in the Property of the Debtor's Estate, the Liquidation Trust Assets and the Chapter 11 Trustee are automatically and irrevocably vested in the Liquidation Trust on the Effective Date, free and clear of all liens, claims, encumbrances and other interests, and such transfer is on behalf of the Beneficiaries (whether such Beneficiaries' Claims are Allowed Claims on or after the Effective Date of the Plan) to establish the Liquidation Trust, without wavier of the Chapter 11 Trustee's evidentiary privileges, including the attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) associated with the Liquidating Trust Assets, the Claims of Beneficiaries and Disputed Claims, and all of the books and records relating to the foregoing. To the extent that any law or regulation prohibits the transfer of ownership of any of the Liquidation Trust Assets to the Liquidating Trustee and such law is not superseded by the Bankruptcy Code, the Liquidating Trustee's interest shall be a lien upon and security interest in such Liquidation Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Article 2.1 and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages. All of the Chapter 11 Trustee's and the Estate's rights, title and interests in any attorney-client privilege and work product privilege that attaches to communications or work product that are relevant to any Causes of Action are hereby vested and preserved in the Liquidation Trust and exercisable by the Liquidating Trustee. By executing this Agreement, the Liquidating Trustee hereby accepts all of such property as Liquidation Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

C.    Vesting of Causes of Action.  Subject to the provisions of this Agreement, from and after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have the exclusive right to investigate, institute, prosecute, abandon, settle, or compromise any Causes of Action, subject to the provisions of this Agreement and the Plan, and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed or to be filed in the Chapter 11 Case.

D.    Incorporation of the Plan and Confirmation Order.  The Plan and Confirmation Order are each hereby incorporated into this Agreement and made a part hereof by reference.  In the event of any inconsistency between any provision of this Agreement and any provision of the Plan or Confirmation Order, the provisions of this Agreement shall control.

E.    Treatment of Trust.  Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Chapter 11 Trustee, the Estate, the Beneficiaries, the Liquidating Trustee, and the Liquidation Trust shall treat the Liquidation Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 (or any subsequent Revenue Procedures that may be issued) and transfer of the Liquidation Trust Assets to the Liquidation Trust shall be treated as a transfer of the Liquidation Trust Assets by the Debtor's Estate to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Liquidation Trust Assets by the Beneficiaries to the Liquidation Trust in exchange for their beneficial interests in the Liquidation Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust for federal

4

income tax purposes.

## ARTICLE III
## ADMINISTRATION OF THE TRUST

3.1     Rights, Powers and Privileges. The Liquidating Trustee shall have the rights, powers and privileges expressly provided to the Liquidating Trustee in this Agreement and under the Plan. The Liquidating Trustee shall hold legal title to the Liquidating Trust Assets. With respect to the Liquidating Trust Assets, the Liquidating Trustee shall be deemed to be the Estate's representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth herein, including without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and the right to seek testimony and production of documents pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.

3.2     Liquidating Trustee Powers. Without limiting the foregoing, the Liquidating Trustee shall have the power to take the actions set forth in the Plan and in the sub-sections below and any powers reasonably incidental thereto, which the Liquidating Trustee, in his reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Liquidation Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

A.     Hold legal title to any and all rights of the Settlor and the Beneficiaries in or arising from the Liquidation Trust Assets;

B.     Engage and compensate employees and professionals assisting the Liquidating Trustee with respect to his responsibilities, including, but not limited to, any Professionals employed by the Liquidating Trustee, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) for federal income tax purposes;

C.     Liquidate any remaining assets, and provide for the Distributions in accordance with the provisions of the Plan;

D.     Manage the continued liquidation of the Liquidation Trust Assets;

E.     Stand in the shoes of the Debtor and assert or waive attorney client and other privileges;

F.     Interpret the Plan in the Liquidating Trustee's reasonable discretion;

G.     In reliance upon the Debtor's schedules and the official claims register (the "Register") maintained in the Debtor's Chapter 11 Case, maintain on the Liquidating Trustee's books and records a register evidencing the beneficial interest herein held by each Beneficiary;

H.     Protect and enforce the rights to the Liquidation Trust Assets (including prosecuting and/or settling any Causes of Action) vested in the Liquidating Trustee by this

Agreement by any method deemed appropriate including, without limitation, by judicial proceedings or otherwise;

I.      Make all distributions to the Beneficiaries provided for in, or contemplated by, the Plan and this Agreement;

J.      Open and maintain bank accounts on behalf of or in the name of the Liquidation Trust;

K.      To file tax returns of the Liquidating Trust as a grantor trust for the Beneficiaries pursuant to Treasury Regulation Section 1.671-4(a) and as otherwise provided in this Trust Agreement;

L.      To request prompt audit of tax filings pursuant to Bankruptcy Code Section 505(b);

M.      Send annually to each Beneficiary a separate statement stating the Beneficiary's share of income, gain, loss, deduction or credit, and instruct all such Beneficiaries to report such items on their federal tax returns as provided in Article 8.3;

N.      Establish such reserves for taxes, assessments and other expenses of administration of the Liquidation Trust as may be necessary and appropriate for the proper operation of matters incident to the Liquidation Trust;

O.      Pay all expenses and make all other payments relating to the Liquidation Trust Assets;

P.      Retain and pay third party professionals pursuant to this Agreement and the Plan;

Q.      Carry insurance coverage or obtain a bond in such amounts as the Liquidating Trustee deems advisable as an expense of the Liquidation Trust, including without limitation any insurance or bonding specifically identified in the Plan;

R.      In accordance with the Plan, be vested with and perform all rights and duties of the Liquidating Trustee;

S.      All powers provided under the Plan, including the exclusive right to pursue and settle Causes of Action and object to and settle objections to Claims;

T.      Invest any moneys held as part of the Liquidation Trust Assets in accordance with this Agreement and the Plan; and

U.      Establish, in his discretion, appropriate reserves for Post-Effective Date Expenses, Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Non-Tax Priority Claims, Disputed Secured Claims, Disputed General Unsecured Claims, and undeliverable

Distributions, and invest such reserves as provided in the Plan.

    3.3    <u>Limitation of Liquidating Trustee's Authority</u>.

    A.    <u>No Trade or Business.</u> The Liquidating Trustee shall not, and shall not be authorized to, engage in any trade or business with respect to the Liquidation Trust Assets or any proceeds therefrom except to the extent reasonably necessary or appropriate to, and consistent with, the liquidating purpose of the Liquidating Trust and the Liquidating Trustee shall take such actions consistent with the prompt orderly liquidation of the Liquidation Trust Assets as are required by applicable law and consistent with the treatment of the Liquidating Trust as a Liquidating Trust under Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 (or any subsequent Revenue Procedures that may be issued), and such actions permitted herein.

    B.    <u>Investment and Safekeeping of the Liquidation Trust Assets.</u> All moneys and other assets received by the Liquidating Trustee shall, until distributed or paid over as herein provided, be held in trust <u>for</u> the benefit of the Beneficiaries, but need not be segregated from other Liquidation Trust Assets, unless and to the extent required by law or permitted by the Plan. The Liquidating Trustee shall be under no liability for interest or producing income on any moneys received by it herein and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Liquidating Trustee. The Liquidating Trustee shall deposit or invest the Cash held in the Liquidation Trust in accordance with the terms of the Plan (collectively, the "Permitted Investments"); provided, however, that the scope of the Permitted Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulation § 301.7701-4(d) may be permitted to invest in, pursuant to the Treasury Regulations and Rev. Proc. 94-45, 1994-28 C.B. 124, or any modification in IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise. Investments of any moneys held by the Liquidating Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; provided, however, that the right and power of the Liquidating Trustee to invest moneys held by the Liquidating Trustee, or any income earned by the Liquidation Trust, shall be limited to the right and power to invest such moneys, pending periodic distributions in accordance with Article IV hereof and the Plan, without application to, or order from, the Bankruptcy Court or other judicial body.

    C.    <u>Limiting Transfers.</u> The Liquidating Trustee shall not take, or cause the Liquidating Trust to take, any action that would cause the interests in the Liquidating Trust to be considered readily <u>tradable</u> on a secondary market (or a substantial equivalent thereof) within the meaning of Section 7704(b)(2) of the IRC, and Treasury Regulations § 1.7704-1(c), and the Liquidating Trustee shall not permit any transfer of an interest in the Liquidating Trust if it would cause the Liquidating Trust (were it to be classified as a partnership rather than a grantor trust) to be treated as a "publicly traded partnership" as defined in IRC § 7704.

    3.4    <u>Agents and Professionals</u>. Without further notice or order of the Bankruptcy Court, the Liquidating Trustee may, but shall not be required to, consult with and employ attorneys, accountants, appraisers, or other parties deemed by the Liquidating Trustee to have qualifications

necessary to assist in the proper administration of the Liquidation Trust, including professionals previously retained by the Chapter 11 Trustee or any creditors, in accordance with the terms and conditions of the Plan. Without further notice or order of the Bankruptcy Court, the Liquidating Trustee may pay the reasonable salaries, fees and expenses of such persons out of the Liquidation Trust Assets in the ordinary course of business and in accordance with the terms and conditions of the Plan, including Article 5.05(d) of the Plan.

3.5     <u>Status Updates</u>. The Liquidating Trustee shall use his best good faith efforts to provide a status report on a bi-yearly basis, or at such other interval as may be appropriate, via a filing with the Bankruptcy Court. Such status report shall provide updates regarding the current status of (i) the litigation and/or settlement of the Causes of Action, (ii) the Claims resolution process, including the allowance of, objection to and litigation and/or settlement of any and all Claims, (iii) the proposed distributions on Allowed Claims, (iv) the creation of proposed Plan Reserve Accounts, and (v) the then current financial status of the Liquidation Trust.

3.6     <u>No Bond Required</u>.  The Liquidating Trustee (including any successor Trustee) shall not be required to give any bond, surety or other security in any jurisdiction for the performance of any of his duties.

3.7     <u>Compliance with Tax Laws</u>.  The Liquidating Trustee shall comply with all tax laws and shall act in accordance with Article VIII regarding income tax treatment, tax returns and payments, tax withholding and reporting, liability for taxes, valuation of Liquidation Trust Assets and Section 1146(a) exemption, and any other tax matters addressed in this Agreement or in the Plan.

## ARTICLE IV
## DISTRIBUTIONS FROM THE TRUST

4.1     <u>Timing of Distributions</u>.  Distributions to the Beneficiaries will be made from the Liquidation Trust in accordance with the terms of the Plan, subject to Available Cash (as defined in the Plan). If at any point, the Liquidating Trustee determines, in good faith, that further disbursements of the Liquidation Trust Assets are unwarranted and/or upon the liquidation of all the General Assets of the Liquidation Trust and completion of the prosecution of the Causes of Action, the Liquidating Trustee shall provide notice of the Liquidating Trustee's intention to make a final distribution to the Beneficiaries. Absent the filing of a timely objection thereto, the Liquidating Trustee shall thereafter be authorized to and shall make the final disbursement of the Liquidation Trust Assets to the Beneficiaries in accordance with their distribution rights under the Plan and this Agreement. Ninety (90) days after the final distribution, the Liquidating Trustee shall stop payment on any check(s) remaining unpaid and such unclaimed funds shall thereafter be used as provided in Article 4.4 of this Agreement.

4.2     <u>Pro Rata Share of Distributions</u>. Each Beneficiary shall receive its pro rata share of any and all Distributions in accordance with the Plan, except that the Liquidating Trustee may withhold from amounts distributable to any Beneficiary any and all amounts, determined in the Liquidating Trustee's reasonable discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

4.3     Undeliverable Distributions. If a Distribution is returned to the Liquidating Trustee as an undeliverable Distribution or is deemed to be an undeliverable Distribution under the Plan, the Liquidating Trustee will make no further Distribution to the Person holding the Claim on which the Distribution is being made unless and until the Liquidating Trustee is timely notified in writing of that Person's current address and provided with that Person's required tax identification number or completed form W-9 and/or W-8. Failure to provide such timely notice and the aforementioned tax identification information may result in the forfeiture of a Person's right to receive the undeliverable distribution, as more particularly set forth in Article 5.08(j) of the Plan.

4.4     Unclaimed Property. Distributions that are not claimed by the expiration of ninety (90) days from the date the Distribution is made, including any check that remains unpaid, will be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Liquidating Trust and the Claims with respect to which those Distributions are made shall be automatically cancelled. After the expiration of that ninety (90) day period, the Liquidating Trustee shall stop payment on any check(s) remaining unpaid and the claim of any Person to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim. All funds or other property that vests or revests in the Liquidating Trust pursuant to this Article shall thereafter be used to satisfy any outstanding expenses of administering the Liquidating Trust and the remaining balance, if any, shall thereafter be paid to a charity to be selected by the Liquidating Trustee.

4.5     No Distributions With Respect to Disputed Claims. Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim, provided, however, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to receive a Distribution on account of that portion of the Disputed Claim, if any, which the Liquidating Trustee does not dispute, which Distribution shall be made by the Liquidating Trustee at the same time and in the same manner that such Liquidating Trustee makes Distributions to Holders of similar Allowed Claims pursuant to the Plan. The Liquidating Trustee may, in his discretion, withhold Distributions otherwise due and payable by the Liquidating Trustee hereunder to any applicable Holder of a Claim until the Claims Objection Deadline, to enable a timely objection thereto to be filed. A Claim of any Person from which property may be recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that may be avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be a Disallowed Claim unless and until the Person or transferee has paid the amount or turned over the property for which such Person or transferee is liable. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of the Plan and this Agreement.

4.6     Fractional Dollars. Any other provision of this Agreement notwithstanding, the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Agreement would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

4.7     Manner of Cash Payments. Cash payments to domestic entities holding Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Liquidating Trustee or, at the Liquidating Trustee's option, by wire transfer from a domestic bank. Cash payments to foreign entities holding Allowed Claims may be paid, at the Liquidating Trustee's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

4.8     Timing of Distributions. Upon liquidation of all the General Assets of the Liquidating Trust and completion of the prosecution of the Causes of Action, the Liquidation Trustee shall make a final distribution of all the General Assets of the Liquidation Trust. Except where the Plan or Liquidation Trust provides otherwise and to the extent of Available Cash, the Liquidating Trustee may, but shall not be required to, make such interim Distributions as he believes appropriate. The Liquidating Trustee shall make an initial Distribution, which shall be made as soon as is practical after the Effective Date, but no later than ninety (90) days after the Effective Date provided that funds are available for distribution notwithstanding any reserves otherwise required by the Plan and Liquidation Trust Agreement. Thereafter, Distributions shall be made every six (6) months subsequent to the initial Distribution date, or as soon thereafter as is reasonably practicable, unless the Liquidating Trustee determines, in his reasonable discretion, that such Distribution would be economically impracticable.

4.9     Setoff and Recoupment. Notwithstanding anything to the contrary in the Plan, the Liquidating Trustee may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim any claims that the Chapter 11 Trustee or the Debtor's Estate may have against the claimant or the Person holding the Allowed Claim. The Liquidating Trustee does not and shall not be deemed to waive or release any claim against those Persons by failing to effect such a setoff or recoupment, by the allowance of any claim against the Estate, or by making a Distribution on account of an Allowed Claim. In addition, the settlement or adjudication of any Avoidance Action shall not bar the Liquidating Trustee from filing a subsequent objection to the Claim. The Liquidating Trustee may assert all of the same rights and defenses, including all setoff rights and rights under Section 502(d) of the Bankruptcy Code, with respect to any Claim held by an Assignee of a Claim as he could against the original Holder of the Claim.

4.10     Interest on Claims. Unless otherwise specifically provided for in the Plan, the Confirmation Order, any order of the Court, or required by applicable bankruptcy law, Post-Petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

4.11     Withholding and Reporting Requirements. In connection with the Plan and all Distributions under this Plan, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment and reporting requirements. All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder. All Holders shall be

required to provide any information necessary to effect information reporting and withholding of such taxes, including but not limited to taxpayer identification numbers. Notwithstanding any other provision of this Agreement, each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Agreement and the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution. The Liquidating Trustee will require any Creditor to provide a completed form W-8 and/or W-9 IRS tax form or otherwise furnish to the Liquidating Trustee its tax identification number as assigned by the IRS and the Liquidating Trustee will condition any distribution to any Creditor upon receipt of such tax identification number. Failure to provide the aforementioned tax identification number will result in the Creditor's Claim being treated as an Undeliverable Distribution pursuant to Article 4.3 of this Agreement.

4.12    No *de minimus* distributions. Notwithstanding anything to the contrary in the Plan, no Cash payment of less than $100 will be made by the Liquidating Trustee to any Person holding an Allowed Claim. No consideration will be provided in lieu of the *de minimus* Distributions that are not made under this Article.

4.13    Priorities of Distribution. The Liquidating Trustee must pay the operating expenses of the Liquidation Trust before approving distributions to or for the benefit of the Beneficiaries.

4.14    Reserves.  Any Plan Reserves and/or Reserve Accounts may be created and administered as provided in the Plan.

## ARTICLE V
## BENEFICIARIES

5.1    Interest Beneficial Only. The ownership of a beneficial interest in the Liquidation Trust shall not entitle any Beneficiary or the Settlor to any title in or to the Liquidation Trust Assets or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein.

5.2    Identification of Beneficiaries. To determine the actual names, addresses and tax identification numbers of the Beneficiaries, the Liquidating Trustee shall be entitled to conclusively rely on the names, addresses and tax identification numbers in Schedules or, if a proof of claim has been filed, such proof of claim. If a Beneficiary has not filed a proof of claim or request for Administrative Expense Claim, or provided written notice indicating such information, the Liquidating Trustee shall be entitled to conclusively rely on the names, addresses and tax identification numbers reflected in the applicable Schedules. Each Beneficiary's right to distribution from the Liquidating Trust shall be that accorded to such Beneficiary under the Plan. Each distribution by the Liquidating Trustee to the Beneficiaries shall be made in accordance with the Plan and terms set forth herein. The Liquidating Trustee will require any Beneficiary to provide a completed form W-8, W9, and/or W-4 IRS tax form or otherwise furnish to the Liquidating Trustee its tax identification number as assigned by the IRS and the Liquidating Trustee will condition any distribution to any Beneficiary upon receipt of such tax identification number. Failure to provide the aforementioned tax identification number will result in the Beneficiary's

Claim being treated as an Undeliverable Distribution pursuant to Article 4.3 of this Agreement.

5.3     Ownership of Beneficial Interests Hereunder. Each Beneficiary shall own a beneficial interest herein equal in proportion to the pro rata share of such Beneficiary's Allowed Claim in accordance with the Plan.

5.4     Evidence of Beneficial Interest. Ownership of a beneficial interest in the Liquidation Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidating Trustee.

5.5     Exemption from Registration. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities, and (ii) if the rights arising under the Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under Section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

5.6     Notice of Transfer of Beneficial Interest. Any notice of a change of beneficial interest ownership shall be forwarded to the Liquidating Trustee by registered or certified mail, as set forth herein. The notice shall be executed by both the transferee and the transferor, and the signatures of the parties shall be acknowledged before a notary public.  The notice must clearly describe the interest to be transferred and must include all information required pursuant to Article 5.2 of this Agreement. The Liquidating Trustee may rely upon such signatures and acknowledgments as evidence of such transfer without the requirement of any further investigation.

## ARTICLE VI
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing With the Liquidating Trustee. In the absence of actual knowledge to the contrary, any person dealing with the Liquidation Trust or the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee or any of the Liquidating Trustee's agents to act in connection with the Liquidation Trust Assets. There is no obligation on any Person dealing with the Liquidating Trustee to inquire into the validity or expediency or propriety of any transaction by the Liquidating Trustee or any agent of the Liquidating Trustee.

6.2     Limitation of Liquidating Trustee's Liability. Anything herein to the contrary notwithstanding, in exercising the rights granted herein, the Liquidating Trustee shall exercise the Liquidating Trustee's best judgment, to the end that the affairs of the Liquidation Trust shall be properly managed and the interests of all the Beneficiaries and the Settlor are safeguarded; but the Liquidating Trustee shall not incur any responsibility or liability by reason of any error of law or of any matter or thing done or suffered or omitted to be done under this Agreement, except for fraud, gross negligence or willful misconduct. The Liquidating Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice,

request, consent, order or other paper or document reasonably believed by the Liquidating Trustee to be genuine and to have been signed or presented by the proper party or parties. The Liquidating Trustee may consult with counsel, accountants and other professionals to be selected by the Liquidating Trustee, and shall not be liable for any action taken or omitted to be taken in accordance with the advice thereof, unless such action shall be found by a court of competent jurisdiction to have constituted fraud, gross negligence or willful misconduct.  Notwithstanding anything to the contrary in this Agreement, the Plan, or the Confirmation Order, the Liquidating Trustee shall be treated as a trustee acting under title 11 solely for purposes of 31 U.S.C. § 3713 and the Liquidating Trustee shall have no individual liability to the Government thereunder.

   6.3 <u>Indemnification</u>. From and after the Effective Date, the Chapter 11 Trustee, the Liquidating Trustee, and their respective firms, attorneys, companies, shareholders, members, partners, officers, directors, employees, professionals, representatives, successors, and assigns (collectively, the "Indemnified Parties" and each an "Indemnified Party") shall be indemnified by the Liquidation Trust, to the fullest extent permissible by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees and defense costs and other assertions of liability arising out of any such Indemnified Parties' good faith exercise of what such Indemnified Party reasonably understands to be its powers or the discharge of what such Indemnified Party reasonably understands to be its duties conferred by the Plan, this Agreement, or by any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order of a court of competent jurisdiction to be due to their own respective fraud, gross negligence or intentional misconduct), including without limitation, acts or omissions concerning pursuing, not pursuing or settling the Causes of Action, sales of assets, or objections to Claims, on and after the Effective Date. The foregoing indemnification shall also extend to matters directly or indirectly, in connection with, arising out of, based on, or in any way related to (i) the Plan; (ii) the services to be rendered pursuant to the Plan; (iii) this Agreement or any other document or information, whether verbal or written, referred to herein or supplied to or by the Liquidating Trustee; and/or (iv) the pre-Effective Date acts and omissions of the Chapter 11 Trustee and/or his respective firms, companies, shareholders, members, partners, officers, directors, employees, professionals, representatives, successors and assigns. The Liquidating Trustee shall, on demand, advance or pay promptly out of Available Cash or a Plan Reserve Account set up specifically for this purpose if such an account is established by the Liquidating Trustee, on behalf of each Indemnified Party, reasonable attorneys' fees and other expenses and disbursements which such Indemnified Party would be entitled to receive pursuant to the foregoing indemnification obligation; provided, however, that any Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance amounts if a court of competent jurisdiction ultimately determines that such Indemnified Party is not entitled to indemnification hereunder due to the fraud, gross negligence or intentional misconduct of such Indemnified Party. The Liquidating Trustee may in his discretion, obtain insurance to cover the indemnity obligations of the Liquidation Trust, the premiums, fees and other costs of which shall be paid from the Liquidation Trust Assets. The Liquidating Trustee shall not be personally liable for the payment of any Liquidation Trust expense or claim or other liability of the Liquidation Trust, and no person shall look to the Indemnified Parties personally for the payment of any such expense or liability. This indemnification shall survive the death, dissolution, resignation or removal, as may be applicable, of the Indemnified Parties, or the termination of the Liquidation

13

Trust, and shall inure to the benefit of the Indemnified Parties' heirs and assigns.

## ARTICLE VII
## SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE

7.1     Liquidating Trustee. The Liquidating Trustee shall be Roger Schlossberg.

7.2     Term of Service. The Liquidating Trustee shall serve until (a) the completion of all the Liquidating Trustee's duties, responsibilities and obligations under this Agreement and the Plan; (b) termination of the Liquidation Trust in accordance with the terms of this Agreement and the Plan; or (c) the Liquidating Trustee's resignation, death, incapacity or removal.

7.3     Removal of a Liquidating Trustee. The Liquidating Trustee may be removed only for cause in accordance with Bankruptcy Code Section 324(a), including, but not limited to, breach of his duties under the Plan, and only by order of the Bankruptcy Court.

7.4     Resignation of Liquidating Trustee. The Liquidating Trustee may resign at any time in accordance with the terms and conditions of the Plan. In the event of a resignation, the resigning Liquidating Trustee shall render to the Beneficiaries a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Liquidating Trustee. The resignation shall be effective on the later of (i) the date specified in the notice delivered to the U.S. Trustee; (ii) the date that is thirty days (30) after the date such notice is delivered; or (iii) the date the accounting described in the preceding sentence is transmitted to the Beneficiaries by first class mail, postage pre-paid.

7.5     Appointment of Successor Liquidating Trustee. In the event that the Liquidating Trustee resigns (with 30 days notice to the U.S. Trustee), is removed, or otherwise ceases to serve as Liquidating Trustee, the U.S. Trustee shall select a successor Liquidating Trustee within ten (10) Business Days of such resignation, removal or other cessation of service by the incumbent Liquidating Trustee, subject to Bankruptcy Court approval. Any successor Liquidating Trustee so appointed shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement shall be binding upon and shall inure to the benefit of the successor Liquidating Trustee and all of his heirs and legal and personal representatives, successors or assigns.

7.6     Powers and Duties of Successor Liquidating Trustee. A successor Liquidating Trustee shall have all of the rights, privileges, powers, and duties of his predecessor under this Agreement and the Plan.

7.7     Liquidation Trust Continuance. The resignation, death, incapacitation or removal of the Liquidating Trustee shall not terminate the Liquidation Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Liquidating Trustee. In the event that a successor Liquidating Trustee is not appointed when required under this Agreement and the Plan, the U.S. Trustee shall apply to the Bankruptcy Court for appointment of a successor Liquidating Trustee.

7.8     Compensation and Costs of Administration. The Liquidating Trustee shall be compensated in accordance with Article 5.05(e) of the Plan. All costs, expenses, and obligations incurred by the Liquidating Trustee (or professionals who may be employed by the Liquidating Trustee in administering the Liquidation Trust or the Plan, in carrying out their other responsibilities under this Agreement or the Plan, or in any manner connected, incidental, or related thereto) shall be paid by the Liquidating Trustee from the Liquidation Trust Assets prior to any distribution to the Beneficiaries and in accordance with and pursuant to the procedures set forth in the Plan.

## ARTICLE VIII
## TAXES AND MAINTENANCE OF RECORDS

8.1.     Income Tax Treatment. For the United States federal income tax purposes and any comparable provision of state or local law, the Chapter 11 Trustee, the Liquidating Trust, the Liquidating Trustee and the Beneficiaries will treat the Liquidating Trust as follows:

A.     Liquidating Trust. Except to the extent otherwise provided in Article 8.1(B) and 8.1(C) of this Agreement, the Liquidating Trust will be treated as a grantor trust that is a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684. The transfer of the Liquidating Trust Assets (to the extent not distributed to the Holders of Allowed Claims as of the Effective Date) to the respective Liquidating Trust as provided in this Agreement will be treated as a transfer of the Liquidating Trust Assets from the Debtor's Estate to the Holders of Allowed Claims in the amounts to which such holders are entitled under the Plan (subject to any liabilities of the Debtor's Estate or the respective Liquidating Trust payable from the proceeds of such assets), followed by such holders' transfer of such Liquidating Trust Assets (subject to such liabilities) to the Liquidating Trust in exchange for their respective beneficial interests in the Liquidating Trust. Thus, each Holder of such an Allowed Claim on the Effective Date will be treated as transferring its Claim against the Estate in exchange for the Holder's Pro Rata share of the applicable Liquidating Trust Assets (subject to any applicable liabilities), followed by the Holder's transfer of such assets (subject to any applicable liabilities) to the Liquidating Trust. For purposes of the preceding sentence, the applicable Liquidating Trust Assets are the Liquidating Trust Assets (or the proceeds thereof) from which a Holder of an Allowed Claim is entitled to a Distribution under the Plan. Accordingly, the holders of such allowed Claims will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the Liquidating Trust Assets (subject to such liabilities) and any income or earnings thereon as of the date of the transfer of such Liquidating Trust Assets to the Liquidating Trust. The Trustee will allocate to each holder its share of each item of income, gain, deduction, loss and credit recognized by the Liquidating Trust (including interest or dividend income earned on bank accounts and other investments) using any reasonable allocation method.

B.     Disputed Claim Reserve. To the extent that the Liquidating Trustee establishes any Disputed Claim Reserve, such Reserve will be treated as one or more "disputed ownership funds" within the meaning of Treasury Regulation Section 1.468B-9(b)(1), as determined by the Liquidating Trustee in his reasonable discretion. Any income or earnings on the Liquidating Trust Assets allocated to such a Disputed Claim Reserve will be taxed accordingly. The Liquidating Trustee will act as the "administrator" of such disputed ownership funds within

the meaning of Treasury Regulations Section 1.468B-9(b)(2).

  C. <u>Effective Date Payments</u>. Distributions made as of the Effective Date to Holders of Allowed Claims will be treated as Distributions directly from the Chapter 11 Trustee to the Holder of such Allowed Claims on the Effective Date. Such Holders will include in their taxable incomes any interest earned and paid on such Distributions from the Effective Date to the date on which the actual Distribution is made.

  8.2 <u>Tax Returns and Payments.</u>

  A. <u>General</u>. The Liquidating Trustee will be responsible for: (a) the preparation and timely filing of all required federal, state, local and foreign tax returns for the Liquidating Trust and the Debtor; (b) the timely payment of any taxes shown on such returns as owing by the Liquidating Trust or the Estate (as applicable) from the applicable Liquidating Trust Assets; and (c) the preparation and timely Distribution to the Beneficiaries of any necessary federal, state, local or foreign information returns. The Liquidating Trustee will retain all tax returns and supporting documentation until the expiration of the applicable statute of limitations. The Liquidating Trustee may request an expedited determination of any tax matter of the Debtor, the Estate, the Liquidating Trust, or any Disputed Claim Reserve under Section 505 of the Bankruptcy Code.

  B. <u>Liquidating Trust</u>. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations),the Liquidating <u>Trustee</u> shall file tax returns for the Liquidation Trust as a grantor trust pursuant to Revenue Procedure 94-95, 1994-2 C.B. 684 and Treasury Regulation Section 1.671-4(a), the Trustee will file tax returns pursuant to Treasury Regulation Section 1.671-4(a) on the basis that the Liquidating Trust (to the extent described in Section 8.1(a)) is a grantor trust that is a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and related regulations. Nothing in this Agreement, the Plan, or the Confirmation Order shall require the Liquidating Trustee to request a private letter ruling under the IRC or applicable Treasury Regulations.

  C. <u>Allocations of Liquidating Trust Taxable Income.</u> All of the Liquidating Trust's income is subject to tax on a current basis, regardless of whether the Liquidating Trustee has established a reserve for Disputed Claims. Allocations of Liquidating Trust taxable income among Beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein) if, immediately prior to such deemed distribution, the Liquidating Trustee had distributed all of its other assets (valued for this purpose at their tax book value) to Beneficiaries (treating to the extent determined by the Liquidating Trustee in his sole discretion, any holder of a Disputed Claim against the Estate, for this purpose, as a current Beneficiary entitled to distributions), taking into account all prior and concurrent distributions from the Liquidating Trust (including all distributions held in reserve pending the resolution of Disputed Claims). Similarly, taxable losses of the Liquidating Trust will be allocated among Beneficiaries by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidation Trust Assets. The tax book value of the Liquidation Trust

Assets on the Effective Date for this purpose shall be as set forth in the liquidation analysis attached to the Disclosure Statement, or, if acquired later, the fair market value of such assets on the date such assets were acquired by the Liquidating Trust, adjusted in the case in accordance with tax accounting principles prescribed by the IRC, the regulations promulgated thereunder and other applicable administrative and judicial authorities and pronouncements. As soon as reasonably practicable after the close of each calendar year, the Liquidating Trustee shall send the Beneficiaries a statement setting forth the holder's share of items of income, gain, loss, deduction or credit and instructing all such holders to report such items on their federal income tax returns. Pursuant to such provisions, for federal income tax purposes the Liquidating Trustee will allocate to the Beneficiaries their applicable shares of any income, gain, deduction, loss and credit of such grantor trust, and such Beneficiaries will be subject to tax thereon on a current basis.

D.  Disputed Claim Reserve.  The Liquidating Trustee will file all applicable tax and other returns and statements for any Disputed Claim Reserve that is a "disputed ownership fund" in accordance with the requirements of Treasury Regulation Section 1.468B-9 and any other applicable law.  In addition, the Liquidating Trustee will pay from the applicable Liquidating Trust Assets on a current basis any taxes owed on any net income or gain of such Disputed Claim Reserve.

8.3  Tax Withholding and Reporting; Liability for Taxes.  Pursuant to the Plan and Confirmation Order, to the extent applicable, the Liquidating Trustee in his capacity as a disbursing agent with respect to the Plan or any third party disbursing agent acting at the direction of the Liquidating Trustee (each a "Disbursing Agent") will comply with all applicable tax withholding and reporting requirements imposed on it or on the Liquidating Trust by any governmental unit, and all Distributions pursuant to the plan will be subject to applicable withholding and reporting requirements.  Each Disbursing Agent will be authorized to take any actions that may be necessary or appropriate to comply with such tax withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanism the Disbursing Agent believes is reasonable and appropriate, including requiring Claim holders to submit appropriate tax and withholding certifications as required by the Disbursing Agent, such Claim holder's Distribution may, in the Disbursing Agent's reasonable discretion, be deemed undeliverable and be subject to the provisions of the Plan and this Agreement with respect to undeliverable Distributions.  Each Person or Entity receiving (or deemed to receive) a Distribution pursuant to the plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of the Distribution, including income, withholding and other tax obligations.

8.4  Valuation of Liquidating Trust Assets.  As soon as reasonably practicable after the Effective Date, (a) the Liquidating Trustee will determine the fair market value of the Liquidating Trust Assets (other than Cash) as of the Effective Date, based on a good faith determination and the advice of any professional retained by the Liquidating Trustee for that purpose and (b) the Trustee shall establish appropriate means to apprise the Beneficiaries of the grantor trust portion of the Liquidating Trust of the valuation of such Holder's interest in the Liquidating Trust.  The Liquidating Trustee shall have no other or further obligation to notify Beneficiaries of the estimated value of the Liquidation Trust Assets.  The Chapter 11 Trustee, the Liquidating Trust,

the Liquidating Trustee, and the Beneficiaries will use such values consistently for all federal income tax purposes.

8.5　　Section 1146(a) Exemption.  The parties to this Agreement intend that, as provided in the Plan, pursuant to Section 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp tax, real estate transfer tax, mortgage recording tax, filing fee, sales or use tax or similar tax: (a) any dissolution or liquidation transaction; (b) the execution and implementation of this Agreement, including the creation of the Liquidating Trust, any transfers of the Liquidating Trust Assets or other assets (if any) to, by, or from the Liquidating Trust, including the sale, liquidation, transfer, foreclosure, abandonment or other disposition of the Liquidating Trust Assets; or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the plan, including any agreements of liquidation or dissolution, bills of sale or assignments, applications, certificates or statements executed or filed in connection with any of the foregoing or pursuant to the Plan.

8.6　　Books and Records.  The Liquidating Trustee shall maintain good and sufficient books and records of account relating to the Available Cash and General Assets and any other assets of the Liquidation Trust, the management thereof, all post-Effective Date transactions undertaken by the Liquidating Trustee, all expenses incurred by or on behalf of the Liquidating Trustee after the Effective Date, and all Distributions contemplated or effectuated under the Plan.

## ARTICLE IX
## DURATION OF TRUST

9.1　　Duration.  The Liquidation Trust shall become effective upon the Effective Date of the Plan. Thereupon, the Liquidation Trust and its provisions herein shall remain and continue in full force and effect until the Liquidation Trust is terminated, subject to Article 9.3 below.

9.2　　Termination Upon Distribution of All Liquidation Trust Assets. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Liquidation Trust, and the distribution of all remaining Liquidation Trust Assets in accordance with the provisions of the Plan, the Confirmation Order and this Agreement, the Liquidation Trust shall terminate and the Liquidating Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3　　Termination After Five Years. If the Liquidation Trust has not been previously terminated pursuant to Article 9.2 hereof, on the fifth (5th) anniversary of the Effective Date, the Liquidating Trustee shall distribute all of the Liquidation Trust Assets to the Beneficiaries in accordance with the Plan and immediately thereafter the Liquidation Trust shall terminate and the Liquidating Trustee shall have no further responsibility in connection therewith. The term of the liquidation trust may be extended, provided that any extension shall be for a finite period of time and must be approved by the Bankruptcy Court within six (6) months prior to the beginning of the extended term.

# ARTICLE X
# MISCELLANEOUS

10.1    <u>Limitation on Transferability</u>. It is understood and agreed that the beneficial interests herein shall be assignable during the term of this Agreement. Any assignment of a beneficial interest shall not be effective until written notification, proof of the assignment, and the assignee's completed tax form W-8 and/or W-9 or the assignee's tax identification number as assigned by the IRS is submitted to the Liquidating Trustee.  The Liquidating Trustee may continue to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper written notification, tax identification information for the assignee, and proof of assignment. The Liquidating Trustee may rely upon such proof without the requirement of any further investigation.

10.2    <u>Notices</u>. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by the Liquidating Trustee. Any notice or other communication which may be or is required to be given, served, or sent to the Liquidating Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

> If to the Liquidation Trust:
>
> Roger Schlossberg, Chapter 11 Trustee for Vincent L. Abell
> Schlossberg Mastro & Scanlan
> P.O. Box 2067
> Hagerstown, Maryland 21742-2067
> rschlossberg@schlosslaw.com

or to such other address as may from time to time be provided in written notice by the Liquidating Trustee.

10.3    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland.

10.4    <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

10.5    <u>Particular Words</u>. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

10.6    <u>No Execution</u>. All funds in the Liquidation Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Liquidation Trust Assets or the Liquidating Trustee in any manner or compel payment from the Liquidation Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan and this

Agreement.

      10.7   <u>Intention of Parties to Establish Grantor Trust</u>. This Agreement is intended to create a grantor trust for United States federal income tax purposes and for state income tax purposes, if applicable, and to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

      10.8   <u>Amendment</u>.  This Agreement may be amended only by order of the Bankruptcy Court.

      10.9   <u>Severability</u>. If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

      10.10   <u>Counterparts</u>. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

      10.11   <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain such jurisdiction as is legally permissible as set forth in this Agreement, the Plan, and in the Confirmation Order, including, but not limited to, jurisdiction to hear and determine disputes arising in connection with the interpretation, implementation, administration or enforcement of this Agreement as well as to hear matters regarding Section 505 of the Bankruptcy Code.

      IN WITNESS WHEREOF, the parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year written above.

                        **THE BANKRUPTCY ESTATE OF**
                        **VINCENT L. ABELL**

                        By:_____
                            Name: Roger Schlossberg
                            Title:  Chapter 11 Trustee

                        _____
                        Roger Schlossberg, Liquidating Trustee

# EXHIBIT 3A

| | A | B | C | D |
|---|---|---|---|---|
| 1 | | *__EXHIBIT 3A: Currently Held Properties__* | | |
| 2 | **Property** | **Legal Description** | **Date of Acquisition and Purchase Price** | **Defendant Entity Involved** |
| 3 | Red Toad Road ([#234], vacant lot, 05-139830), North East | a 3.995 +/- acre parcel of real property known as Red Toad Road, North East, Cecil County, Maryland (Election District 05; Tax Account No. 05-139830; Tax Map 031A; p/o Parcel 291; Lot 2) (being known and designated as Lot 2 on the plat entitled "Add-On Subdivision on the Lands of Vinmar LLC," recorded among the Plat Records of Cecil County in Plat Cabinet PC 1123, Page 71, and being a portion of the property conveyed to Vinmar LLC by Substitute Trustees' Deed dated March 11, 2020 and recorded among the Cecil County Land Records at Liber CMN 4568, Page 132 *et seq.*) | Purchased on 3/11/2020 for $56,300 (for both this property and 232 Red Toad Road identified on Exhibit 3B) | Vinmar LLC |
| 4 | 503 W. Lexington Street, Baltimore | a 602 +/- square foot parcel of real property known as 503 W. Lexington Street, Baltimore City, Maryland (Ward 04, Section 07, Block 0617, Lot 030) (being the property conveyed to Merganser Builders, LLC by Deed dated February 12, 2020 and recorded among the Baltimore City Land Records at Liber MB 21918, Page 1 *et seq.*) | Purchased on 2/12/2020 for $152,250 | Merganser Builders, LLC |
| 5 | 6717 Bailey Store Road, Federalsburg (Lot 1, legal address is 6715, 01-009699) | a 2.313 +/- acre parcel of real property known as 6715 Bailey Store Road, Federalsburg, Dorchester County, Maryland (the mailing address is known as 6717 Bailey Store Road) (Election District 01; Tax Account No. 01-009699; Tax Map 0007; Parcel 0136; Lot 1) (being known as designated as Lot 1 on the plat entitled "Subdivision Lots 1 and 2 of the Land of Federalsburg Builders, LLC," recorded among the Plat Records of Dorchester County in Plat Book AJC 66, Page 126, and being a portion of the property conveyed to Federalsburg Builders, LLC by Substitute Trustee's Deed dated October 31, 2019 and recorded among the Dorchester County Land Records at Liber AJC 1552, Page 481 *et seq.*) | Purchased on 10/31/2019 for $63,000 (for both this property and 6715 Bailey Station Road (Lot 2, legal address is 6713) identified on Exhibit 3B) | Federalsburg Builders, LLC |

| | A | B | C | D |
|---|---|---|---|---|
| 1 | _**EXHIBIT 3A: Currently Held Properties**_ | | | |
| 2 | **Property** | **Legal Description** | **Date of Acquisition and Purchase Price** | **Defendant Entity Involved** |
| 6 | 15809 National Pike, Hagerstown | a 0.813 +/- acre parcel of real property known as 15809 National Pike, Hagerstown, Washington County, Maryland (Election District 23; Tax Account No. 23-008548; Tax Map 0036; Parcel 0118; Lot 3) (being the property conveyed to Greenspring Home Builders, LLC by Substitute Trustee's Deed dated March 20, 2020 and recorded among the Washington County Land Records at Liber KRT 6214, Page 147 _et seq._ ) | Purchased on 3/20/2020 for $50,000 | Greenspring Home Builders, LLC |
| 7 | 113 Eighth Street, Pocomoke City | a 0.239 +/- acre parcel of real property known as 113 Eighth Street, Pocomoke City, Worcester County, Maryland (Election District 01; Tax Account No. 01-032143; Tax Map 0400; Parcel 0284; Lot 33) (being the property conveyed to Greenspring Home Builders, LLC by Assignees' Deed dated January 21, 2021 and recorded among the Worcester County Land Records at Liber SRB 8108, Page 403 _et seq._ ) | Purchased on 1/21/2021 for $34,000 | Greenspring Home Builders, LLC |

# EXHIBIT 3B

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | | *EXHIBIT 3B: Sold Properties* | | | |
| 2 | **Property** | **Legal Description** | **Date of Acquisition and Purchase Price** | **Date of Sale and Amount of Proceeds** | **Defendant Entity Involved** |
| 3 | 232 Red Toad Road, North East | a 1.006 +/- acre parcel of real property known as 232 Red Toad Road, North East, Cecil County, Maryland (Election District 05; Tax Account No. 05-014999; Tax Map 031A; p/o Parcel 291; Lot 1) (being known and designated as Lot 1 on the plat entitled "Add-On Subdivision on the Lands of Vinmar LLC," recorded among the Plat Records of Cecil County in Plat Cabinet PC 1123, Page 71, and being a portion of the property conveyed to Vinmar LLC by Substitute Trustees' Deed dated March 11, 2020 and recorded among the Cecil County Land Records at Liber CMN 4568, Page 132 *et seq.* ) | Purchased on 3/11/2020 for $56,300 (for both this property and Red Toad Road identified on Exhibit 3A) | Sold on 10/31/2022 for $266,000 | Vinmar LLC |
| 4 | 5 Merganser Court, North East | a 0.0472 +/- acre parcel of real property known as 5 Merganser Court, North East, Cecil County, Maryland (Election District 05; Tax Account No. 05-102391; Tax Map 031E; Parcel 1234; Lot 42) (being the property conveyed to Merganser Builders, LLC by Assignee's Deed dated June 28, 2019 and recorded among the Cecil County Land Records at Liber CMN 4432, Page 169 *et seq.* ) | Purchased on 6/28/2019 for $85,000 | Sold on 6/28/2019 for $169,900 | Merganser Builders, LLC |
| 5 | 218 Locust Lane, Elkton | a 0.144 +/- acre parcel of real property known as 218 Locust Lane, Elkton, Cecil County, Maryland (Election District 03; Tax Account No. 03-045161; Tax Map 027H; Parcel 1606; Lot 30) (being the property conveyed to Merganser Builders, LLC by Assignee's Deed dated October 10, 2019 and recorded among the Cecil County Land Records at Liber CMN 4491, Page 209 *et seq.* ) | Purchased on 10/10/2019 for $73,000 | Sold on 1/10/2020 for $175,000 | Merganser Builders, LLC |
| 6 | 842 Holly Drive, La Plata | a 0.0908 +/- acre parcel of real property known as 842 Holly Drive, La Plata, Charles County, Maryland (Election District 01; Tax Account No. 01-036009; Tax Map 0109; Parcel 0086; Block B; Lot 12) (being the property conveyed to Merganser Builders, LLC by Assignee's Deed dated November __, 2019 and recorded among the Charles County Land Records at Liber SLH 10977, Page 238 *et seq.* ) | Purchased on 11/18/2019 for $90,000 (Deed is undated, but settlement occurred 11/18/2019) | Sold on 11/18/2019 for $210,000 | Merganser Builders, LLC |
| 7 | 241 Hopewell Road, Churchville | a 0.640 +/- acre parcel of real property known as 241 Hopewell Road, Churchville, Harford County, Maryland (Election District 02; Tax Account No. 02-055635; Tax Map 0043; Parcel 0200) (being the property conveyed to Merganser Builders, LLC by Substitute Trustees' Deed dated February 19, 2020 and recorded among the Harford County Land Records at Liber JJR 13753, Page 1 *et seq.* ) | Purchased on 2/19/2020 for $125,000 | Sold on 5/29/2020 for $207,000 | Merganser Builders, LLC |
| 8 | 730 Ninth Street, Pocomoke City | a 0.2367 +/- acre parcel of real property known as 730 Ninth Street, Pocomoke City, Worcester County, Maryland (Election District 01; Tax Map 0402; Parcel 1365; Lot 13) (being the property conveyed to Merganser Builders, LLC by Assignees' Deed dated January 13, 2020 and recorded among the Worcester County Land Records at Liber SRB 7582, Page 161 *et seq.* ) | Purchased on 1/13/2020 for $58,000 | Sold on 4/9/2020 for $149,900 | Merganser Builders, LLC |

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | | **EXHIBIT 3B: Sold Properties** | | | |
| 2 | **Property** | **Legal Description** | **Date of Acquisition and Purchase Price** | **Date of Sale and Amount of Proceeds** | **Defendant Entity Involved** |
| 9 | 295 Sharon Drive, Lusby | a 0.5630 +/- acre parcel of real property known as 295 Sharon Drive, Lusby, Calvert County, Maryland (Election District 01; Tax Account No. 01-192574; Tax Map 0042; Parcel 0336; Lot 1) (being the property conveyed to Federalsburg Builders, LLC by Assignees' Deed dated November 19, 2020 and recorded among the Calvert County Land Records at Liber KPS 5816, Page 422 *et seq.*) | Purchased on 11/19/2020 for $160,000 | Sold on 11/20/2020 for $263,000 | Federalsburg Builders, LLC |
| 10 | 803 Gay Street, Denton | a 0.1420 +/- acre parcel of real property known as 803 Gay Street, Denton, Caroline County, Maryland (Election District 03; Tax Account No. 03-041956; Tax Map 0103; Parcel 0575; Lot 18) (being the property conveyed to Federalsburg Builders, LLC by Assignees' Deed dated November 23, 2020 and recorded among the Caroline County Land Records at Liber TBL 1452, Page 500 *et seq.*) | Purchased on 11/23/2020 for $143,000 | Sold on 4/19/2021 for $235,000 | Federalsburg Builders, LLC |
| 11 | 22 Merganser Court, North East | a 0.0637 +/- acre parcel of real property known as 22 Merganser Court, North East, Cecil County, Maryland (Election District 05; Tax Account No. 05-102235; Tax Map 031E; Parcel 1234; Lot 27) (being the property conveyed to Federalsburg Builders, LLC by Deed dated January 22, 2020 and recorded among the Cecil County Land Records at Liber CMN 4547, Page 495 *et seq.*) | Purchased on 1/22/2020 for $100,000 | Sold on 2/7/2020 for $176,000 | Federalsburg Builders, LLC |
| 12 | 17961 Cypress Drive, Cobb Island | a parcel of real property known as 17961 Cypress Drive, Cobb Island, Charles County, Maryland (Election District 05; Tax Account No. 05-000149; Tax Map 0090; Parcel 0001; Section A; Lots 319-320) (being the property conveyed to Federalsburg Builders, LLC by Assignees' Deed dated November 16, 2020 and recorded among the Charles County Land Records at Liber SLH 11530, Page 153 *et seq.*) | Purchased on 11/16/2020 for $145,000 | Sold on 11/16/2020 for $285,000 | Federalsburg Builders, LLC |
| 13 | 401 Penn Street, Hurlock | a 0.2442 +/- acre parcel of real property known as 401 Penn Street, Hurlock, Dorchester County, Maryland (Election District 15; Tax Account No. 15-012439; Tax Map 0400; Parcel 0675; Lot 119G) (being the property conveyed to Federalsburg Builders, LLC by Deed dated January 28, 2020 and recorded among the Dorchester County Land Records at Liber AJC 1561, Page 373 *et seq.*) | Purchased on 1/28/2020 for $60,000 | Sold on 3/6/2020 for $143,000 | Federalsburg Builders, LLC |

| | | | | |
|---|---|---|---|---|
| | A | B | C | D | E |
| 1 | *EXHIBIT 3B: Sold Properties* | | | | |
| 2 | **Property** | **Legal Description** | **Date of Acquisition and Purchase Price** | **Date of Sale and Amount of Proceeds** | **Defendant Entity Involved** |
| 14 | 6715 Bailey Store Road, Federalsburg (Lot 2, legal address is 6713, 01-286729) | a 1.419 +/- acre parcel of real property known as 6713 Bailey Store Road, Federalsburg, Dorchester County, Maryland (the mailing address is known as 6715 Bailey Store Road) (Election District 01; Tax Account No. 01-286729; Tax Map 0007; p/o Parcel 0219; Lot 2) (being known as designated as Lot 2 on the plat entitled "Subdivision Lots 1 and 2 of the Land of Federalsburg Builders, LLC," recorded among the Plat Records of Dorchester County in Plat Book AJC 66, Page 126, and being a portion of the property conveyed to Federalsburg Builders, LLC by Substitute Trustee's Deed dated October 31, 2019 and recorded among the Dorchester County Land Records at Liber AJC 1552, Page 481 *et seq.* ) | Purchased on 10/31/2019 for $63,000 (for both this property and 6717 Bailey Station Road (Lot 1, legal address is 6715) identified on Exhibit 3A) | Sold on 11/16/2020 for $150,000 | Federalsburg Builders, LLC |
| 15 | 35 Wenner Drive, Brunswick | a 0.651 +/- acre parcel of real property known as 35 Wenner Drive, Brunswick, Frederick County, Maryland (Election District 25; Tax Account No. 25-475992; Tax Map 092G; Parcel 0217; Section 4; Lot 58) (being the property conveyed to Federalsburg Builders, LLC by Assignee's Deed dated November 12, 2020 and recorded among the Frederick County Land Records at Liber SKD 14447, Page 24 *et seq.* ) | Purchased on 11/12/2020 for $94,000 | Sold on 11/16/2020 for $115,000 | Federalsburg Builders, LLC |
| 16 | 1362 Harford Square Drive, Edgewood | a 0.0335 +/- acre parcel of real property known as 1362 Harford Square Drive, Edgewood, Harford County, Maryland (Election District 01; Tax Account No. 01-048716; Tax Map 0065; Parcel 0953; Section 3; Block O; Lot 49) (being the property conveyed to Federalsburg Builders, LLC by Substitute Trustees' Deed dated December 9, 2020 and recorded among the Harford County Land Records at Liber JJR 14399, Page 226 *et seq.* ) | Purchased on 12/9/2020 for $105,000 | Sold on 12/21/2020 for $179,000 | Federalsburg Builders, LLC |
| 17 | 1848 Robin Court, Severn | a 1,160 +/- square foot parcel of real property known as 1848 Robin Court, Severn, Anne Arundel County, Maryland (Election District 04; Tax Account No. 04-753-90015877; Tax Map 0021; Parcel 0579) (being the property conveyed to Rock Hall Builders LLC by Substitute Trustees' Deed dated February 25, 2020 and recorded among the Anne Arundel County Land Records at Liber SAP 34251, Page 346 *et seq.* ) | Purchased on 2/25/2020 for $109,000 | Sold on 3/16/2020 for $169,900 | Rock Hall Builders LLC |
| 18 | 6178 W. Dorlon Drive, Rock Hall | a 0.2936 +/- acre parcel of real property known as 6178 W. Dorlon Drive, Rock Hall, Kent County, Maryland (Election District 05; Tax Account No. 05-027977; Tax Map 0051; Parcel 0564; Lot 13) (being the property conveyed to Rock Hall Builders LLC by Deed dated April 4, 2019 and recorded among the Kent County Land Records at Liber MLM 995, Page 281 *et seq.* ) | Purchased on 4/19/2019 for $57,000 (Deed has "$0.00" consideration and a statement in the Deed notes an assessed value of $141,200, but the Intake Sheet recites $57,000 consideration) | Sold on 9/6/2019 for $159,000 | Rock Hall Builders LLC |

|   | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | *EXHIBIT 3B: Sold Properties* | | | | |
| 2 | **Property** | **Legal Description** | **Date of Acquisition and Purchase Price** | **Date of Sale and Amount of Proceeds** | **Defendant Entity Involved** |
| 19 | 8046 Ashford Boulevard, Laurel | a 0.0418 +/- acre parcel of real property known as 8046 Ashford Boulevard, Laurel, Prince George's County, Maryland (Election District 10; Tax Account No. 10-1036847; Tax Map 0006; Parcel 0000; Section 1; Lot 107) (being the property conveyed to Rock Hall Builders LLC by Substitute Trustees' Deed dated February 10, 2020 and recorded among the Prince George's County Land Records at Liber MEA 43260, Page 93 *et seq.*) | Purchased on 2/10/2020 for $251,000 | Sold on 5/4/2020 for $339,000 | Rock Hall Builders LLC |
| 20 | 3453 Baker Road, Westminster | a 3.12 +/- acre parcel of real property known as 3453 Baker Road, Westminster, Carroll County, Maryland (Election District 09; Tax Account No. 09-022772; Tax Map 0057; Parcel 0323; Lot 10) (being the property conveyed to Griffin Arms LLC by Trustees' Deed dated January 9, 2020 and recorded among the Carroll County Land Records at Liber HD 9541, Page 328 *et seq.*) | Purchased on 1/9/2020 for $165,000 | Sold on 2/14/2020 for $275,000 | Griffin Arms LLC |
| 21 | 10546 Worton Road, Worton | a 0.4591 +/- acre parcel of real property known as 10546 Worton Road, Worton, Kent County, Maryland (Election District 03; Tax Account No. 03-009734; Tax Map 0028; Parcel 0099) (being the property conveyed to Greenspring Home Builders, LLC by Deed dated December 8, 2020 and recorded among the Kent County Land Records at Liber SLK 1114, Page 53 *et seq.*) | Purchased on 12/8/2020 for $45,000 | Sold on 12/20/2021 for $270,000 | Greenspring Home Builders, LLC |
| 22 | 11088 Bottom Road, Worton | a 0.50 +/- acre parcel of real property known as 11088 Bottom Road, Worton, Kent County, Maryland (Election District 03; Tax Account No. 03-000915; Tax Map 0020; Parcel 0202) (being the property conveyed to Greenspring Home Builders, LLC by Substitute Trustee's Deed dated May 26, 2020 and recorded among the Kent County Land Records at Liber SLK 1061, Page 252 *et seq.*) | Purchased on 5/26/2020 for $59,000 | Sold on 6/4/2020 for $135,000 | Greenspring Home Builders, LLC |
| 23 | 29981 Greenspring Drive, Princess Anne | a 0.258 +/- acre parcel of real property known as 29981 Greenspring Drive, Princess Anne, Somerset County, Maryland (Election District 01; Tax Account No. 01-026038; Tax Map 015E; Parcel 0642; Section TWO; Block E; Lot 17E) (being the property conveyed to Greenspring Home Builders, LLC by Deed dated October 8, 2019 and recorded among the Somerset County Land Records at Liber CTH 1057, Page 108 *et seq.*) | Purchased on 10/8/2019 for $64,000 | Sold on 2/25/2020 for $154,500 | Greenspring Home Builders, LLC |
| 24 | 11905 Heather Drive, Hagerstown | a 0.265 +/- acre parcel of real property known as 11905 Heather Drive, Hagerstown, Washington County, Maryland (Election District 23; Tax Account No. 23-017016; Tax Map 0036; Parcel 0415; Lot 193) (being the property conveyed to Greenspring Home Builders, LLC by Substitute Trustee's Deed dated February 26, 2020 and recorded among the Washington County Land Records at Liber KRT 6200, Page 68 *et seq.*) | Purchased on 2/26/2020 for $61,000 | Sold on 3/__/2020 for $105,400 (deed is undated) | Greenspring Home Builders, LLC |

|  | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | | *EXHIBIT 3B: Sold Properties* | | | |
| 2 | **Property** | **Legal Description** | **Date of Acquisition and Purchase Price** | **Date of Sale and Amount of Proceeds** | **Defendant Entity Involved** |
| 25 | 13 E. Potomac Street, Williamsport | a 0.297 +/- acre parcel of real property known as 13 E. Potomac Street, Williamsport, Washington County, Maryland (Election District 02; Tax Account No. 02-010496; Tax Map 0561; Parcel 0292; Lot 199) (being the property conveyed to Greenspring Home Builders, LLC by Substitute Trustee's Deed dated October 19, 2020 and recorded among the Washington County Land Records at Liber KRT 6412, Page 92 *et seq.* ) | Purchased on 10/19/2020 for $59,000 | Sold on 11/27/2020 for $347,000 | Greenspring Home Builders, LLC |

# EXHIBIT 3C

|  | A | B | C | D |
|---|---|---|---|---|
| 1 | *EXHIBIT 3C: After Acquired--Held Properties* | | | |
| 2 | **Property** | **Legal Description** | **Date of Acquisition and Purchase Price** | **Defendant Entity Involved** |
| 3 | 404 Forest Drive, Fruitland | a 0.4591 +/- acre parcel of real property known as 404 Forest Drive, Fruitland, Wicomico County, Maryland (Election District 16; Tax Account No. 16-015598; Tax Map 0802; Parcel 1937; Block D; Lot 3) (being the property conveyed to Merganser Builders, LLC by Substitute Trustees' Deed dated August 16, 2021 and recorded among the Wicomico County Land Records at Liber JBM 4930, Page 168 *et seq.* ) | Purchased on 8/16/2021 for $95,000 | Merganser Builders, LLC |
| 4 | 513 Lincoln Street, Denton | a 0.0689 +/- acre parcel of real property known as 513 Lincoln Street, Denton, Caroline County, Maryand (Election District 03; Tax Account No. 03-004112; Tax Map 0103; Parcel 0692) (being the property conveyed to Federalsburg Builders, LLC by Substitute Trustee's Deed dated March 18, 2022, and recorded among the Caroline County Land Records at Liber TBL 1563, Page 456 *et seq.* ) | Purchased on 3/18/2022 for $85,000 | Federalsburg Builders, LLC |
| 5 | 131 Ruby Circle, Hurlock | a 0.2029 +/- acre parcel of real poperty known as 131 Ruby Circle, Hurlock, Dorchester County, Maryland (Election District 15; Tax Account No. 15-009853; Tax Map. 0401; Parcel 0174; Block D; Lot 6) (being the property conveyed to Federalsburg Builders, LLC by Substitute Trustee's Deed dated August 26, 2022 and recorded among the Dorchester County Land Records at Liber AJC 1770, Page 43 *et seq.* ) | Purchased on 8/26/2022 for $96,000 | Federalsburg Builders, LLC |
| 6 | Plantation Road, Crisfield (two unimproved lots, 08-167263 and 08-150672) | a 0.925 +/- acre of real property known as Plantation Road, Crisfield, Somerset County, Maryland (Election District 08; Tax Account No. 08-167263; Tax Map 0064; Parcel 0861) and a 0.987 +/- acre of real property known as Plantation Road, Crisfield, Somerset County, Maryland (Election District 08; Tax Account No. 08-150672; Tax Map. 0064; Parcel 0446) (being a portion of the property conveyed to Federalsburg Builders, LLC by Assignees' Deed dated June 24, 2021 and recorded among the Somerset County Land Records at Liber CTH 1164, Page 10 *et seq.* ) | Purchased on 6/24/2021 for $24,500 (for these properties and 26920 Plantation Road identified on Exhibit 3D) | Federalsburg Builders, LLC |
| 7 | 3436 Dudley Avenue, Baltimore | a 0.0389 +/- acre parcel of real property known as 3436 Dudley Avenue, Baltimore, Baltimore City, Maryland (Ward 26, Section 38, Block 5919, Lot 080) (being the property conveyed to Griffin Arms LLC by Substitute Trustees' Deed dated June 17, 2022 and recorded among the Baltimore City Land Records at Liber MB 25190, Page 482 *et seq.* ) | Purchased on 6/17/2022 for $88,000 | Griffin Arms LLC |

|   | A | B | C | D |
|---|---|---|---|---|
| 1 | *EXHIBIT 3C: After Acquired--Held Properties* | | | |
| 2 | **Property** | **Legal Description** | **Date of Acquisition and Purchase Price** | **Defendant Entity Involved** |
| 8 | 747 Chips Road, Baltimore | a 0.1922 +/- acre parcel of real poperty known as 747 Chips Road, Baltimore, Baltimore County, Maryland (Election District 03; Tax Account No. 03-0318012040; Tax Map 0078; Parcel 0477; Section 2; Block G; Lot 10) (being the property conveyed to Griffin Arms LLC by Substitute Trustees' Deed of Assignment dated March 29, 2022 and recorded among the Baltimore County Land Records at Liber JLE 46710, Page 217 *et seq.* ) | Purchased on 3/29/2022 for $199,000 | Griffin Arms LLC |
| 9 | 11577 Tomahawk Trail, Lusby | a 0.2436 +/- acre parcel of real poperty known as 11577 Tomahawk Trail, Lusby, Calvert County, Maryland (Election District 01; Tax Account No. 01-090224; Tax Map 045B; Parcel 0000; Section 1W; Lot 341) (being the property conveyed to Greenspring Home Builders, LLC by Deed dated April 19, 2022 and recorded among the Calvert County Land Records at Liber KPS 6271, Page 101 *et seq.* ) | Purchased on 4/19/2022 for $70,000 | Greenspring Home Builders, LLC |

# EXHIBIT 3D

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | *EXHIBIT 3D: After Acquired--Sold Properties* | | | | |
| 2 | **Property** | **Legal Description** | **Date of Acquisition and Purchase Price** | **Date of Sale and Amount of Proceeds** | **Defendant Entity Involved** |
| 3 | 4021 Wilsby Avenue, Baltimore | a 0.0289 +/- acre parcel of real property known as 4021 Wilsby Avenue, Baltimore, Baltimore City, Maryland (Ward 09, Section 01, Block 3913A, Lot 011) (being the property conveyed to Merganser Builders, LLC by Assignment dated February 11, 2021 and recorded among the Baltimore City Land Records at Liber MB 23731, Page 180 *et seq.*) | Purchased on 2/11/2021 for $76,000 | Sold on 10/13/2021 for $177,000 | Merganser Builders, LLC |
| 4 | 2010 Rudy Serra Drive, Unit B, Eldersburg | a condominium unit known as 2010 Rudy Serra Drive, Unit B, Eldersburg, Carroll County, Maryland (Election District 05; Tax Account No. 05-102944; Tax Map 0074; Parcel 0417; Lot UN B) (being the property conveyed to Federalsburg Builders, LLC by Trustees' Deed dated March 29, 2021 and recorded among the Carroll County Land Records at Liber HD 10287, Page 252 *et seq.*) | Purchased on 3/29/2021 for $162,000 | Sold on 4/2/2021 for $227,000 | Federalsburg Builders, LLC |
| 5 | 101 Commerce Street, Hurlock | a 0.165 +/- acre parcel of real property known as 101 Commerce Street, Hurlock, Dorchester County, Maryland (Election District 15; Tax Account No. 15-006978; Tax Map 0400; Parcel 0622; Lot 2) (being the property conveyed to Federalsburg Builders, LLC by Assignees' Deed dated August 16, 2021 and recorded among the Dorchester County Land Records at Liber AJC 1678, Page 469 *et seq.*) | Purchased on 8/16/2021 for $112,000 | Sold on 9/2/2021 for $201,000 | Federalsburg Builders, LLC |
| 6 | 8124 Bonaire Court, Silver Spring | a 0.037 +/- acre parcel of real property known as 8124 Bonaire Court, Silver Spring, Montgomery County, Maryland (Election District 13; Tax Account No. 13-02433434; Tax Map JN43; Parcel 0000; Block K; Lot 50) (being the property conveyed to Federalsburg Builders, LLC by Substitute Trustee's Deed dated October 20, 2022 and recorded among the Montgomery County Land Records at Liber KAB 66435, Page 164 *et seq.*) | Purchased on 10/20/2022 for $415,311.65 | Sold on 12/22/2022 for $570,000 | Federalsburg Builders, LLC |
| 7 | 14022 Vintage Lane, Accokeek | a 0.189 +/- acre parcel of real property known as 14022 Vintage Lane, Accokeek, Prince George's County, Maryland (Election District 05; Tax Account No. 05-3720570; Tax Map 0142; Parcel 0000; Block B; Lot 12) (being the property conveyed to Federalsburg Builders, LLC by Deed dated July 25, 2022 and recorded among the Prince George's County Land Records at Liber MEA 48031, Page 99 *et seq.*) | Purchased on 7/25/2022 for $479,000 | Sold on 7/29/2022 for $585,000 | Federalsburg Builders, LLC |
| 8 | 26920 Plantation Road, Crisfield (improved lot, 08-150680) | a 2.043 +/- acre parcel of real property known as 26920 Plantation Road, Crisfield, Somerset County, Maryland (Election District 08; Tax Account No. 08-150680; Tax Map 0064; Parcel 0445) (being a portion of the property conveyed to Federalsburg Builders, LLC by Assignees' Deed dated June 24, 2021 and recorded among the Somerset County Land Records at Liber CTH 1164, Page 10 *et seq.*) | Purchased on 6/24/2021 for $24,500 (for this property and the two unimproved lots on Plantation Road identified on Exhibit 3C) | Sold on 3/31/2022 for $180,000 | Federalsburg Builders, LLC |

|  | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | | *EXHIBIT 3D: After Acquired--Sold Properties* | | | |
| 2 | **Property** | **Legal Description** | **Date of Acquisition and Purchase Price** | **Date of Sale and Amount of Proceeds** | **Defendant Entity Involved** |
| 9 | 3768 Marvel Drive, Trappe | a 0.327 +/- acre parcel of real property known as 3768 Marvel Drive, Trappe, Talbot County, Maryland (Election District 03; Tax Account No. 03-148211; Tax Map 0301; Parcel 2178; Lot 78) (being the property conveyed to Federalsburg Builders, LLC by Substitute Trustee's Deed dated March 24, 2021 and recorded among the Talbot County Land Records at Liber KMD 2824, Page 146 *et seq.*) | Purchased on 3/24/2021 for $172,000 | Sold on 6/16/2021 for $311,000 | Federalsburg Builders, LLC |
| 10 | 7 Millrace Lane, Keedysville | a 0.428 +/- acre parcel of real property known as 7 Millrace Lane, Keedysville, Washington County, Maryland (Election District 20; Tax Account No. 19-007618; Tax Map 0722; Parcel 0202; Section A; Lot 12) (being the property conveyed to Federalsburg Builders, LLC by Assignees' Deed dated May 6, 2021 and recorded among the Washington County Land Records at Liber KRT 6621, Page 290 et seq.) | Purchased on 5/6/2021 for $235,000 | Sold on 5/12/2021 for $354,900 | Federalsburg Builders, LLC |
| 11 | 11909 Cash Valley Road, Corriganville | a 0.622 +/- acre parcel of real property known as 11909 Cash Valley Road, Corriganville, Allegany County, Maryland (Election District 20; Tax Account No. 20-010541; Tax Map 0014; Parcel 0181) (being the property conveyed to Rock Hall Builders LLC by Substitute Trustee's Deed dated February 18, 2021 and recorded among the Allegany County Land Records at Liber DDL 2649, Page 216 *et seq.*) | Purchased on 2/18/2021 for $99,500 | Sold on 3/31/21 for $175,000 | Rock Hall Builders LLC |
| 12 | 412 Georges Creek Boulevard, LaVale | a 0.303 +/- acre parcel of real property known as 412 Georges Creek Boulevard, LaVale, Allegany County, Maryland (Election District 29; Tax Account No. 29-007462; Tax Map 014V; Parcel 0086) (being the property conveyed to Rock Hall Builders LLC by Substitute Trustee's Deed dated June 3, 2022 and recorded among the Allegany County Land Records at Liber DDL 2789, Page 77 *et seq.*) | Purchased on 6/3/2022 for $78,883 | Sold on 6/10/2022 for $169,000 | Rock Hall Builders LLC |
| 13 | 10602 Gay Place, Upper Marlboro | a 0.373 +/- acre parcel of real property known as 10602 Gay Place, Upper Marlboro, Prince George's County, Maryland (Election District 11; Tax Account No. 11-1163963; Tax Map 0118; Parcel 0000; Section 7; Block 11; Lot 68) (being the property conveyed to Rock Hall Builders LLC by Substitute Trustee's Deed dated April 29, 2022 and recorded among the Prince George's County Land Records at Liber MEA 47680, Page 395 *et seq.*) | Purchased on 4/29/2022 for $284,000 | Sold on 6/13/2022 for $500,000 | Rock Hall Builders LLC |
| 14 | 4665 Cedar Place, Preston | a 0.46 +/- acre parcel of real property known as 4665 Cedar Place, Preston, Caroline County, Maryland (Election District 04; Tax Account No. 04-008839; Tax Map 0052; Parcel 0250; Lot 33) (being the property conveyed to Griffin Arms LLC by Substitute Trustee's Deed dated March 19, 2021 and recorded among the Caroline County Land Records at Liber TBL 1484, Page 170 *et seq.*) | Purchased on 3/19/2021 for $82,000 | Sold on 9/1/2021 for $229,000 | Griffin Arms LLC |

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | *EXHIBIT 3D: After Acquired--Sold Properties* | | | | |
| 2 | **Property** | **Legal Description** | **Date of Acquisition and Purchase Price** | **Date of Sale and Amount of Proceeds** | **Defendant Entity Involved** |
| 15 | 6826 Coleman Avenue, Salisbury | a 0.362 +/- acre parcel of real property known as 6826 Coleman Avenue, Salisbury, Wicomico County, Maryland (Election District 05; Tax Account No. 05-042674; Tax Map 0039; Parcel 0564; Block A; Lot 8) (being the property conveyed to Griffin Arms LLC by Substitute Trustee's Deed dated March 22, 2021 and recorded among the Wicomico County Land Records at Liber JBM 4822, Page 290 *et seq.* ) | Purchased on 3/22/2021 for $57,000 | Sold on 7/28/2021 for $213,000 | Griffin Arms LLC |
| 16 | 12452 White Horse Road, Lusby | a parcel of real property known as 12452 White Horse Lane, Lusby, Calvert County, Maryland (Election District 01; Tax Account No. 01-121545; Tax Map 045B; Parcel 0000; Section 6E; Lot 13) (being the property conveyed to Greenspring Home Builders, LLC by Limited Warranty Deed dated December 17, 2021 and recorded among the Calvert County Land Records at Liber KPS 6191, Page 61 *et seq.* ) | Purchased on 12/17/2021 for $122,500 | Sold on 4/5/2022 for $280,000 | Greenspring Home Builders, LLC |
| 17 | 508 Tony Tank Lane, Fruitland | a 0.712 +/- acre parcel of real property known as 508 Tony Tank Lane, Fruitland, Wicomico County, Maryland (Election District 16; Tax Account No. 16-004936; Tax Map 0047; Parcel 0002; Lot 90) (being the property conveyed to Greenspring Home Builders, LLC by Deed dated May 3, 2021 and recorded among the Wicomico County Land Records at Liber JBM 4854, Page 1 *et seq.* ) | Purchased on 5/3/2021 for $175,000 | Sold on 3/25/2022 for $399,999 | Greenspring Home Builders, LLC |
| 18 | 3808 Nassawango Drive, Snow Hill | a 1.13 +/- acre parcel of real property known as 3808 Nassawango Drive, Snow Hill, Worcester County, Maryland (Election District 02; Tax Account No. 02-002868; Tax Map 0046; Parcel 0083; Lot 5) (being the property conveyed to Greenspring Home Builders, LLC by Substitute Trustee's Deed dated August 26, 2021 and recorded among the Worcester County Land Records at Liber SRB 8155, Page 8 *et seq.* ) | Purchased on 8/26/2021 for $120,000 | Sold on 10/6/2021 for $229,900 | Greenspring Home Builders, LLC |

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | | *EXHIBIT 3D: After Acquired--Sold Properties* | | | |
| 2 | **Property** | **Legal Description** | **Date of Acquisition and Purchase Price** | **Date of Sale and Amount of Proceeds** | **Defendant Entity Involved** |
| 19 | 1105 Liberty Grove Road, Conowingo (Lot 1, 07-000863) | a 2.155 +/- acre of real property known as 1150 Liberty Grove Road, Conowingo, Cecil County, Maryland (Election District 07; Tax Account No. 07-000863; Tax Map 0016; Parcel 0226; Lot 1) (being a portion of the property conveyed to Conowingo Homes, LLC by Substitute Trustee's Deed dated October 10, 2022 and recorded among the Cecil County Land Records at Liber CMN 5249, Page 316 *et seq.* ) | Purchased on 10/10/2022 for $183,000 (for both properties) | Sold Lot 1 on 11/3/2022 for $350K | Conowingo Homes, LLC |
| 20 | Liberty Grove Road, Conowingo (Lot 2 (unimproved) , 07-138595) | a 1.021 +/- acre of real property known as Liberty Grove Road, Conowingo, Cecil County, Maryland (Election District 07; Tax Account No. 07-138595; Tax Map 0016; Parcel 0226; Lot 2) (being a portion of the property conveyed to Conowingo Homes, LLC by Substitute Trustee's Deed dated October 10, 2022 and recorded among the Cecil County Land Records at Liber CMN 5249, Page 316 et seq.) | | Sold Lot 2 on 1/30/2023 for $45,000 | |
| 21 | 298-N Canterbury Road, Bel Air | a condominium unit known as 298-N Canterbury Road, Bel Air, Harford County, Maryland (Election District 03; Tax Account No. 03-291677; Tax Map 0303; Parcel 0301; Lot 298N) (being the property conveyed to Conowingo Homes, LLC by Substitute Trustees' Deed dated December 12, 2022 and recorded among the Harford County Land Records at Liber MLK 15770, Page 403 *et seq.* ) | Purchased on 12/10/2022 for $151,000 | Sold on 1/12/2023 for $219,000 | Conowingo Homes, LLC |