**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| In re: | * | |
|     VINCENT L. ABELL | | |
| | * | |
|     Debtor. | | Case No. 13-13847-LSS |
| | * | Chapter 11 |
| | | |
| *   *   *   *   *   * | * | |
| | | |
| | * | |
| ROGER SCHLOSSBERG, | | |
| LIQUIDATING TRUSTEE | * | |
| 134 W Washington St, | | |
| Hagerstown, MD 21740, | * | |
| | | |
|     Plaintiff, | * | Adversary Proceeding No. 22-00223 |
| | | |
|     v. | * | |
| | | |
| VINCENT L. ABELL | * | |
| 10308 Bristolwood Court | | |
| Laurel, MD 20708, | * | |
| | | |
| MARTA BERTOLA | * | |
| 11 Stehle Street | | |
| Annapolis, MD 21401, | * | |
| | | |
| VINMAR LLC | * | |
| 2400 Virginia Avenue, NW, C-815 | | |
| Washington, DC 20037, | * | |
| | | |
|     SERVE ON:    Resident Agent | * | |
|     Marta Bertola | | |
|     11 Stehle Street | * | |
|     Annapolis, MD  21401 | | |
| | * | |

1

MERGANSER BUILDERS, LLC                     *
11 Stehle Street
Annapolis, MD 21401,                        *

      SERVE ON:   Resident Agent    *
      Marta Bertola
      3337 Thomas Point Road         *
      Annapolis, MD 21403
                                     *

GRIFFIN ARMS LLC
11 Stehle Street                            *
Annapolis, MD 21401,

                                     *
      SERVE ON:   Resident Agent
      Marta Bertola                  *
      3337 Thomas Point Road
      Annapolis, MD  21403           *

ROCK HALL BUILDERS LLC                      *
13901 Belle Chasse Blvd., Unit 216
Laurel, MD 20707,                           *

      SERVE ON:   Resident Agent    *
      Maria Maya
      13901 Belle Chasse Blvd.       *
      Unit 216
      Laurel, MD 20707               *

GREENSPRING HOME BUILDERS, LLC *
13901 Belle Chasse Blvd., Unit 216
Laurel, MD 20707,                           *

      SERVE ON:   Resident Agent    *
      Ronald B. Edlavitch
      305 Casey Lane                 *
      Rockville, MD  20850
                                     *

FEDERALSBURG BUILDERS, LLC
13901 Belle Chasse Blvd., Unit 216          *
Laurel, MD 20707,

                                     *
      SERVE ON:   Resident Agent
      Ronald B. Edlavitch            *
      305 Casey Lane
      Rockville, MD  20850           *

4892-5999-8812, v. 1

CONOWINGO HOMES, LLC                    *
c/o Registered Agents Inc.
5000 Thayer Center, Suite C,            *
Oakland, MD, 21550, and
                                        *
    SERVE ON:   Resident Agent
    Registered Agents Inc.          *
    5000 Thayer Center, Suite C
    Oakland, MD  21550              *

SEA HOMES LLC                           *

    SERVE ON: William C. Johnson, Jr. *
    The Johnson Law Group, LLC
    Counsel for SEA Homes, LLC      *
    6305 Ivy Lane, Suite 630
    Greenbelt, Maryland 20770       *

    Defendants                      *

*     *     *     *     *     *     *     *     *     *     *     *     *

## THIRD AMENDED COMPLAINT

Plaintiff Roger Schlossberg, as Liquidating Trustee, brings this complaint for declaratory and equitable relief against Defendants.

## I.  THE PARTIES

1.      Plaintiff Roger Schlossberg is the Liquidating Trustee ("Liquidating Trustee") under the terms of the Confirmed Chapter 11 Trustee's Plan of Liquidation of the Estate of Vincent L. Abell ("Plan").  The Chapter 11 Trustee proposed the Plan in the above-captioned chapter 11 bankruptcy case ("Bankruptcy Case") to create and implement the Liquidation Trust for the benefit of the Beneficiaries. The Bankruptcy Court confirmed the Plan and approved the formal creation of the Liquidation Trust on January 14, 2021.  During the course of the Bankruptcy Case, the Liquidating Trustee served as Abell's Chapter 11 Trustee ("BK Trustee").  The Effective Date of the Plan is January 28, 2021 and the Liquidation Trust was established on that date. *Exhibit 1* is a

4892-5999-8812, v. 1

copy of the Plan. *Exhibit 2* is a true and authentic copy of the Liquidation Trust Agreement With Respect to the Estate of Vincent L. Abell ("Trust Agreement").  All terms used in this complaint and not defined herein shall have the same meaning set forth in the Plan and Liquidation Trust Agreement.

2.    Defendant Vincent L. Abell ("Abell" or "Debtor") is the Debtor in the Bankruptcy Case.  He is also the Debtor under the Plan and the Liquidation Trust.

3.    Defendant Marta Bertola ("Bertola") is Abell's ex-wife from whom he ultimately obtained a divorce during the course of the Bankruptcy Case.  Although Abell and Bertola have led separate personal lives for many years (aside from their joint support and rearing of their now adult children), they never ceased their joint "business operations" and their unrelenting concealment of Abell's assets from his creditors, the Court, the BK Trustee and now the Liquidating Trustee.  After the BK Trustee obtained judgments against Abell and Bertola for sanctions, Bertola, too, concealed her assets from the BK Trustee and now the Liquidating Trustee. As explained more fully below, Bertola has actively conspired with and is aiding and abetting Abell in his continuing concealment of assets that are Property (as defined below) of the Liquidation Trust and his endless fraud on creditors, and she is the recipient of fraudulently conveyed assets.

4.    The following entity defendants are collectively referred to as "Entity Defendants":

a.    Vinmar, LLC ("Vinmar") is a Maryland limited liability company formed by Abell or by Abell and Bertola jointly during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust.  Abell, and Abell and Bertola jointly, use Vinmar, and likely multiple other similar entities (in addition to those listed below), to defraud

creditors, hide assets, and to obscure Abell's true beneficial ownership of land acquired by Vinmar.

b. Merganser Builders, LLC ("Merganser") is a Maryland limited liability company formed by Abell or by Abell and Bertola jointly during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust.  Abell, and Abell and Bertola jointly, use Merganser to defraud creditors, hide assets, and to obscure Abell's true beneficial ownership of land acquired by Merganser.

c. Griffin Arms LLC ("Griffin Arms") is a Maryland limited liability company formed by Abell or by Abell and Bertola jointly during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust.  Abell, and Abell and Bertola jointly, use Griffin Arms to defraud creditors, hide assets, and to obscure Abell's true beneficial ownership of land acquired by Griffin Arms.

d. Rock Hall Builders LLC ("Rock Hall") is a Maryland limited liability company formed by Abell  jointly during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust. Abell uses Rock Hall to defraud creditors, hide assets, and to obscure Abell's true beneficial ownership of land acquired by Rock Hall.

e. Greenspring Home Builders, LLC ("Greenspring") is a Maryland limited liability company formed by Abell during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust.  Abell uses Greenspring to defraud creditors, hide assets,

5

and to obscure Abell's true beneficial ownership of land acquired by Greenspring.

f.  Federalsburg Builders, LLC ("Federalsburg") is a Maryland limited liability company formed by Abell during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust. Abell uses Federalsburg to defraud creditors, hide assets, and to obscure Abell's true beneficial ownership of land acquired by Federalsburg.

g.  Conowingo Homes, LLC ("Conowingo") is a Maryland limited liability company formed by Abell.  Abell uses Conowingo to defraud creditors, hide assets, and to obscure Abell's true beneficial ownership of land acquired by Conowingo.

h.  SEA HOMES LLC ("SEA") is, upon information and belief a Wyoming limited liability company formed by Abell or by Abell and Bertola jointly during the pendency of the Bankruptcy Case before the Effective Date of the Plan and the establishment of the Liquidation Trust.  Upon information and belief, Abell has used SEA to defraud creditors, hide assets, and  obscure Abell's true beneficial ownership of land acquired by SEA. SEA, according to Abell, has ownership interest in several other Entity Defendants.

5.     The Entity Defendants are Property of the Bankruptcy Estate (as defined below) and, therefore, are Liquidation Trust Assets (as defined below) owned by the Liquidation Trust. Abell, with the assistance of Bertola, is attempting to conceal each of the Entity Defendants from the Liquidating Trustee and, in turn, from Abell's creditors and the Court.  In many cases, when he formed the Entity Defendants, he made sure not to list himself as a member of the LLC and,

instead, got someone else to be named as the nominal owner to create the illusion that Abell is not the real owner.  In so doing, Abell has attempted to obscure from the Liquidating Trustee and creditors his true, beneficial ownership interest in the Entity Defendants.  Thus, notwithstanding who Abell may have gotten to be named or listed on paper as the nominal owner of any of the Entity Defendants, the true beneficial owner of the Entity Defendants is Abell, or Abell and Bertola jointly or in common, and each Entity Defendant is an alter-ego entity of Abell, or of Abell and Bertola jointly, being deployed by him and/or them to frustrate the Liquidating Trustee and Abell's creditors as part of their fraud and concealment scheme, which they began years ago. Abell, or Abell and/or Bertola jointly, have used and continue to use the Entity Defendants to purchase, hold, and sell real property as part of Abell's and/or their respective scheme to conceal assets from the Liquidating Trustee.

6.    Through the façade of the Entity Defendants, Abell has acquired properties that purport to have been titled to the Entity Defendants ("Subject Properties").  The Subject Properties that the Liquidating Trustee has identified as of the date of this Complaint, can be organized into four categories:

a.    Properties currently in the name of the Entity Defendants that were acquired during the pendency of the Bankruptcy Case and before the Effective Date of the Plan and establishment of the Liquidation Trust ("Currently Held Properties").  The now known Currently Held Properties are fully identified on the chart attached as *Exhibit 3A*.

b.    Properties that have been sold, but which were acquired in the name of the Entity Defendants during the pendency of the Bankruptcy Case and before the Effective Date of the Plan and establishment of the Liquidation Trust ("Sold Properties").  The now known Sold Properties are fully identified on chart attached as *Exhibit 3B*.

4892-5999-8812, v. 1

c.    Properties currently in the name of the Entity Defendants that were acquired after the Effective Date of the Plan and establishment of the Liquidation Trust ("After Acquired—Held Properties").  Upon information and belief, the After Acquired—Held Properties were acquired with funds belonging to but concealed from the Liquidation Trust.  The now known After Acquired—Held Properties are fully identified on the chart attached as *Exhibit 3C*.

d.    Properties acquired in the name of the Entity Defendants after the Effective Date of the Plan and establishment of the Liquidation Trust, but which have since been sold ("After Acquired—Sold Properties").  Upon information and belief, the After Acquired—Sold Properties were acquired with funds belonging to but concealed from the Liquidation Trust.  The now known After Acquired—Sold Properties are fully identified on the chart attached as *Exhibit 3D*.[1]

## II.  LIQUIDATING TRUSTEE'S CLAIMS AND AUTHORITY TO BRING THIS ACTION

### A.  Summary of Claims

7.    In this action, the Liquidating Trustee seeks the following relief:

a.    Entity Defendants.  A declaratory judgment that the Entity Defendants are Property and Liquidation Trust Assets of and owned by the Liquidation Trust;

b.    Currently Held Properties.  A declaratory judgment that the Currently Held Properties are Property and Liquidation Trust Assets of and owned by the Liquidation Trust;

---

[1] Because discovery has not yet commenced in this action and because Abell and Bertola are skilled at concealing assets and have a long history of spoliating evidence and refusing to comply with discovery requests (as detailed below), the Liquidating Trustee has not identified all properties and assets that are properly the subject of this action.  As a result, each of the defined terms in this Paragraph 6 include all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3A, 3B, 3C, and 3D* and are hereafter added to those exhibits. Had they not been concealed, all properties currently (and still to-be identified) in categories 3A and 3B would have been included in the Trustee's Original Adversary Proceeding (defined below in para. 7.f.ii.).

4892-5999-8812, v. 1

c.      <u>Sold Properties</u>.   A declaratory judgment that the Sold Properties were Property and Liquidation Trust Assets of and owned by the Liquidation Trust and, therefore, the proceeds from the sales of the Sold Properties should have been, but were not, paid into the Liquidation Trust.   Accordingly, the Liquidating Trustee seeks money judgments jointly and severally against Abell, Bertola, and all appropriate Entity Defendants in the amount of such proceeds.

d.      <u>After Acquired—Held Properties</u>.   A declaratory judgment that the After Acquired—Held Properties were acquired with funds belonging to but concealed from the Liquidation Trust and, as such, are Property and Liquidation Trust Assets of and owned by the Liquidation Trust.

e.      <u>The After Acquired—Sold Properties</u>.   A declaratory judgment that the After Acquired—Sold Properties were acquired with funds belonging to but concealed from the Liquidation Trust and that the proceeds from the Sold Properties should have been, but were not, paid into the Liquidation Trust.   Accordingly, the Liquidating Trustee seeks money judgments jointly and severally against Abell, Bertola, and all appropriate Entity Defendants in the amount of such proceeds.

f.      <u>Additional/Alternative Relief</u>.   In addition and/or in the alternative to the relief described above, the Liquidating Trustee seeks declarations that:

i.      each Entity Defendant has no independent identity distinct from Abell or from Abell and Bertola jointly or in common, because each Entity Defendant is the alter-ego of Abell or of Abell and Bertola jointly and, therefore, each Entity Defendant is an illegitimate entity that lost or never had any of the personal liability protection attributes of a properly formed limited liability company in good standing under Maryland or any other state's law; and

9

ii.    consequently, Abell or Abell and Bertola jointly or in common is/are the beneficial, actual owner(s) of the Subject Properties that purport to be owned by any Entity Defendant and, therefore, such properties are encumbered by the judgment liens created by a recorded, monetary judgment that the Liquidating Trustee obtained in this Court on July 15, 2016 in the principal amount of $602,232.20 against Abell, Bertola, and an Abell entity, jointly and severally.  *See* AP ECF 443 in *Roger Schlossberg, Ch. 11 Trustee v. Vincent L. Abell, et. al.*, Adv. Proc. No. 14-00417 ("Original Adversary Proceeding").[2]  The Plan defines the judgment and related orders as the "Spoliation Judgments."  Plan, §1.01.82.

g.    a money judgment for the proceeds from the sale of Sold Properties and After-Acquired Sold Properties, which sales flow from the unauthorized use of funds and property that were property of the Bankruptcy Estate and/or Liquidation Trust (11 U.S.C. §§ 549 and 550).

**B.  The Plan and the Liquidating Trust**

8.    The Plan expressly authorizes the Liquidating Trustee to bring this action and assert the claims set forth in this complaint.  This Court confirmed the Plan (BK Doc. 1286) on January 14, 2021 with a Plan Effective Date of January 28, 2021.  *See* BK Doc. 1326.

9.    The Liquidation Trust was created pursuant to the Plan "for the primary purposes of monetizing, collecting, holding, administering, distributing and liquidating the Liquidation Trust Assets and/or Property for the benefit of the Beneficiaries[3] . . . ."

---

[2] Citations to papers filed in the Original Adversary Proceeding are cited by reference to the document's "ECF" number in the following format:  "AP ECF ___."  Citations to papers filed in the Bankruptcy Case are cited by reference to the document's "Doc." Number in the following format:  "BK Doc. ___."

[3] "Beneficiaries" are "Holders of Allowed Claims under the Plan, or any successors to such Holders' Allowed Claims."  *See* Trust Agreement, *Exhibit 2* at § 1.1.2.

4892-5999-8812, v. 1

10.     Under the Plan, the term "'Property' means, as to the Debtor, any and all assets or property of the Debtor or Estate, of any kind, nature or description whatsoever, real or personal, tangible or intangible, as defined in section 541 of the Bankruptcy Code."  Plan, § 1.01.72.  The term "'Estate' means the estate of the Debtor created by operation of law on the Petition Date pursuant to section 541 of the Bankruptcy Code."  Plan, § 1.01.37.  Property of the Estate includes "[a]ny interest in property that the estate acquires after the commencement of the case" as set forth in §547(a)(7), including the Entity Defendants, the Subject Properties, and any other assets the Debtor so acquired.

11.     On the Effective Date, *i.e.*, January 28, 2021, the Liquidation Trust was established for purposes of administering all of the Property, and all of the Property automatically vested in the Liquidation Trust and became "Liquidation Trust Assets" on that date.  Plan, § 5.02(a) and (b)(i).

12.     Any Property in which Abell had any right, title, or interest before or during the pendency of the Bankruptcy Case is a Liquidation Trust Asset of the Liquidation Trust and is, therefore, subject to the Liquidating Trustee's plenary authority to control the Property for its ultimate liquidation and distribution.  Plan, § 5.05.

13.     The Liquidating Trustee's powers include the power "to prosecute, compromise, and/or settle Claims and Causes of Action . . . ."  Plan, § 5.05(c)(iv).  "'Cause(s) of Action' means any and all of the following owned by the Debtor, the Trustee or the Estate: actions, proceedings, obligations, judgments (**including, without limitation, the Spoliation Judgments** and any other judgments obtained by the Trustee), debts, accounts, claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, causes of action (including against insiders), choses in action, controversies, agreements, promises, rights to legal remedies,

rights to equitable remedies, rights to payment and claims whatsoever (and any rights to any of the foregoing), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, then existing or thereafter arising, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, including, without limitation, any recharacterization, subordination, Avoidance Action, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any similar provisions of applicable state or federal law. Causes of Action constitute Property as defined herein." Plan, §1.01.16 (emphasis added).

14.     Consequently, the Liquidating Trustee has full power and authority to bring this action and to seek the relief sought in this complaint.

### III.    JURISDICTION AND VENUE

15.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. §157(a), United States District Court Local Rule No. 402, Bankr. Rule 7001. Further, this adversary proceeding is a "core proceeding" as contemplated in 28 U.S.C. §157(b)(2)(A),(E), (K), (L), and (O).  Alternatively, this Court has jurisdiction pursuant to 28 U.S.C. § 157(c)(1).

16.     This adversary proceeding seeks declaratory relief, injunctive relief, and other forms of equitable relief based upon state law claims.  These claims against Abell, against Bertola, against Abell and Bertola jointly, and against the Entity Defendants arise out of matters related to the Bankruptcy Case and its administration and this Court also has supplemental jurisdiction over these matters under 28 U.S.C. § 1367.

17.    Venue is proper in this district pursuant to 28 U.S.C. § 1409 because: (i) the chapter 11 case to which this action is related is the captioned Bankruptcy Case before this Court; and (ii) none of the exceptions set forth in 28 U.S.C. § 1409 applies to this action.

18.    In accordance with Local Rule 7012-1(b), the Liquidating Trustee states that he consents to entry of final orders or judgments by the Bankruptcy Judge.

## IV.    FACTS

### A. Abell and Bertola's Long-Standing History of Fraud

19.    Abell and Bertola — through various sham entities, their children and other family members, and close associates — have actively attempted to conceal tens of millions of dollars' worth of properties and assets from this Court, the Estate, Abell's *bona fide* creditors, and now the Liquidation Trust. As described in a 43-count complaint against Abell, Bertola, and others in the Original Adversary Proceeding (AP ECF 7), Abell has implemented a continuing scheme to camouflage his ownership of ongoing businesses and scores of properties and assets, manufacturing hundreds of phony transactions to create the appearance, on paper, that Abell is not the true owner, when in fact he is.

20.    In the court systems of Maryland and the District of Columbia, Abell is an adjudicated fraudster. From the outset of his real estate career, Abell used real estate transactions to defraud vulnerable people of limited means. In connection with federal charges related to 24 "deals" that Abell brokered in the 1980s, Abell pled guilty to making a false statement on a federal form and was sentenced to six months in prison. The government noted in its January 30, 1989 sentencing memorandum that Abell used straw purchasers to create the illusion that he had sold a property, but that Abell would maintain ownership and control of the property. Specifically, the government commented that his "use of straws to conceal assets and circumvent rent control

13

regulations is particularly venal."  As detailed in this complaint, such conduct continues to this day.

21.      In the years before he filed his bankruptcy petition in the Bankruptcy Case, Abell expanded his real estate empire through repeated "mortgage rescue" scams that preyed on elderly and other vulnerable members of the community.  Pursuant to Abell's scheme, Abell (or one of his agents) approached homeowners who were behind on their mortgage payments and on the brink of foreclosure.  Abell promised to pay off the outstanding mortgages in return for his victims' agreement to pay him back.  In reality, however, the documents that Abell and his former wife, Bertola (a suspended lawyer), prepared were largely illegitimate loan documents which  Abell and Bertola used to trick their victims into unwittingly deeding their homes to Abell and becoming his tenants.  The victims were then required to make significant "rental" payments to Abell to keep living in their homes.  And when his victims were eventually unable to pay that rent (as Abell counted on), Abell evicted them, took possession of their homes, and rented the homes to new tenants or sold the homes for large profits.

22.      Those victims who were fortunate enough to retain counsel obtained significant judgments for both compensatory and punitive damages against Abell and his business, defendant Modern Management Company ("Modern Management").  Many of those victims are now the Beneficiaries of the Liquidation Trust for whom this lawsuit is brought.

23.      For example, a jury found that Abell lured one of his victims, Maria Wilson ("Wilson"), into believing that he was paying off the mortgage on her house in return for her agreement to make payments on a significant loan.  Instead, Abell deceived Wilson into selling her house for a small price and becoming bound to a lease with unaffordable rent.  When she eventually was unable to pay her "rent," Abell evicted her.  On April 13, 2007, Wilson obtained a

judgment against Abell and Modern Management for compensatory and punitive damages totaling nearly $2 million.

24.     Likewise, in 2006, the Circuit Court for Prince George's County entered a judgment for Tommie Mae Smith for $510,968.28, including $500,000 in punitive damages.  Similarly, the Circuit Court for Montgomery County entered a series of judgments in favor of Mark Cissel, Karen Cissel, and Hedwig Cissel for a total of $60,000 in compensatory damages, $85,000 in punitive damages, and $328,780.01 in attorneys' fees.

25.     As a result of those lawsuits, Abell's fraudulent enterprise became the subject of several stinging judicial opinions.  As the Hon. Stephen Platt, then of the Circuit Court for Prince George's County, observed in *Smith v. Abell*:

> The Defendant, Mr. Abell's tortious conduct in this case constitutes the most reprehensible actions this Court has ever observed in his 28 years on the Orphans Court, the District Court, and the Circuit Court save only the physical violence and death routinely visited on the Court's conscience in criminal cases.  On a scale of one to ten as to its reprehensibility, one being slightly reprehensible and ten being super reprehensib[le] . . . the Court rates this an eleven.  If the Defendant sleeps at night, the Court can't help but wonder how.

26.     Similarly, in an opinion affirming a judgment against Abell in the Circuit Court for Montgomery County, former Chief Judge Wilner of the Court of Special Appeals of Maryland wrote that Abell had taken "chutzpah to new heights."

27.     There are no fewer than 20 court orders sanctioning Abell and/or Bertola for discovery abuses and directing them to comply with discovery obligations, including an order incarcerating Mr. Abell for contempt for his failure to comply with post-judgment discovery in aid of collection. Rather than complying with post-judgment discovery, Abell chose instead to be incarcerated for nearly six months until the Superior Court for the District of Columbia finally

15

concluded that no further purpose of the contempt could be served — regardless, Abell never complied.

28.    In addition to the multiple cases and judgments against Abell in the Maryland courts, as of the date the Original Adversary Proceeding was filed, Abell had been a party in more than 130 different cases in the District of Columbia.  An Order of Contempt entered by the Superior Court for the District of Columbia ("3/29/13 Order") summarized Abell's infamous history of fraud and contempt of court orders and describes Abell as a "highly experienced litigant."  That order culminates in the determination that incarceration was the only remedy for Abell's refusal to provide discovery given Abell's flagrant contemptuous conduct.

29.    When a few of his victims — who later became judgment creditors, Abell's bankruptcy creditors and now Beneficiaries — began closing in on Abell, Abell applied the same fraudulent practices to avoid his debts and conceal his assets from them.  Although elaborate in many respects, the goal of his fraudulent plan has been and remains simple: To avoid paying his victims by hiding his assets and retaining everything for himself.

30.    Abell's plan had two basic parts.  The first part involved the orchestration of sham transactions, ranging from simple transactions where Abell uses friends or family members as "pass-throughs" or "straw man" purchasers to conceal his true ownership in the assets, to more elaborate schemes, involving a series of cleverly devised, but ultimately phony, transactions designed to make it appear that Abell is not the true owner of his assets and holdings.

31.    In one category of sham transactions, Abell purports to grant liens upon his real estate (or real estate titled in the names of others on his behalf) to insiders, family members/relatives, friends and related entities (that he controls) on account of sham loans — "loans" where in fact there is no underlying debt obligation and nothing actually owed.  These

4892-5999-8812, v. 1

purported liens are always in favor of a person or entity that is a confederate of Abell.  The purpose of such liens is to capture — for Abell's benefit — equity in an asset to the detriment of Abell's known and unknown actual creditors.  Through these wide-ranging scams, Abell's objective is to put his assets and money out of reach of creditors and to disguise himself as a man of only modest holdings.

32.    In the same manner, Abell has attempted to obscure his interest in individual properties.  For example, two weeks after Wilson obtained her substantial judgment, Abell purported to convey a Silver Spring property to Bertola for no consideration.  Six weeks later, Bertola sold the same property to a third party for $325,000.  None of that money was used to pay Wilson.

33.    During the very same time period, Abell ginned up "loans" he purportedly received from several other defendants, including Fela Bertola (Abell's mother-in-law), Maria Antonopoulis (a family friend) and several Abell-related entities.  The loans, however, were shams.  These defendants did not provide funds to Abell; rather, the "loans" were engineered by Abell after-the-fact as an excuse to justify payments to his friends and associates, who had agreed to hold funds for him in a form that Abell's bona fide creditors, like Wilson, could not reach.

34.    None of the proceeds in these transactions, or the dozens of transactions just like them, flowed to any of Abell's victims.  Money traveled in and out of bank accounts that were only open for a matter of days, and Abell and Bertola refused to explain where the money had gone.  As the Superior Court for the District of Columbia observed, Wilson "is totally unable to collect her judgment [against Abell] because of the intricate and ongoing ways in which Abell has hidden his assets and hidden information about his financial empire."  3/29/13 Order, at 30.   "He is using every imaginable approach to avoid payment of the money judgment in this case."  *Id.* at 28.  All

the while, Abell, his friends, and his family members continue to enjoy the proceeds of his fraud. Another tactic that Abell has employed in his attempt to put assets out of reach of creditors is to title entities or properties in the name of purported retirement or pension plan, asserting they are exempt from collection by creditors.

35.    The second part of Abell's fraudulent plan was his filing of the Bankruptcy Case. Naturally, the assets that he has concealed from his victims — assets that appear on paper not to belong to him, but in which he retained a secret beneficial interest — were not listed on his Statement of Financial Affairs or on the schedules filed in the Bankruptcy Case.  Those assets generated substantial revenues.  Abell directed that those revenues be paid to his friends and family members, instead of allowing that money to flow into the bankruptcy estate.

36.    As to the assets that he did schedule in the Bankruptcy Case, Abell either: (i) misrepresented the nature of his interest in the property; or (ii) caused them to be "liened up" with bogus mortgages purportedly held by friends and family members.  In the case of the former, Abell fraudulently misrepresented that he held multiple properties jointly with his then wife, Bertola, as tenants-by-the-entirety when in fact the properties are owned and controlled solely by him.  In the case of the latter, Abell manufactured false liens in an attempt to ensure that the proceeds from the sales of his assets would flow to his friends and family members and away from his creditors. Indeed, Abell went so far as to concoct false proofs of claim from his friends and family members, some of which Bertola prepared and signed, purportedly as the "creditor's authorized agent."  Abell then personally delivered these false proofs of claim to the federal courthouse in Baltimore after his failed attempt personally to file them in Greenbelt.

37.    Thus, Abell attempted to put millions of dollars' worth of assets and income from his real estate empire out of the reach of the BK Trustee, this Court, Abell's creditors and now the

Liquidating Trustee.  Abell's endgame was to obtain a discharge (which the Court denied) without ever subjecting the vast majority of his holdings to the claims of his legitimate creditors.

38.      Because "Abell uses other persons and other entities to hide information," 3/29/13 Order at 29, those other persons and entities — specifically, Bertola and the Entity Defendants — are necessarily defendants in this action.  They are Abell's co-conspirators and active aiders and abettors of Abell's fraudulent enterprise.

**B.  This Court's Terminating Sanctions and the Spoliation Judgments**

39.      Abell's and Bertola's fraudulent conduct and concealment of assets were on full display in the Original Adversary Proceeding.  During discovery in the Adversary Proceeding, the BK Trustee pursued discovery of documents and electronically-stored information ("ESI") pertaining to Abell's real estate empire.  The BK Trustee uncovered that, while his lawyers were pursuing discovery, Abell and Bertola were, behind the scenes, actively and intentionally destroying massive stores of evidence for the purpose of blocking the BK Trustee and the Court from uncovering Abell's assets and bringing them into the Estate.

40.      When the Trustee first discovered that Bertola and Abell were spoliating evidence, the BK Trustee promptly filed motions for sanctions.  After extensive briefing and discovery on the issue of the scope and methods of the spoliation, this Court conducted a one-week evidentiary hearing where several witnesses (including forensic experts) testified and hundreds of documents were moved into evidence. The evidence overwhelmingly demonstrated that Bertola — with Abell's knowledge and consent — engaged in systematic efforts to destroy evidence of their real estate holdings and to cover the tracks of their spoliation.

41.      In a 51-page Memorandum of Decision issued on April 14, 2016 (AP ECF 326), Judge Catliota found, in no uncertain terms, that "Ms. Bertola, with Mr. Abell's knowledge and

acquiescence, intentionally, willfully and repeatedly destroyed discoverable information for the specific purpose of keeping it from the [BK] Trustee and Ms. Wilson. The court also finds that, in doing so, Ms. Bertola acted on behalf of herself, Mr. Abell, American Trust, and other Abell-related entities." *Id.* at 2.  The Court found that "Ms. Bertola stalled the turnover of ESI again, while she continued to destroy evidence, with the knowledge that she had a continued legal duty to preserve." *Id.* at 27-89.  Indeed, Judge Catliota found that she destroyed ESI "on at least sixteen different occasions and on several devices." *Id.* at 28.  Judge Catliota held:

> Ms. Bertola's destruction of ESI was intentional and in bad faith, and done for the express purpose of depriving the Trustee, Ms. Wilson, and other claimants of evidence. Ms. Bertola ran the Wipe Free Space feature before the two computer imagings, and at other times, to destroy data. She did so to ensure that the deleted information would be lost forever. She did so as part of an intentional effort to prevent the ESI from being retrieved in discovery. This is established by both direct evidence and substantial circumstantial evidence. It is also established by the lack of credibility in Ms. Bertola's explanation.

*Id.* at 36.  "Mr. Abell and Ms. Bertola have made a mockery of the judicial process." *Id.* at 47. Judge Catliota found that Mr. Abell has "distain for the judicial process," and Ms. Bertola "holds little regard for the judicial process." *Id.*

42.    As a result of their egregious misconduct, Judge Catliota granted the BK Trustee's request for terminating sanctions, entering judgments against them pursuant to the BK Trustee's complaint that resulted in hundreds of properties — properties that Abell had titled in names of sham entities or confederates the paper work for which was often prepared by Bertola in furtherance of their attempt to conceal assets from this Court — being deemed property of the Estate.

43.    In addition, Judge Catliota granted judgment for the BK Trustee under the count of the BK Trustee's complaint that sought this Court's denial of the Debtor's Discharge pursuant to

20

11 U.S.C. § 727(a)(2) through (5) because Abell, with the intent to hinder, delay, and/or defraud his creditors and the BK Trustee, concealed property from the Estate.

44.     Moreover, the Court awarded attorneys' fees and costs in favor of the BK Trustee and against Bertola and Abell, jointly and severally, which is embodied in the above-described Spoliation Judgments entered by this Court on July 16, 2016.  The Spoliation Judgments remain open and unsatisfied, and continue to accrue a legal rate of interest.

**C.  The Entity Defendants and the Subject Properties**

45.     The Spoliation Judgments, the denial of Abell's discharge, the Trustee's recovery and liquidation of nearly $20 Million of Abell's mostly concealed assets and their direct knowledge that the Liquidation Trust was designed to allow the Liquidating Trustee to recover the assets described in this Complaint have, incomprehensibly, not deterred Abell and Bertola.  To the contrary, Abell and Bertola have continued their fraudulent scheme to defraud creditors and conceal assets from the Estate and from the Liquidation Trust.  Indeed, the Liquidating Trustee has discovered that, after the filing of the instant action, while Abell was in communications with undersigned counsel seeking a stay of his time for answering the complaint in this action and for responding to state court discovery requests, he was actively selling property and pocketing the money right under the nose of the Liquidating Trustee.

46.     Each of the Entity Defendants is a sham entity that Abell, or Abell and Bertola jointly, formed to conceal the Subject Properties and all proceeds derived therefrom (and potentially other assets) from the BK Trustee and now the Liquidating Trustee.

47.     For example, Vinmar, which was formed on January 27, 2020.  The entity's name is a combination of the first three letters of Abell's and Bertola's first names, *i.e.*, "Vin" for **Vin**cent Abell and "mar" for **Mar**ta Bertola.  Recently, Bertola has asserted that "Vin" does not refer to

Abell, but instead refers to their son Vincent, Jr.  Although "Vin" does refer to Abell, her false assertion is consistent with their practice of using their children as "strawmen" to hide Abell's true beneficial interest in the entity.

48.     Each Entity Defendant was a device that Abell used to acquire the Subject Properties, while concealing that he is the true owner of the Subject Properties.  The Currently Held Properties (identified in *Exhibit 3A*) and the Sold Properties (identified in *Exhibit 3B*) were acquired by their corresponding Entity Defendants while the Bankruptcy Action was pending and before establishment of the Liquidation Trust.  As such, the Currently Held Properties rightfully belong to the Liquidation Trust and the proceeds of the Sold Properties must be paid into the Liquidation Trust.

49.     Upon information and belief, using the proceeds from the sale of the Sold Properties and other funds belonging to the Liquidation Trust, Abell, through the corresponding Entity Defendants, acquired the After Acquired—Held Properties (identified in *Exhibit 3C*) and the After Acquired—Sold Properties (identified in *Exhibit 3D*).  As such, the After Acquired—Held Properties are Property of the Estate and, therefore, a Liquidation Trust Asset.  Unfortunately, although Abell was able to sell the After Acquired—Sold Properties, he never paid the proceeds of such sales into the Liquidation Trust where they belong.  Hence, those proceeds must be paid into the Liquidation Trust.

50.     At bottom, Abell and Bertola are using the Entity Defendants as part of the same old playbook they have employed for close to two decades to hide Abell's assets from creditors, including the Liquidating Trustee.

51.     Although the Subject Properties are or were nominally titled to various Entity Defendants (as set forth in *Exhibits 3A*, *3B*, *3C*, and *3D*), in actuality the entities are nothing more

than the alter egos of Abell (or Abell and Bertola jointly) and, consequently, it is *Abell (or Abell and Bertola jointly)* who acquired those properties (and received the cash proceeds from the sales of any such properties).  Abell, or Abell and Bertola jointly, exercise(s) complete dominion and control over each entity and its operations.  None of the entities has an independent identity distinct from that of Abell or of Abell and Bertola jointly.  Abell and Bertola have disregarded any organizational formalities with respect to the entities, just as they have done with all of their other sham entities which became Property of the Estate pursuant to the Spoliation Judgments.  Abell or Abell and Bertola jointly exercise complete control over and guide every aspect of the Entity Defendants and such control and operation has been used by him or them to conceal information and assets from the BK Trustee and the Liquidating Trustee.  Abell, or Abell and Bertola jointly, are using the Entity Defendants to deceive the Liquidating Trustee and frustrate his ability to take control of the Subject Properties (to the extent they have not been sold) and obtain the proceeds from the Subject Properties (to the extent any have been sold).

52.     As just one example of their disregard of organizational formalities, they have represented in public land records that Bertola is the "Sole Member" of Vinmar, thus perpetuating the illusion that she is the sole owner of Vinmar and that no other person, including Abell, is an owner of Vinmar.  When they needed to obtain a zoning variance for one of the Currently Held Properties, a property located in Cecil County and identified in *Exhibit 3A*, however, Bertola and Abell held themselves out to the public and in their testimony before the Cecil County Board of Appeals as partners in Vinmar.  This is consistent with their long track record of creating hundreds and hundreds of entities to conceal Abell's true beneficial interest in the real estate that he owns.

53.     The Entity Defendants are being used by Abell, or Abell and Bertola jointly, to commit a fraud or wrong upon the Liquidating Trustee and creditors.  Abell, or Abell and Bertola

jointly, exercise(s) such complete control and dominion over the Entity Defendants that they are his or their alter egos.

54.    Despite efforts to obscure and conceal his ownership interest in the Subject Properties that have not yet been sold, Abell maintains an ongoing equitable and beneficial (if not sole ownership) interest in the identified Subject Properties and any proceeds therefrom, and, accordingly, all are Property and Liquidation Trust Assets of and owned by the Liquidation Trust.

55.    Rock Hall, Greenspring, Federalsburg — Entity Defendants that were all formed in 2019 during the pendency of the Bankruptcy Action — are sham entities created by Abell.  To conceal his true ownership interest in the entities, Abell formed the entities listing his longtime girlfriend and now wife, Maria Maya ("Maya"), as the owner.  That Maya is the owner of any of these entities is a farce.  Abell is the owner.  Rock Hall, Greenspring, and Federalsburg are the nominal owners of certain Currently Held Properties as identified on *Exhibit 3A* and were the nominal owners of certain Sold Properties as identified on *Exhibit 3B* before Abell caused those properties to be sold and the proceeds concealed from the Liquidation Trust.

56.    Upon information and belief, with proceeds from the sale of Sold Properties, certain After Acquired—Held Properties and After Acquired—Sold Properties (as identified in *Exhibits 3C* and *3D*) were acquired by Abell.  As explained above, Merganser, Rock Hall, Greenspring, Federalsburg, Griffin Arms and Conowingo are alter-egos of Abell, and any assets or property purported to be owned by those entities and the proceeds from the sales of the any properties purported to be owned by those entities are Property of the Estate and, therefore, a Liquidation Trust Asset.

## V. COUNTS

### COUNT I
**Declaratory Judgment Pursuant to**
**28 U.S.C. §§ 2201 and 2202**
**(The Currently Held Properties — *Exhibit 3A*)**

57.     Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

58.     An actual controversy exists between and among the parties.

59.     Specifically, the Liquidating Trustee contends that each of the Currently Held Properties is Property and a Liquidation Trust Asset of and owned by the Liquidation Trust, whereas presumably one or more of the Defendants contend that the Currently Held Properties are not assets of the Liquidation Trust.

60.     Antagonistic claims exist between and among the parties which indicate and have resulted in imminent and inevitable litigation.  Therefore, a controversy between and among the parties exists which entitles the Liquidating Trustee to this Court's declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

61.     This Court's declaratory judgment concerning the parties' rights and interests as to each of the Currently Held Properties will terminate this controversy.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment, declaring, decreeing, and adjudging the rights of the parties as follows:

A.     Each of the Currently Held Properties, identified in detail in *Exhibit 3A*, is Property of the Liquidation Trust and a Liquidation Trust Asset;

B.    The Liquidating Trustee is authorized to take control and dispose of each of the Currently Held Properties pursuant to his authority as Liquidating Trustee of the Liquidation Trust;

C.    The deed to each of the Currently Held Properties is reformed to reflect that the Liquidating Trustee is the record title holder;

D.    All such relief granted by the Court under this Count shall apply to all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3A* and are hereafter added to *Exhibit 3A*;

E.    The Liquidating Trustee is entitled to such other necessary or proper relief to be determined upon the adjudication of the merits of this action.

**COUNT II**
**Declaratory Judgment Pursuant to**
**28 U.S.C. §§ 2201 and 2202**
**(The Sold Properties — *Exhibit 3B*)**

62.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

63.    An actual controversy exists between and among the parties.

64.    Specifically, the Liquidating Trustee contends that each of the Sold Properties was Property and a Liquidation Trust Asset of and owned by the Liquidation Trust, whereas presumably one or more of the Defendants contend that the Sold Properties were not assets of the Liquidation Trust.

65.    Antagonistic claims exist between and among the parties which indicate and have resulted in imminent and inevitable litigation.  Therefore, a controversy between and among the

parties exists which entitles the Liquidating Trustee to this Court's declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

66.     This Court's declaratory judgment concerning the parties' rights and interests as to each of the Sold Properties will terminate this controversy.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment, declaring, decreeing, and adjudging the rights of the parties as follows:

A.      Each of the Sold Properties, identified in detail in *Exhibit 3B*, was Property of the Liquidation Trust and a Liquidation Trust Asset;

B.      All such relief granted by the Court under this Count shall apply to all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3B* and are hereafter added to *Exhibit 3B*; and

C.      The Liquidating Trustee is entitled to such other necessary or proper relief to be determined upon the adjudication of the merits of this action.

### COUNT III
**Declaratory Judgment Pursuant to**
**28 U.S.C. §§ 2201 and 2202**
**(The After Acquired—Held Properties — *Exhibit 3C*)**

67.     Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

68.     An actual controversy exists between and among the parties.

69.     Specifically, the Liquidating Trustee contends that each After Acquired—Held Property is Property and a Liquidation Trust Asset of and owned by the Liquidation Trust, whereas

4892-5999-8812, v. 1

presumably one or more of the Defendants contend that the After Acquired—Held Properties are not assets of the Liquidation Trust.

70.    Antagonistic claims exist between and among the parties which indicate and have resulted in imminent and inevitable litigation.  Therefore, a controversy between and among the parties exists which entitles the Liquidating Trustee to this Court's declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

71.    This Court's declaratory judgment concerning the parties' rights and interests as to each of the After Acquired—Held Properties will terminate this controversy.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment, declaring, decreeing, and adjudging the rights of the parties as follows:

A.    Each of the After Acquired—Held Properties, identified in detail in *Exhibit 3C*, is Property of the Liquidation Trust and a Liquidation Trust Asset;

B.    The Liquidating Trustee is authorized to take control and dispose of each of the After-Acquired Held Properties pursuant to his authority as Liquidating Trustee of the Liquidation Trust;

C.    The deed to each of the After Acquired—Held Properties is reformed to reflect that the Liquidating Trustee is the record title holder;

D.    All such relief granted by the Court under this Count shall apply to all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3C* and are hereafter added to *Exhibit 3C*; and

E.    The Liquidating Trustee is entitled to such other necessary or proper relief to be determined upon the adjudication of the merits of this action.

4892-5999-8812, v. 1

## COUNT IV
### Declaratory Judgment Pursuant to
### 28 U.S.C. §§ 2201 and 2202
### (The After Acquired—Sold Properties — *Exhibit 3D*)

72.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

73.    An actual controversy exists between and among the parties.

74.    Specifically, the Liquidating Trustee contends that each of the After Acquired—Sold Properties was Property and a Liquidation Trust Asset of and owned by the Liquidation Trust, whereas presumably one or more of the Defendants contend that the After Acquired—Sold Properties were not assets of the Liquidation Trust.

75.    Antagonistic claims exist between and among the parties which indicate and have resulted in imminent and inevitable litigation.  Therefore, a controversy between and among the parties exists which entitles the Liquidating Trustee to this Court's declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

76.    This Court's declaratory judgment concerning the parties' rights and interests as to each of the After Acquired—Sold Properties will terminate this controversy.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment, declaring, decreeing, and adjudging the rights of the parties as follows:

A.    Each of the After Acquired—Sold Properties, identified in detail in *Exhibit 3D*, was Property of the Liquidation Trust and a Liquidation Trust Asset;

B.      All such relief granted by the Court under this Count shall apply to all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3D* and are hereafter added to *Exhibit 3D*; and

C.      The Liquidating Trustee is entitled to such other necessary or proper relief to be determined upon the adjudication of the merits of this action.

**COUNT V**
**Constructive Trust under Maryland Law**
**(The Currently Held Properties — *Exhibit 3A*)**

77.      Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

78.      Each of the Currently Held Properties identified in *Exhibit 3A* belongs to and is owned by the Liquidation Trust.  They are Liquidation Trust Assets.

79.      As such, the Liquidating Trustee's equitable right, title, and interest in each of the Currently Held Properties are superior to that of any other person, including Defendants.

80.      Any claim of ownership of each of the Currently Held Properties by any Defendant derives from Abell's fraud, misrepresentations, and unlawful efforts to evade his creditors and hide assets.  It is inequitable for any Defendant to retain any purported interest in each or any of the Currently Held Properties and/or to exercise any control over each or any of the Currently Held Properties.  The Liquidating Trustee has a higher equitable call on each of the Currently Held Properties than any Defendant.

81.      It would be unjust and inequitable for any other person to continue to purport to own, hold, and maintain each or any of the Currently Held Properties for the benefit of Abell or

30

themselves as opposed to Abell's *bona fide* creditors, and each of the Currently Held Properties, including all rents and income derived therefrom, should be conveyed to the Liquidation Trust pursuant to equitable principles.  The Court should impose a constructive trust on each of the Currently Held Properties for the benefit of Abell's creditors, and order that each of the Currently Held Properties be conveyed and or re-titled to the Liquidation Trust.

WHEREFORE, the Liquidating Trustee requests that this Court: (a) charge upon Defendants a constructive trust of each of the Currently Held Properties (and all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3A* and are hereafter added to *Exhibit 3A*) for the benefit of the Liquidating Trustee; (b) declare and adjudge that Defendants have held and continue to hold each such properties in trust for the benefit of the Liquidation Trust and/or Abell's creditors; (c) order Defendants to convey all purported rights, title, and interests in each such properties to the Liquidating Trustee, free and clear of all liens, mortgages, and other encumbrances; (d) award a money judgment against Defendants in an amount to be established at trial representing the damages resulting from their misuse of each such properties; and (e) grant such other further relief which is just and equitable under the circumstances.

<u>**COUNT VI**</u>
**Constructive Trust under Maryland Law**
**(The After Acquired—Held Properties — *Exhibit 3C*)**

82.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

83.    Each of the After Acquired—Held Properties identified in *Exhibit 3C* belongs to and is owned by the Liquidation Trust.  They are Liquidation Trust Assets.

84.     As such, the Liquidating Trustee's equitable right, title, and interest in each of the After Acquired—Held Properties are superior to that of any other person, including Defendants.

85.     Any claim of ownership of each of the After Acquired—Held Properties by any Defendant derives from Abell's fraud, misrepresentations, and unlawful efforts to evade his creditors and hide assets.  It is inequitable for any Defendant to retain any purported interest in each or any of the After Acquired—Held Properties and/or to exercise any control over each or any of the After Acquired—Held Properties.  The Liquidating Trustee has a higher equitable call on each of the After Acquired—Held Properties than any Defendant.

86.     It would be unjust and inequitable for any other person to continue to purport to own, hold, and maintain each or any of the After Acquired—Held Properties for the benefit of Abell or themselves as opposed to Abell's *bona fide* creditors, and each of the After Acquired—Held Properties, including all rents and income derived therefrom, should be conveyed to the Liquidation Trust pursuant to equitable principles.  The Court should impose a constructive trust on each of the After Acquired—Held Properties for the benefit of Abell's creditors, and order that each of the After Acquired—Held Properties be conveyed and or re-titled to the Liquidation Trust.

WHEREFORE, the Liquidating Trustee requests that this Court: (a) charge upon Defendants a constructive trust of each of the After Acquired—Held Properties (and all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3C* and are hereafter added to *Exhibit 3C*) for the benefit of the Liquidating Trustee; (b) declare and adjudge that Defendants have held and continue to hold each such properties in trust for the benefit of the Liquidation Trust and/or Abell's creditors; (c) order Defendants to convey all purported rights, title, and interests in each such properties to the Liquidating Trustee, free and clear of all liens,

mortgages, and other encumbrances; (d) award a money judgment against Defendants in an amount to be established at trial representing the damages resulting from their misuse of each such properties; and (e) grant such other further relief which is just and equitable under the circumstances.

**COUNT VII**
**Constructive Trust under Maryland Law**
**(The Sold Properties — *Exhibit 3B*)**

87.     Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

88.     All proceeds from the sale of each of the Sold Properties identified in *Exhibit 3B* belong to and are owned by the Liquidation Trust.  They are Liquidation Trust Assets.

89.     As such, the Liquidating Trustee's equitable right, title, and interest in all proceeds from the sale of each of the Sold Properties are superior to that of any other person, including Defendants.

90.     Any claim of ownership of or entitlement to any proceeds from the sale of each of the Sold Properties by any Defendant derives from Abell's fraud, misrepresentations, and unlawful efforts to evade his creditors and hide assets.  It is inequitable for any Defendant to retain any purported interest any proceeds from the sale of each of the Sold Properties and/or to exercise any control over any proceeds from the sale of each of the Sold Properties.  The Liquidating Trustee has a higher equitable call on all proceeds from the sale of each of the Sold Properties than any Defendant.

33

91.    It would be unjust and inequitable for any other person to continue to purport to own, hold, and maintain any proceeds from the sale of each of the Sold Properties for the benefit of Abell or themselves as opposed to Abell's *bona fide* creditors, all proceeds from the sale of each of the Sold Properties, should be conveyed to the Liquidation Trust pursuant to equitable principles. The Court should impose a constructive trust on all proceeds from the sale of each of the Sold Properties for the benefit of Abell's creditors, and order that a judgment in the amount of all proceeds from the sale of each of the Sold Properties be awarded to the Liquidation Trust.

WHEREFORE, the Liquidating Trustee requests that this Court: (a) charge upon Defendants a constructive trust of all proceeds from the sale of each of the Sold Properties (and all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3B* and are hereafter added to *Exhibit 3B*) for the benefit of the Liquidating Trustee; (b) declare and adjudge that Defendants have held and continue to hold all proceeds from the sale of each such properties in trust for the benefit of the Liquidation Trust and/or Abell's creditors; (c) award a money judgment against Defendants in an amount to be established at trial representing all proceeds from the sale of each such properties; and (d) grant such other further relief which is just and equitable under the circumstances.

**COUNT VIII**
**Constructive Trust under Maryland Law**
**(The After Acquired—Sold Properties — *Exhibit 3D*)**

92.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph. To the extent that this Count seeks relief that is inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

34

93.     All proceeds from the sale of each of the After Acquired—Sold Properties identified in *Exhibit 3D* belong to and are owned by the Liquidation Trust.  They are Liquidation Trust Assets.

94.     As such, the Liquidating Trustee's equitable right, title, and interest in all proceeds from the sale of each of the After Acquired—Sold Properties are superior to that of any other person, including Defendants.

95.     Any claim of ownership of or entitlement to any proceeds from the sale of each of the After Acquired—Sold Properties by any Defendant derives from Abell's fraud, misrepresentations, and unlawful efforts to evade his creditors and hide assets.  It is inequitable for any Defendant to retain any purported interest any proceeds from the sale of each of the After Acquired—Sold Properties and/or to exercise any control over any proceeds from the sale of each of the After Acquired—Sold Properties.  The Liquidating Trustee has a higher equitable call on all proceeds from the sale of each of the After Acquired—Sold Properties than any Defendant.

96.     It would be unjust and inequitable for any other person to continue to purport to own, hold, and maintain any proceeds from the sale of each of the After Acquired—Sold Properties for the benefit of Abell or themselves as opposed to Abell's *bona fide* creditors, all proceeds from the sale of each of the After Acquired—Sold Properties, should be conveyed to the Liquidation Trust pursuant to equitable principles.  The Court should impose a constructive trust on all proceeds from the sale of each of the After Acquired—Sold Properties for the benefit of Abell's creditors, and order that a judgment in the amount of all proceeds from the sale of each of the After Acquired—Sold Properties be awarded to the Liquidation Trust.

WHEREFORE, the Liquidating Trustee requests that this Court: (a) charge upon Defendants a constructive trust of all proceeds from the sale of each of the After Acquired—Sold

Properties (and all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3D* and are hereafter added to *Exhibit 3D*) for the benefit of the Liquidating Trustee; (b) declare and adjudge that Defendants have held and continue to hold all proceeds from the sale of each such properties in trust for the benefit of the Liquidation Trust and/or Abell's creditors; (c) award a money judgment against Defendants in an amount to be established at trial representing all proceeds from the sale of each such properties; and (d) grant such other further relief which is just and equitable under the circumstances.

**COUNT IX**
**Quiet Title Pursuant to Md. Code Ann., Real Prop. § 14-601 *et seq.***
**(The Currently Held Properties — *Exhibit 3A*)**

97.     Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

98.     The Liquidating Trustee brings this claim to establish title in his favor against the adverse claims of any of the Defendants, each or some of whom presumably dispute the Liquidation Trust's claim to title.

99.     Pursuant to Md. Code Ann., Real Prop. § 14-603(a), "[i]n an action under this subtitle [*i.e.,* Subtitle 6 of Title 14 of the Real Property Article of the Annotated Code of Maryland], the court is deemed to have obtained possession and control of the property for the purposes of the action."  Pursuant to § 14-603(b), "[t]his subtitle does not limit any authority the court may have to grant any equitable relief that may be proper under the circumstances of the case."

100.    As explained in this complaint, the Liquidating Trustee seeks a determination that he is the rightful fee simple or leasehold title owner of each of the Currently Held Properties identified in *Exhibit 3A* and that Defendants have no right, title, or interest in and to the Currently Held Properties.

WHEREFORE, the Liquidating Trustee requests that this Court: (a) determine that fee simple or leasehold title to each of the Currently Held Properties (and all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3A* and are hereafter added to *Exhibit 3A*) be in the name of the Liquidation Trust; (b) reform or re-title the deed of each such properties to identify the Liquidating Trustee as fee simple or leasehold record titleholder of the each such property; and (c) issue an order directing the Liquidating Trustee, as prevailing party, to cause this Court's judgment to be recorded in the land records of the county in which each such property is located, with Defendants being entered in the land records as grantor and the Liquidating Trustee as grantee (*see* Md. Rule 12-811(a) and (b)).

## **COUNT X**
**Quiet Title Pursuant to Md. Code Ann., Real Prop. § 14-601 *et seq.***
**(The After Acquired—Held Properties — *Exhibit 3C*)**

101.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

102.    The Liquidating Trustee brings this claim to establish title in his favor against the adverse claims of any Defendants, each or some of whom presumably dispute the Liquidation Trust's claim to title.

103.    Pursuant to Md. Code Ann., Real Prop. § 14-603(a), "[i]n an action under this subtitle [*i.e.,* Subtitle 6 of Title 14 of the Real Property Article of the Annotated Code of Maryland], the court is deemed to have obtained possession and control of the property for the purposes of the action."  Pursuant to § 14-603(b), "[t]his subtitle does not limit any authority the court may have to grant any equitable relief that may be proper under the circumstances of the case."

104.    As explained in this complaint, the Liquidating Trustee seeks a determination that he is the rightful fee simple or leasehold title owner of each of the After Acquired—Held Properties identified in *Exhibit 3C* and that Defendants have no right, title, or interest in and to the After Acquired—Held Properties.

WHEREFORE, the Liquidating Trustee requests that this Court: (a) determine that fee simple or leasehold title to each of the After Acquired—Held Properties (and all such properties yet to be discovered by the Liquidating Trustee that belong on *Exhibit 3C* and are hereafter added to *Exhibit 3C*) be in the name of the Liquidation Trust; (b) reform or re-title the deed of each such properties to identify the Liquidating Trustee as fee simple or leasehold record titleholder of the each such property; and (c) issue an order directing the Liquidating Trustee, as prevailing party, to cause this Court's judgment to be recorded in the land records of the county in which each such properties is located, with Defendants being entered in the land records as grantor and the Liquidating Trustee as grantee (*see* Md. Rule 12-811(a) and (b)).

## COUNT XI
### Declaratory Judgment Pursuant to
### 28 U.S.C. §§ 2201 and 2202
### (Entity Defendants)

105.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks

38

relief that is inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

106.    An actual controversy exists between and among the parties.

107.    Specifically, the Liquidating Trustee contends that each Entity Defendant is Property and a Liquidation Trust Asset of and owned by the Liquidation Trust, whereas presumably Abell, Maya, and/or Bertola contend that each Entity Defendant is not an asset of the Liquidation Trust.

108.    Antagonistic claims exist between and among the parties which indicate and have resulted in imminent and inevitable litigation.  Therefore, a controversy between and among the parties exists which entitles the Liquidating Trustee to this Court's declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

109.    This Court's declaratory judgment concerning the parties' rights and interests as to Vinmar will terminate this controversy.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment, declaring, decreeing, and adjudging the rights of the parties as follows:

A.    Each Entity Defendant is Property and a Liquidation Trust Asset of the Liquidation Trust;

B.    The Liquidating Trustee is authorized to take control of and liquidate each Entity Defendant and any assets purportedly owned by such Defendant pursuant to his authority as Liquidating Trustee of the Liquidation Trust;

C.    All such relief granted by the Court under this Count shall apply to any other entities yet to be discovered by the Liquidating Trustee that are properly made the subject of this action; and

4892-5999-8812, v. 1

D.    The Liquidating Trustee is entitled to such other necessary or proper relief to be determined upon the adjudication of the merits of this action.

**COUNT XII**
**Constructive Trust under Maryland**
**(Entity Defendants)**

110.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  To the extent that this Count seeks relief that is potentially inconsistent with the relief sought in any other Count, this Count is pleaded in the alternative to such other Counts.

111.    Each Entity Defendant belongs to the Liquidation Trust.  It is a Liquidation Trust Asset.

112.    As such, the Liquidating Trustee's equitable right, title, and interest in each Entity Defendant are superior to that of any other person, including Defendants.

113.    Any claim of ownership of each Entity Defendant by any Defendant derives from Abell's fraud, misrepresentations, and unlawful efforts to evade his creditors and hide assets.  It is inequitable for any Defendant to retain any purported interest in each Entity Defendant and/or to exercise any control over each Entity Defendant.  The Liquidating Trustee and Liquidation Trust have a higher equitable call on each Entity Defendant than any Defendant.

114.    It would be unjust and inequitable for any other person to continue to purport to own, hold, and maintain each Entity Defendant for the benefit of Abell or themselves as opposed to Abell's *bona fide* creditors, and each Entity Defendant, including all of its assets and income, should be conveyed or re-titled to the Liquidation Trust pursuant to equitable principles.  The Court should impose a constructive trust on each Entity Defendant for the benefit of Abell's creditors, and order that each Entity Defendant be conveyed to the Liquidation Trust.

4892-5999-8812, v. 1

WHEREFORE, the Liquidating Trustee requests that this Court: (a) charge upon Defendants a constructive trust of **each Entity Defendant** for the benefit of the Liquidating Trustee; (b) declare and adjudge that Defendants have held and continue to hold **each Entity Defendant** in trust for the benefit of the Liquidation Trust and/or Abell's creditors; (c) order Defendants to convey all purported rights, title, and interests in **each Entity Defendant** to the Liquidating Trustee, free and clear of all liens, mortgages, and other encumbrances; (d) award a money judgment against Defendants in an amount to be established at trial representing the damages resulting from their misuse of **each Entity Defendant**; and (e) grant such other further relief which is just and equitable under the circumstances, including making all such foregoing relief applicable to any other entities yet to be discovered by the Liquidating Trustee that are properly made the subject of this action.

<u>**COUNT XIII**</u>
**Declaratory Judgment Pursuant to**
**28 U.S.C. §§ 2201 and 2202**
**(as to Abell's and/or Abell and Bertola's Interest in**
**the Subject Properties and Proceeds Therefrom and Veil Piercing)**

115.    Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.  This Count is brought in the alternative in the event that this Court determines that neither the Currently Held Properties, the After Acquired—Held Properties, proceeds from the sale of the Sold Properties, proceeds from the sale of the After Acquired—Sold Properties, nor the Entity Defendants are Property or Liquidation Trust Assets of the Liquidation Trust.

116.    An actual controversy exists between and among the parties.

117.    Specifically, as explained above, the Liquidating Trustee contends the Currently Held Properties, the After Acquired—Held Properties, proceeds from the sale of the Sold

Properties, proceeds from the sale of the After Acquired—Sold Properties, and the Entity Defendants are all Property and Liquidation Trust Assets of and owned by the Liquidation Trust, whereas presumably one or more Defendants dispute that contention.  In the event this Court does not find that either the Currently Held Properties, the After Acquired—Held Properties, proceeds from the sale of the Sold Properties, proceeds from the sale of the After Acquired—Sold Properties, or the Entity Defendants are Property and Liquidation Trust Assets of the Liquidation Trust, the Liquidating Trustee contends, in the alternative, that the Entity Defendants are illegitimate entities that lost or never had any of the personal liability protection attributes of a properly formed limited liability company in good standing under Maryland law.  In this regard, the Liquidating Trustee contends that the Entity Defendants have no independent identity distinct from that of Abell, or of Abell and Bertola jointly, and are merely the alter-egos of Abell alone or, alternatively, of Abell and Bertola jointly.  The Liquidating Trustee further contends that Abell alone or, alternatively, Abell and Bertola jointly, have used and are using the Entity Defendants to commit fraud, defraud creditors, and conceal assets and income from creditors.  The Liquidating Trustee contends that this Court should disregard each of the Entity Defendants as an entity and pierce the corporate veil, holding that the Currently Held Properties, the After Acquired—Held Properties, proceeds from the sale of the Sold Properties, and proceeds from the sale of the After Acquired—Sold Properties are owned by Abell alone or, alternatively, by Abell and Bertola jointly.  As such, this Court should determine that the Spoliation Judgments against Bertola and Abell constitute a judgment lien against the Currently Held Properties and the After Acquired—Held Properties and lien on the proceeds from the sale of  the Sold Properties and the After Acquired—Sold Properties received by the Entity Defendants, Abell, Bertola, or Abell and Bertola jointly.  Presumably, Defendants dispute the foregoing contentions.

42

118.    Antagonistic claims exist between and among the parties which indicate and have resulted in imminent and inevitable litigation.  Therefore, a controversy between and among the parties exists which entitles the Liquidating Trustee to this Court's declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

119.    This Court's declaratory judgment concerning the parties' rights and interests as to the Subject Properties will terminate this controversy.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment, declaring, decreeing, and adjudging the rights of the parties as follows:

A.      Each Entity Defendant is an illegitimate entity that lost or never had any of the personal liability protection attributes of a properly formed limited liability company in good standing under Maryland law;

B.      Each Entity Defendant has no independent identity and is merely the alter ego of Abell alone or, alternatively, of Abell and Bertola jointly;

C.      The Spoliation Judgments against Bertola and Abell constitute a judgment lien against the Currently Held Properties and the After Acquired—Held Properties;

D.      The Spoliation Judgments constitute a judgment lien against any proceeds received by Abell or Bertola or, alternatively, Abell and Bertola jointly, in connection with the sale of the Sold Properties and the After Acquired—Sold Properties; and

E.      The Liquidating Trustee is entitled to such other necessary or proper relief to be determined upon the adjudication of the merits of this action, including making all such foregoing relief applicable to any other properties and entities yet to be discovered by the Liquidating Trustee that are properly made the subject of this action.

## COUNT XIV
## Unjust Enrichment
**(as to the Proceeds from the Sale of Sold Properties and After Acquired— Sold Properties)**

120.     Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.

121.     The proceeds from the sale of the Sold Properties and of the After Acquired—Sold Properties (and from the sale of any properties yet to be discovered by the Liquidating Trustee that belong on *Exhibits 3B* and *3D* and are hereafter added to *Exhibits 3B* and *3D*) are Property and, therefore, Liquidation Trust Assets of the Liquidation Trust.  Although the proceeds did not belong to them and instead belonged to the Liquidation Trust, the Entity Defendants, Abell, and Bertola collected the sale proceeds without paying the proceeds over to the Liquidation Trust. Consequently, Defendants, without any right to do so, came into possession of money that belonged to the Liquidating Trustee.

122.     It would be inequitable for Defendants to retain any such funds.  In equity and good conscience, Defendants should not be allowed to retain the funds.

123.     As a result, the Liquidating Trustee has been damaged in the amount of such funds wrongfully retained by Defendants.

WHEREFORE, the Liquidating Trustee requests that this Court enter a money judgment against each Defendant in amount equal to all sale proceeds retained by such Defendant, plus pre-judgment interest, post-judgment interest, and costs, and grant such other and further relief as this Court deems equitable.

## COUNT XV
### Avoidance of Postpetition Transactions
### Pursuant to 11 U.S.C. §§ 549 and 550
### (as to the Proceeds from the Sale of Sold Properties and After Acquired— Sold Properties)

124.     Each of the allegations contained in each of the numbered paragraphs of this complaint are re-alleged as if fully set forth in this paragraph.

125.     The transfers and conveyances of assets described in the complaint (and any others that the Liquidating Trustee later discovers as part of his investigation) that occurred after the commencement of Abell's bankruptcy case are post-petition transactions.

126.     Those post-petition transactions were not authorized by the Court or the Bankruptcy Code.

127.     The post-petition transfers are avoidable and recoverable pursuant to §§ 549 and 550 of the Bankruptcy Code, and the Liquidating Trustee is entitled to a monetary judgment against Defendants in the amounts of the post-petition transfers to be proved at trial, and to have all such post-petition transfers set aside, and to levy and garnish upon all such assets, funds, and properties, to the extent they are no longer available to satisfy Abell's liabilities to his creditors.

WHEREFORE, the Liquidating Trustee requests that this Court enter a judgment for the Liquidating Trustee and against all Defendants:

A. determining that any post-petition transfers to Defendants are avoided;

B. awarding an amount to be proved at trial, plus prejudgment and post-judgment interest and costs;

C. directing Defendants to pay to the Liquidating Trustee such amount; and

D. granting the Liquidating Trustee such other and further relief as is just and equitable.

4892-5999-8812, v. 1

Respectfully submitted,


*/s/ David J. Shuster*
David J. Shuster (D. Md. Bar No. 23120)
    dshuster@kg-law.com
Jean E. Lewis (D. Md. Bar No.  27562)
    jlewis@kg-law.com
Emily R. Greene (D. Md. Bar No. 20302)
    egreene@kg-law.com
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland  21202
Telephone:  (410) 752-6030
Facsimile: (410) 539-1269

*Attorneys for Liquidating Trustee*
*Roger Schlossberg*

4892-5999-8812, v. 1

**VERIFICATION AS TO COUNTS IX AND X PURSUANT
TO MD. CODE ANN., REAL PROP. § 14-606**

I solemnly affirm under the penalties of perjury that the factual allegations in the

foregoing complaint that support Count IX and X (Quiet Title) are true to the best of my

knowledge, information, and belief.

*/s/ Roger Schlossberg*
Roger Schlossberg, Liquidating Trustee

47

4892-5999-8812, v. 1